**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SOLOS TECHNOLOGY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., et al.<br><br>Defendants. | Case No. 1:26-cv-10304<br><br>Jury Trial Demanded |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY MORGAN LEWIS & BOCKIUS LLP**

# TABLE OF CONTENTS


**I. INTRODUCTION** .......... **1**

**II. LEGAL STANDARD** .......... **2**

**III. BACKGROUND** .......... **3**

**IV. ARGUMENT** .......... **6**

**A. Morgan Lewis' Prior Representation Is Substantially Related to This Litigation** .......... 6

i. The Substantially Related Three-Prong Test Is Satisfied .......... 6

ii. Disqualification Is Consistent with Decisions of This Court .......... 8

**B. Morgan Lewis Cannot Avoid Disqualification Through Client Distinctions or Screening** .......... 10

**C. Continued Representation Creates a Presumed Risk of Prejudice and Undermines the Integrity of the Proceedings** .......... **11**

**V. CONCLUSION** .......... **12**

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Borges v. Our Lady of the Sea Corp.*,
935 F.2d 436 (1st Cir. 1991) .......... 2, 3

*Fiandaca v. Cunningham*,
827 F.2d 825 (1st Cir. 1987) .......... 11

*Kevlik v. Goldstein*,
724 F.2d 844 (1st Cir. 1984) .......... 2, 3, 10, 11

*Smith & Nephew, Inc. v. Ethicon, Inc.*,
98 F. Supp. 2d 106 (D. Mass. 2000) .......... 8, 9

*Starlight Sugar, Inc. v. Soto*,
903 F. Supp. 261 (D.P.R. 1995) .......... 3, 7

*U.S. Filter Corp. v. Ionics, Inc.*,
189 F.R.D. 26 (D. Mass. 1999) .......... 10

**Rules**

Mass. R. Prof. C. 1.7 .......... 2

Mass. R. Prof. C. 1.7(a)(2) .......... 2, 10

Mass. R. Prof. C. 1.10(a) .......... 2, 10

## I. INTRODUCTION

Morgan Lewis & Bockius LLP's ("Morgan Lewis") conflict-of-interest arises from its access to confidential information obtained during its representation of Kopin Corporation ("Kopin"). The personnel who founded Kopin and developed and operated its smart-glasses business unit later founded Solos Technology Limited ("Solos"). For decades, Morgan Lewis has represented Kopin, including in matters directly connected to Solos' corporate separation. As part of that separation, intellectual-property assets underlying the smart-eyewear business were transferred from Kopin to Solos, and Kopin retained a minority ownership interest in Solos. The separation required the evaluation and transfer of the very technologies implicated in this action.

Specifically, Morgan Lewis represented Kopin in a series of technology transactions through which Solos acquired the smart-eyewear technologies and associated intellectual-property rights now at issue. Morgan Lewis' work included advising on an asset sale, patent assignment agreement, and license agreement governing the patents asserted in this litigation, as well as related patent applications and priority claims (the "Asserted Patents"). These engagements necessarily required Morgan Lewis to structure ownership, licensing, and scope of rights concerning the same technology and patent assets disputed here.

Accordingly, there is substantial relationship between Morgan Lewis' prior work for Kopin and the subject of this case. Solos need not demonstrate that Morgan Lewis is using confidential information to Solos' disadvantage because the risk that confidential information may be used is presumed. In light of that presumption, allowing Morgan Lewis to continue to appear in this case would erode confidence in the fairness of the adjudicative process and risk tainting the litigation.

Disqualification eliminates these risks and is warranted.

## II. LEGAL STANDARD

In this District, motions to disqualify counsel are governed by the Massachusetts Rules of Professional Conduct. Rule 1.7 prohibits representation where a concurrent conflict of interest exists, including circumstances not only involving direct adversity, but also where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, *or a third person*." Mass. R. Prof. C. 1.7(a)(2) (emphasis added). In this respect, the Rule recognizes that a lawyer's duties of loyalty and confidentiality may arise from prior or ongoing representations and may extend to obligations involving confidential information material to the dispute. These principles are reinforced by Rule 1.10, which provides that conflicts and associated confidentiality are imputed across a law firm. Mass. R. Prof. C. 1.10(a). Accordingly, when lawyers are associated in a firm, none may knowingly undertake a representation that any one of them practicing alone would be prohibited from accepting.

While the Rules of Professional Conduct establish the governing ethical obligations, courts assess whether disqualification is warranted by applying the "substantially related" test. *Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436, 439–40 (1st Cir. 1991). Under this standard, "[t]he relevant inquiry is whether the subject matter of the two representations is substantially related; could the attorney have obtained confidential information in the first representation that would have been relevant to the second." *Id.*; *see also Kevlik v. Goldstein*, 724 F.2d 844, 850–51 (1st Cir. 1984) (focusing the inquiry on whether counsel could have obtained confidential information relevant to the later representation).

Courts applying this test have undertaken a three-step analysis: first, reconstructing the scope of the facts involved in the former representation and projecting the scope of the facts implicated in the later representation; second, assuming that the attorney obtained confidential information concerning all facts within the scope of the prior representation; and third, determining whether any aspect of the prior representation is sufficiently similar to a material issue in the subsequent matter such that a reasonable attorney would view the earlier confidential information as useful in advancing the later client's interests. *Starlight Sugar, Inc. v. Soto,* 903 F. Supp. 261, 265–66 (D.P.R. 1995) (adopting framework described in Charles W. Wolfram, Modern Legal Ethics § 7.4, at 370 (Practitioner's ed. 1986)).

Furthermore, while the moving party bears the burden on a motion to disqualify, that burden does not require proof of the actual disclosure or misuse of confidences; rather, it is satisfied by identifying the nature of the prior representation and demonstrating a realistic risk that confidential information would normally have been obtained and could be relevant to the present dispute. *Kevlik*, 724 F.2d at 849–50; *Borges*, 935 F.2d at 439.

## III. BACKGROUND

Morgan Lewis has maintained a longstanding attorney-client relationship with Kopin. During Morgan Lewis' representation of Kopin, the personnel who ultimately founded and now comprise Solos were working within or overseeing Kopin's smart-glasses division. *See* Declaration of Kenneth Fan ("Fan Decl.") ¶¶ 4–5, 10.

Morgan Lewis' representation occurred a time when Solos' predecessor business, technologies, and intellectual-property assets were part of Kopin's corporate structure, including during the period leading up to and culminating in Solos' corporate separation. Fan Decl. ¶¶ 6–7.

Notably, Kopin's founder and longtime Chief Executive Officer, Dr. John C.C. Fan, is also a co-founder of Solos and currently serves on Solos' Board of Directors. Fan Decl. ¶ 5. This overlap underscores the continuity between Kopin's and Solos' technological development, strategic direction, and intellectual-property assets.

In September 2019, Kopin and Solos entered into a series of related transactions pursuant to which Solos acquired certain smart-eyewear technologies and associated intellectual property assets developed at Kopin. Fan Decl. ¶ 6. These transactions were memorialized through multiple contemporaneous agreements, including an Asset Purchase Agreement ("APA") dated September 30, 2019, a Patent Assignment Agreement, and a License Agreement.[1] Fan Decl. ¶ 7. Collectively, these agreements governed the transfer, assignment, and licensing of technology, patent rights, and related intellectual property concerning Solos' products and smart-glasses technology. Fan Decl. ¶¶ 12–16.

As part of the September 30, 2019 transactions, the governing agreements and incorporated schedules involved detailed technical and product-level information concerning Solos' smart-eyewear offerings and underlying technology. Those materials identified the scope of the transferred technology and product assets, including existing specifications and technical

[1] The underlying transaction agreements contain highly confidential commercial, technical, and proprietary business information. Those materials are not necessarily required for the Court's resolution of the present motion, which turns on the existence of Morgan Lewis' prior representation of Kopin and the substantial relationship between that representation and the issues in this litigation. Morgan Lewis' role as counsel to Kopin in connection with the 2019 transactions is not subject to reasonable dispute.

Moreover, the relevant facts concerning the nature of the transactions, the categories of assets involved, and Morgan Lewis' participation are established through the sworn declaration of Solos' co-founder and Chief Financial Officer, Kenneth Fan. Because the motion does not require interpretation or enforcement of the agreements themselves, submission of the documents would unnecessarily disclose sensitive business information without materially assisting the Court. Should the Court determine that review of any document is warranted, Solos respectfully reserves the right to provide materials for in camera review.

materials, development kits, and manufacturing-related documentation such as bills of materials and product information for Solos smart-glasses products and modules. Fan Decl. ¶ 12. The schedules further reflect product configuration and performance specifications for contemplated wearable smart-glasses applications, including device dimensions, display characteristics, battery design and performance expectations, and connectivity protocols. Fan Decl. ¶ 13.

In addition, the transaction documents and schedules set forth comprehensive intellectual property information bearing directly on ownership and scope, including the technologies' "Enterprise Field" (or field of use). The schedules identified and categorized patent assets associated with Solos, including patent families across multiple jurisdictions, as well as related trademark and domain assets tied to the transferred business. Fan Decl. ¶ 14. The agreements also addressed the allocation of rights through assignments and licensing arrangements, which necessarily required analysis of what intellectual property was transferred, what rights were retained or licensed, and how those rights were to be used and enforced going forward. Fan Decl. ¶ 15.

Finally, the transaction documentation reflected commercially sensitive information concerning operational assets and financial arrangements supporting the development and manufacturing of the smart-eyewear products. The schedules included lab/tooling assets and contracts and purchase orders related to product development and manufacturing activities, along with associated vendor and development expenditures. Fan Decl. ¶ 16. The agreements also included capitalization and equity-related information concerning the post-closing ownership structure and related corporate allocations. *Id*. These categories of information were integral to the 2019 transactions.

Morgan Lewis represented Kopin in connection with these 2019 transactions. In that role, Morgan Lewis necessarily advised Kopin regarding the negotiation, structuring, and execution of the transaction documents and related agreements. Fan Decl. ¶ 9–10. The firm's involvement encompassed detailed consideration of the intellectual property assets being transferred, assigned, and licensed, as well as the technical frameworks governing those assets. By their nature, these matters required legal analysis concerning patent ownership and assignment, licensing architecture, technology rights, and the manufacturing of smart-eyewear technologies and associated products. Fan Decl. ¶ 17–20.

Notwithstanding the foregoing, on February 16, 2026, Morgan Lewis appeared on behalf of EssilorLuxottica USA, Inc., Luxottica of America, Inc., and Oakley, Inc. ("Defendants") in this action.

## IV. ARGUMENT

Morgan Lewis' prior representation is substantially related to this litigation and creates a conflict-of-interest requiring disqualification. The firm obtained confidential information concerning transactions governing the ownership, assignment, licensing, and scope of rights in the smart-eyewear technologies and intellectual-property assets now at issue. Because the risk of misuse is presumed disqualification is necessary to eliminate that risk and protect the integrity of these proceedings.

### A. Morgan Lewis' Prior Representation Is Substantially Related to This Litigation

#### *i. The Substantially Related Three-Prong Test Is Satisfied*

As explained above, courts assessing whether matters are "substantially related" examine the extent of factual overlap between the prior representation and the issues presented in the current

litigation. This inquiry extends beyond a comparison of legal claims and instead focuses on the factual circumstances and subject matter implicated in both engagements. As explained above, in conducting this analysis, courts typically (1) reconstruct the scope of the former representation, (2) presume that counsel obtained confidential information within that scope, and (3) determine whether the prior matters are sufficiently connected to issues material to the present dispute such that the information would reasonably be considered relevant. *Starlight Sugar*, 903 F. Supp. at 265–66.

First, reconstructing the scope of the former representation supports the substantial relationship. Morgan Lewis represented Kopin at a time when the smart-glasses business that later became Solos operated within Kopin, including during the period leading up to and culminating in Solos' independence and related technology transactions. In that capacity, Morgan Lewis advised Kopin in connection with the September 30, 2019 Asset Purchase Agreement, Patent Assignment Agreement, and License Agreement through which Solos acquired smart-eyewear technologies and associated patent assets. Fan Decl. ¶ 6–7. Morgan Lewis' representation necessarily encompassed legal analysis concerning technology ownership, patent rights, licensing structures, and commercialization frameworks associated with those assets.

Second, the Court should assume that Morgan Lewis obtained confidential information within that representation. Morgan Lewis' representation encompassed detailed technical and commercially sensitive subject matter, including product specifications, prototypes, bills of materials, development kits, patent portfolios, trademarks, equipment used in technology development, and Solos-related financial and operational information. Fan Decl. ¶ 16. Advising on these agreements necessarily required Morgan Lewis to analyze and structure the identification,

allocation, valuation, transfer, assignment, and licensing of intellectual-property and technology rights directly tied to Solos' products and innovations. Such work exposed Morgan Lewis to confidential technical and strategic information of the type the substantial-relationship test nevertheless presumes was obtained.

Third, those matters substantially overlap with the issues presented here. The Complaint places at issue the scope of smart-eyewear technologies, together with the intellectual property protecting those technologies, including the Asserted Patents. Compl. ¶¶ 3–13, 43–48, 49–64. Questions central to this dispute include the scope of Solos' patent rights, the technological boundaries of the transferred assets, the nature of licensed or retained rights, and the scope of use of Solos' patent assets. These are the very categories of issues Morgan Lewis was required to consider when structuring the 2019 transactions. Fan Decl. ¶¶ 19–20.

For the foregoing reasons, Morgan Lewis' prior representation is substantially related to this litigation.

*ii. Disqualification Is Consistent with Decisions of This Court*

Courts routinely find matters substantially related where a prior representation involved negotiating or structuring agreements central to rights later placed in dispute. *See*, *e.g.*, *Smith & Nephew, Inc. v. Ethicon, Inc.*, 98 F. Supp. 2d 106, 108–11 (D. Mass. 2000).

In *Smith & Nephew*, the court ordered disqualification where counsel's prior representation involved negotiating and drafting employment and consulting agreements that later became central to a subsequent patent dispute. 98 F. Supp. 2d at 108–11. There, the firm had participated directly in structuring contractual provisions governing the allocation and retention of intellectual-property rights, provisions that were subsequently placed at issue in the litigation. Because the prior

representation required legal analysis of intellectual-property ownership and related rights, the court concluded that the matters were substantially related and that the risk arising from counsel's prior access to confidential information warranted disqualification. *Id*. Although *Smith & Nephew* centered on patent ownership rather than infringement, the court's disqualification ruling rested on counsel's prior access to confidential information relevant to the claims at issue. The same principle applies here.

Indeed, Morgan Lewis' prior representation required the type of legal analysis that renders the matters substantially related. Morgan Lewis advised Kopin in connection with agreements governing the identification, allocation, transfer, assignment, and licensing of smart-eyewear technologies and associated patent assets. That work necessarily involved intellectual-property ownership, assessing the scope of transferred and retained rights, structuring licensing frameworks, and assessing business strategies tied to the same technological subject matter now implicated in this litigation. As in *Smith & Nephew*, this prior engagement required substantive analysis of intellectual-property rights relevant to the present dispute. Morgan Lewis' role demanded detailed consideration of technical specifications, patent portfolios, development materials, and commercially sensitive information bearing on scope. These matters are inherently confidential and relevant to issues now before the Court.

By applying the rationale set forth in *Smith & Nephew*, disqualification of Morgan Lewis is proper.

### B. Morgan Lewis Cannot Avoid Disqualification Through Client Distinctions or Screening

Morgan Lewis may contend that its present litigation team differs from the attorneys involved in the prior transaction or that its client is Kopin rather than Solos. Neither argument alters the analysis.

First, conflicts and confidential knowledge are imputed across the firm. Mass. R. Prof. C. 1.10(a); *U.S. Filter Corp. v. Ionics, Inc.*, 189 F.R.D. 26, 29–31 (D. Mass. 1999) (declining to apply a screening exception where an attorney possessed substantial involvement or substantial material information relating to the matter). A firm's prior access to material confidential information therefore cannot be neutralized by the internal allocation of personnel once a substantial relationship is established. Accordingly, Morgan Lewis' prior representation of Kopin exposes the firm, as an institution, to confidential technical, commercial, and strategic information bearing on the patents, technologies, and commercial rights relevant to this case. Under these circumstances, Morgan Lewis cannot rely on screening measures to avoid disqualification.

Second, the First Circuit has made clear that the substantial relationship inquiry focuses on whether counsel could have obtained confidential information that would have been relevant to the subsequent dispute, not on distinctions concerning client identity. *Kevlik*, 724 F.2d at 850 (disqualification turns on the likelihood that confidential information would have been obtained in the prior representation). Here, Morgan Lewis obtained confidential information concerning intellectual-property ownership, valuation, and related scope of use. Morgan Lewis cannot avoid the conflict by invoking the Kopin–Solos distinction, as the analysis centers on the confidential nature of the information, its relevance here, and Rule 1.7(a)(2)'s protection of obligations owed to third persons.

### C. Continued Representation Creates a Presumed Risk of Prejudice and Undermines the Integrity of the Proceedings

Where a substantial relationship exists between prior and current representations, the First Circuit recognizes that the risk of prejudice arising from counsel's access to confidential information is presumed. *Kevlik*, 724 F.2d at 849–50. This presumption reflects the practical reality that requiring proof of the specific confidences disclosed would undermine the very protections the ethical rules are designed to preserve. *Id*. at 850–51. Accordingly, Solos need not demonstrate that confidential information has been actually used; rather, the potential that such information could materially advance the adverse party's position is sufficient. *Id*.

As discussed above, Morgan Lewis previously advised Kopin in connection with transactions that required analysis of Solos' technologies, intellectual-property assets, and related commercial considerations. *See generally* Fan Decl. Morgan Lewis' work exposed it to nonpublic technical, strategic, and commercial information concerning the identification, valuation, allocation, and licensing of the smart-eyewear assets now implicated in this dispute. Because the present litigation concerns those same technologies and associated patent rights, the risk that Morgan Lewis' prior access to confidential information could advantage Defendants is not speculative but inherent in the overlap between the matters.

Beyond the protection of confidences, courts possess an obligation to safeguard the integrity of judicial proceedings and to maintain public confidence in the fairness of the adversarial process. *Fiandaca v. Cunningham*, 827 F.2d 825, 828–29 (1st Cir. 1987). Continued representation under these circumstances risks undermining confidence in the fairness of the proceedings and creates at minimum the appearance that confidential information may influence the litigation.

Disqualification is therefore warranted because it eliminates the risk of any presumed prejudice and preserves the integrity of this process.

## V. CONCLUSION

For the reasons stated herein, Solos respectfully requests that the Court grant its Motion to Disqualify Morgan Lewis & Bockius LLP as counsel for Defendants EssilorLuxottica USA, Inc., Luxottica of America, Inc., and Oakley, Inc., and from appearing in this matter in any capacity.

Respectfully submitted,

/s/ Jameson J. Pasek
Jameson J. Pasek, Esq. (BBO# 692924)
CALDWELL
200 Clarendon Street, 59th Floor
Boston, MA 02116
jameson@caldwelllaw.com
(857) 990-4914

*Attorneys for Plaintiff Solos Technology Limited*

Dated: February 18, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the Court's CM/ECF system on February 18, 2026, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that copies will be sent to any non-registered participants on this date.

/s/ Jameson J. Pasek
Jameson J. Pasek, Esq. (BBO# 692924)