**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SOLOS TECHNOLOGY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br>META PLATFORMS TECHNOLOGIES, LLC,<br>OAKLEY, INC.,<br>LUXOTTICA OF AMERICA INC., AND<br>ESSILORLUXOTTICA USA INC.,<br><br>Defendants. | Case No. 1:26-cv-10304-ADB |

## OPPOSITION OF MORGAN LEWIS AND THE LUXOTTICA DEFENDANTS TO PLAINTIFF'S MOTION TO DISQUALIFY MORGAN LEWIS

### Summary of the Argument

Disqualification is an extreme remedy that must be analyzed with caution and imposed only when absolutely necessary. Plaintiff Solos Technology Limited ("Solos") falls well short of meeting its heavy burden of proving that it is necessary to strip Defendants Luxottica of America Inc., EssilorLuxottica USA Inc., and Oakley, Inc., (collectively, the "Luxottica Defendants") of their choice of counsel. This is especially true because Morgan Lewis & Bockius LLP ("Morgan Lewis") never represented Solos or its officers or employees. To the contrary, Solos was the counterparty to Morgan Lewis's client, Kopin Corporation ("Kopin"), in the 2019 transaction that Solos wrongly contends creates a conflict of interest, and Morgan Lewis's role in that transaction was limited to giving discrete corporate, securities, and tax advice to Kopin on matters that are not material to this patent infringement case.

Solos's motion should be denied for three independent reasons. First, Morgan Lewis did not handle the intellectual property aspects of the 2019 transaction, by which Kopin sold certain

patents to Solos. A different law firm, Chu, Ring & Hazel LLP, was Kopin's primary counsel on the deal. Morgan Lewis's work on the 2019 transaction was minimal and limited to advising on several discrete corporate, securities, and tax law matters. Morgan Lewis did not advise Kopin about the substance of its patents or other intellectual property in connection with the 2019 transaction and made no assessment or evaluation of, and provided no advice concerning, the patent rights or other property to be transferred to Solos. Moreover, Morgan Lewis never did patent prosecution work for Kopin: Kopin had separate intellectual property counsel, Hamilton, Brook, Smith, & Reynolds, P.C. ("Hamilton Brook"), for its patent and trademark work. Finally, four of the five patents on which Solos bases its infringement claims were not issued until after the 2019 transaction closed, and so could not have been studied as part of the transaction. These facts establish that there is no substantial relationship between Morgan Lewis's work on discrete corporate, securities, and tax law aspects of the 2019 transaction and this lawsuit, which is a patent infringement case in which Solos claims that strangers to the 2019 transaction have infringed its patents.

Second, contrary to Solos's motion, the "substantial relationship" test does not apply here. The "substantial relationship" test applies where a lawyer who formerly represented a client in a matter seeks to represent another person "in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client." Mass. R. Prof. C. 1.9(a).[1] But Solos has never been the firm's client. Instead, Solos asserts that Morgan Lewis has a "material limitation" conflict under Mass. R. Prof. C. 1.7(a)(2), a type of conflict that exists only

[1] "The District of Massachusetts has adopted the Massachusetts Rules of Professional Conduct, per Local Rule 83.6(4)(B) [currently, Rule 83.6.1(a)][.]" *ebix.com, Inc. v. McCracken*, 312 F. Supp. 2d 82, 88-89 (D. Mass. 2004); *see also* Local Rule 83.6.1(a) ("The rules of professional conduct for attorneys appearing and practicing before this court shall be the Massachusetts Rules of Professional Conduct. . . .").

where “there is a significant risk that the representation of one or more clients will be materially limited by the lawyer’s responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.” Solos has not and cannot identify any material limitation on Morgan Lewis’s ability to fulfill its responsibilities to the Luxottica Defendants. In the absence of a conflict of interest, there is no reason to disqualify Morgan Lewis.

Third, even if Solos could establish a conflict of interest—which it cannot—the balance of factors would weigh against disqualification. Solos has not identified any specific confidential information that would give the Luxottica Defendants an unfair advantage. On the other hand, the Court should weigh heavily the right of the Luxottica Defendants to choose their counsel and the harm the Luxottica Defendants would suffer if they were forced to hire different counsel. These factors are particularly strong in this case because members of the Morgan Lewis team have been the Luxottica Defendants’ patent litigation counsel for over 15 years and handled over 85 patent disputes for them, including more than 20 matters pertaining to electronic eyewear (the subject of this case). Morgan Lewis consequently is uniquely qualified to defend this action, and any other law firm would have to spend significant time to get up to speed, at significant additional expense.

**Solos Bears a Heavy Burden of Proof.**

Disqualification of a party’s counsel is “a remedy of last resort,” and the party seeking to disqualify counsel “bears a ‘heavy burden’ in demonstrating that disqualification is justified[.]” *Dmitriev v. Mann*, No. 1:21-CV-40068-NMG, 2022 WL 22854439, at *4 (D. Mass. Sept. 13, 2022) (quoting *United States v. Gorski*, 36 F. Supp. 3d 256, 265 (D. Mass. 2014)). Disqualification is “‘a drastic measure which courts should hesitate to impose except when absolutely necessary.’” *Adoption of Erica*, 426 Mass. 55, 58 (1997) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)).

A motion to disqualify counsel can be "used for tactical or strategic purposes by opposing parties in a litigation" and therefore "must be examined with caution," particularly where brought by non-parties to the attorney-client relationship. *Combustion Eng'g Caribe, Inc. v. George P. Reintjes Co., Inc.*, 298 F. Supp. 2d 215, 219 (D.P.R. 2003) (citing *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984)). For that reason, "[t]he 'mere possibility of a conflict' will not do." *Id.* (quoting *Reyes Cañada v. Rey Hernandez,* 193 F. Supp. 2d 409, 411 (D.P.R. 2002)). The party seeking disqualification must adduce "'demonstrative proof detailing both the existence and the precise character of th[e] alleged conflict of interest,'" and a court "'will not infer a conflict based on mere conjecture or speculation.'" *Com. v. Zabek,* 86 Mass. App. Ct. 520, 523 (2014) (quoting *Com. v. Shraiar,* 397 Mass. 16, 20 (1986)). "'[V]ague and unsupported allegations are not sufficient to meet this standard.'" *Regalo Int'l, LLC v. Munchkin, Inc.*, 211 F. Supp. 3d 682, 687 (D. Del. 2016) (quoting *Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006)).

## I. There Is No "Substantial Relationship" Between Morgan Lewis's Prior Work for Kopin and This Lawsuit.

Even if (contrary to fact, as discussed below) Solos were correct that the "substantial relationship" test applied in *Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436 (1st Cir. 1991), and *Kevlik*, 724 F.2d at 850-51, should be applied in this case, the motion would fail. In patent litigation cases, "a substantial relationship exists where the overlap between issues in the prior and present cases is 'patently clear,' or else, 'the issues involved are identical or essentially the same.'" *Nike, Inc. v. Lululemon USA Inc.*, No. 23-CV-771 (JPO), 2023 WL 5938942, at *2 (S.D.N.Y. May 1, 2023) (quoting *Network Apps, LLC v. AT&T Mobility LLC*, 598 F. Supp. 3d 118, 129 (S.D.N.Y. 2022)). Consequently, "'a party who is moving to disqualify counsel must generally demonstrate a fairly close legal and factual nexus between the present and prior representations." *Id.* (quoting *Network Apps*, 598 F. Supp. 3d at 130). That nexus does not exist in this case. It is not even close.

In his sworn declaration, Morgan Lewis lawyer John J. Concannon III, who is responsible for the firm's relationship with and work for Kopin, testifies that neither Morgan Lewis nor Bingham McCutchen LLP ("Bingham") (which represented Kopin prior to Mr. Concannon joining Morgan Lewis in 2014) ever filed or prosecuted patent or trademark applications for Kopin. Concannon Decl. ¶¶ 2, 6, 7. Likewise, Richard A. Sneider, who served as Kopin's Chief Financial Officer from 1998 to 2025, also testifies that Morgan Lewis neither filed nor prosecuted Kopin's patent applications. Declaration of Richard A. Sneider ("Sneider Decl.") ¶ 5. Neither firm ever diligenced patents or other intellectual property for Kopin or served as its intellectual property counsel. *Id.* (as to Morgan Lewis); Concannon Decl. ¶ 7 (as to both firms). Instead, Morgan Lewis and, before it, Bingham have served as outside general corporate counsel and assisted Kopin with corporate law matters, securities law matters, tax matters, mergers and acquisitions, contracts, licensing, employment, real estate, litigation, and other general advice. Concannon Decl. ¶ 7. A different law firm, Hamilton Brook, has been Kopin's intellectual property counsel and has done Kopin's patent and trademark work. *Id.* at ¶ 8; Sneider Decl. ¶ 6.

With respect to the 2019 transaction pursuant to which Kopin sold certain of its intellectual property and other assets to Solos (the "2019 Transaction"), Chu, Ring & Hazel LLP ("Chu Ring")—not Morgan Lewis—was Kopin's primary counsel. Concannon Decl. ¶ 10; Sneider Decl. ¶ 8. Chu Ring negotiated the deal with Solos's counsel. Concannon Decl. ¶ 10. Morgan Lewis was not involved in the negotiation of the business terms and played no role in determining or advising about what patents and other intellectual property would be sold to Solos. *Id.*; Sneider Decl. ¶ 8.

Kopin and Chu Ring asked Morgan Lewis, as Kopin's outside corporate counsel, to provide limited advice on discrete matters pertaining to the 2019 Transaction that were unrelated to the substance of the technology. Concannon Decl. ¶ 11; Sneider Decl. ¶ 9. Those matters included (a)

advising Kopin on issues raised by the fact that Kopin's founder John Fan was on the other side of the transaction and associated with Solos, the buyer in the 2019 Transaction; (b) preparing high-level draft board of directors' resolutions authorizing Kopin to consummate the transaction; (c) advising on a tax law question pertaining to the jurisdiction in which the buyer entity was organized; (d) advising on CFIUS (the Committee on Foreign Investment in the United States) regulatory matters; (e) providing guidance concerning public statements made by Kopin concerning the transaction; and (f) offering limited comments on a draft Assert Purchase Agreement.[2] Concannon Decl. ¶ 11. These matters were the totality of Morgan Lewis's involvement with the 2019 Transaction. *Id.*

In connection with the 2019 Transaction, Morgan Lewis did not advise Kopin about the substance of its patent applications, patents, or other intellectual property. *Id.* at ¶ 13. It made no assessment or evaluation of, and provided no advice concerning, the patent rights or other property to be transferred to Solos. *Id.*; Sneider Decl. ¶ 9. Morgan Lewis did not review the patents or patent applications that were to be transferred to Solos as part of its work on the 2019 Transaction. Concannon Decl. ¶ 13; Sneider Decl. ¶ 10.

While Morgan Lewis did review drafts of the Asset Purchase Agreement and letter of intent for the 2019 Transaction, the schedules attached to the drafts did not contain any privileged or confidential information about the patents being sold to Solos. The schedules listed only basic information concerning the patents and patent application rights to be transferred to Solos,

[2] The firm's comments on the draft Asset Purchase Agreement were limited to corporate law matters pertaining to the parties' indemnity obligations, their knowledge of information included in Kopin's public securities law filings as it pertained to representations made in the Agreement, the manner in which the representations in the Agreement should reflect litigation pending at the time against Kopin, and other general transactional matters. Concannon Decl. ¶ 12. None of these comments concerned the substance of the patent rights being sold.

including for each item its title, patent or application number, country, the application date, the publication date, the grant date, and the expiration date. Concannon Decl. at ¶¶ 14-15. No information about the substance of the patents, applications, or the rights and technology associated with them was included. *Id.*

Significantly, of the five patents asserted in Solos's complaint in this case, only one of them (the '389 Patent) issued prior to the closing of the 2019 Transaction, and only just barely (it issued on May 28, 2019). *See* Docket 1-1, Exhibit 1 to the Complaint. The other four issued months, in the case of the '866 Patent (which issued on May 12, 2020), and years, in the case of the '055, '174, and '339 Patents (which issued on August 3, 2021; January 9, 2024; and February 4, 2025) after the 2019 Transaction closed. *See* Dockets 1-2, 1-3, 1-4, and 1-5, Exhibits 2 through 5 to the Complaint.

These facts establish both (1) that there is no relationship—much less a substantial relationship—between Morgan Lewis's work on the 2019 Transaction and Solos's patent infringement claims asserted in this 2026 lawsuit, and (2) that Morgan Lewis does not have any confidential information from its work on the 2019 Transaction that it could use to obtain an unfair advantage in this case. This patent infringement case will turn on whether Solos's claims, the vast majority of which were issued after the 2019 transaction, cover the Luxottica Defendants' products and whether those claims are valid, specifically, whether they are anticipated or rendered obvious by prior art or fail to meet any other patentability requirements set forth under 35 U.S.C. § 1, *et. seq*. Morgan Lewis's work on the 2019 Transaction on behalf of ***Kopin***, the party on the opposite side of the transaction from Solos, is wholly unrelated to any of those subjects. The simple fact that Solos finds its origins in Kopin is not enough to create a substantial factual or legal nexus

between Morgan Lewis's prior work and the claims in this case where the firm's work was unrelated to any of the patents at issue in this case. *See, e.g.*, *ebix.com*, 312 F. Supp. 2d at 94.

Solos has not identified any specific information that Morgan Lewis has that is material to Solos's infringement claims. Speculation about information Morgan Lewis could possibly have—unsupported by any actual evidence—is insufficient. *See Zabek*, 86 Mass. App. Ct. at 523; *Regalo Int'l, LLC*, 211 F. Supp. 3d at 687. Moreover, all of the facts necessary to support the claims and defenses in this case will be available in discovery. There is no indication whatsoever that Morgan Lewis has access to any secret, confidential information that would not become available during discovery to any lawyer handling the case. For these reasons, Solos cannot possibly satisfy the "substantial relationship" test it claims applies to its motion or establish that the Luxottica Defendants will have an unfair advantage by having the counsel of their choice.

Solos does not offer any document contradicting the facts stated above or any declaration by a person who has personal knowledge about the scope of Morgan Lewis's work. Rather, it offers only a single declaration, from Solos's Chief Financial Officer Kenneth Fan. Mr. Fan never worked at Kopin and so was not in a position to have personal knowledge about the scope of Morgan Lewis's work opposite Solos. Mr. Fan's lack of personal knowledge is highlighted by his declaration, which presents unsupported speculation. For example, in Paragraph 9, Mr. Fan posits that "Morgan Lewis advised Kopin regarding the negotiation, structuring, and execution of the Transaction Agreements," a term he defines in Paragraph 7 to mean the Asset Purchase Agreement, a Patent Assignment Agreement, and a License Agreement. But it just was not so. Chu Ring—not Morgan Lewis—advised Kopin about the negotiation, structuring, and execution of those agreements. Morgan Lewis did not review the Patent Assignment Agreement or License Agreement or provide legal advice about either document. Concannon Decl. ¶ 17. In Paragraphs

12 and 13 of his declaration, Mr. Fan lists categories of documents he ***supposes*** Morgan Lewis must have reviewed, but in fact Morgan Lewis neither reviewed nor provided any legal advice about these documents. *Id.* ¶¶ 18-19. Similarly, Mr. Fan suggests in Paragraph 15 of his declaration that Morgan Lewis must have advised Kopin on legal analysis concerning a list of intellectual property-related topics, but that, too, is untrue. *Id.* ¶ 20. Mr. Fan offers no competent evidence to support his speculation on these subjects.

The speculation in Solos's motion papers goes even further. Solos asserts that Morgan Lewis advised Kopin regarding the valuation of Solos's technology and that "Morgan Lewis' representation necessarily encompassed legal analysis concerning technology ownership, patent rights, licensing structures, and commercialization frameworks" for Solos's assets. Docket 18, Motion p. 2; Docket 19, Memorandum p. 7. Nothing supports those contentions. As confirmed by the declaration of Kopin's CFO from the time of the 2019 transaction, Morgan Lewis's work was limited to discrete corporate, securities, and tax issues. Sneider Decl. ¶ 9; Concannon Decl. ¶ 11. Solos cannot surmise its way into denying the Luxottica Defendants their chosen counsel.

This Court's decision in *ebix.com, Inc. v. McCracken* is instructive. In *ebix.com*, the plaintiff company sued a group of former employees and their new entities for breach of their noncompete obligations and misappropriation of trade secrets. 312 F. Supp. 2d at 85. The company then moved to disqualify defendants' counsel, claiming that counsel had previously represented the company's corporate predecessors in connection with a corporate merger and other matters, which the company asserted were substantially related to its suit against the former employees. The Court focused on the precise nature and scope of the work counsel had done for the company's predecessor and whether it was substantially related to the claims asserted in the lawsuit, finding in each instance it was not. *Id.* at 90-98. For example, the Court determined that the lawyers' prior

work for the company in connection with registering copyrights and trademarks was not substantially related to the alleged infringement of those copyrights and trademarks. *Id.* at 94. The Court also addressed the lawyers' previous "legal research on non-competes in general" for one of the former employees and found that it "had nothing to do with drafting or opining on [the specific] non-compete for ebix" at issue in the lawsuit and also did not create a conflict of interest because the former employee, not the company, was the lawyer's client with respect to that work. *Id.* at 93-94. Accordingly, the Court denied the motion.

As in *ebix.com*, there is no meaningful factual or legal nexus between Morgan Lewis's prior work on corporate, securities, and tax aspects of the 2019 Transaction for Kopin and the patent infringement claims by Solos in this case. Nothing Morgan Lewis did in connection with the 2019 Transaction would give it insight into the principal subject of this lawsuit, the infringement and validity of patent claims, the vast majority of which did not even exist at the time of the 2019 Transaction. Moreover, Kopin—not Solos—was the firm's client with respect to these matters, as was the case in *ebix.com*, where counsel's legal research on non-competes was performed for a party other than the party seeking to disqualify the firm. *Id.* at 93-94.

*Etna Prods. Co. v. Tactica Int'l, Inc.*, 234 F. Supp. 2d 442 (S.D.N.Y. 2002), provides another useful precedent. In *Etna Products*, the Southern District of New York denied a motion to disqualify plaintiff's counsel in a patent infringement case on the grounds that counsel previously had represented the defendant in substantially related matters. Even though counsel's prior work involved patent matters and other intellectual property work for the defendant, the court rejected the contention that the matters were substantially related, found that the claim that counsel had used confidential information acquired in the former representation was "unsubstantiated," and denied the motion. 234 F. Supp. 2d at 444-45. As in *Etna Products*, Morgan Lewis's prior work

had nothing to do with the substance of the patents being litigated in this infringement lawsuit and Solos has not substantiated any misuse of confidential information. For these reasons, just as in *Etna Products*, there is no basis to disqualify Morgan Lewis.

Solos cites *Smith & Nephew, Inc. v. Ethicon, Inc.*, 98 F. Supp. 2d 106 (D. Mass. 2000), but the case does not support its motion. In *Smith & Nephew*, the plaintiff company asserted that it owned certain inventions on which its employees had obtained patents as a consequence of provisions in their employment contracts. A lawyer at the law firm representing the plaintiff in the case had, while at a prior law firm, represented the employees in connection with negotiating the very employment agreements that were the basis for the claims in the case. As part of that negotiation, the lawyer had personally drafted, at his client's request, the key provision on which the instant lawsuit would turn. *Smith & Nephew, Inc.*, 98 F. Supp. 2d at 107-10. Thus, to handle the case, plaintiff's counsel would have to take a position on how the key provision should be read that was adverse to the position taken by his former clients.

Unlike *Smith & Nephew*, this patent infringement case does not turn on applying a contract that Morgan Lewis negotiated or drafted for a former client whose interests are adverse to the interest of its clients in this case. Instead, this litigation concerns whether Solos's patents have been infringed by strangers to the 2019 Transaction. Morgan Lewis never represented Solos and has never represented anyone in connection with the preparation of Solos's patents. There is, therefore, no conflict of interest.

## II. Solos Alleges a "Material Limitation" Conflict, But It Has Not Established Any Material Limitation.

Solos's motion is deficient for the additional reason that it is argued under the wrong legal standard. The "substantial relationship" test applies where a party seeks to disqualify a law firm based upon the firm's prior representation of a client in the same or a substantially related matter—

a situation governed by Mass. R. Prof. C. 1.9(a). *See Borges*, 935 F.2d 436 (affirming denial of motion to disqualify plaintiff's counsel based on the fact that counsel's law firm was representing the defendant in other litigation when counsel filed the lawsuit); *Kevlik*, 724 F.2d 844 (disqualifying law firm that previously represented a defendant in connection with a criminal matter arising from a traffic stop from later representing an adverse party in a civil suit arising from the exact same incident). Solos has cited no case applying the "substantial relationship" test to a Mass. R. Prof. C. 1.7(a)(2) "material limitation" conflict, which is unsurprising because the test does not apply to an alleged Rule 1.7(a)(2) conflict. *See, e.g.*, *Dmitriev*, 2022 WL 22854439, at *5-6 (disposing of motion to disqualify lawyer under Rule 1.7 without making reference to the substantial relationship test); *Kragel v. Virgin Islands Water & Power Auth.*, No. 2021-78, 2022 WL 17847083, at *8-12 (D.V.I. Dec. 22, 2022) (addressing Rule 1.7 and 1.9 aspects of motion to disqualify counsel separately and discussing whether the representations were "substantially related" only in the context of the Rule 1.9 analysis).

Solos does not contend that Morgan Lewis has a conflict under Mass. R. Prof. C. 1.9(a), nor could it. Solos was never a client of Morgan Lewis and so does not fall within the purview of Mass. R. Prof. C. 1.9(a). *See Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332 (Fed. Cir. 1988) (rejecting argument that assignee of patent rights obtains former client status of lawyers who served as in-house counsel and outside patent prosecution counsel for the original patent holder because "[t]he bottom line…is that attorneys represent *clients*—not legal positions or patents"). Rule 1.9(a), entitled "Duties to former clients," provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person **in the same or a substantially related matter** in which that person's interest are materially adverse to the interests of the former client" absent the former client's informed consent (emphasis supplied).

Morgan Lewis has no Rule 1.9(a) conflict because Kopin (not Solos) was Morgan Lewis's client in connection with the 2019 Transaction, and the Luxottica Defendants' interests in this patent infringement case are not materially adverse to Kopin's interests. Kopin is not a party and is not seeking to disqualify Morgan Lewis.

While the concept of a former and new matter being "substantially related" is express in Rule 1.9(a), it appears nowhere in Mass. R. Prof. C. 1.7(a)(2), which is the rule that addresses "material limitation" conflicts—the type of conflict that Solos asserts exists here. Rule 1.7(a) provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," and part (a)(2) of the rule defines a concurrent conflict of interest to mean, in pertinent part, circumstances where "there is **a significant risk** that the representation of one or more clients will be **materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer**" (emphasis supplied). As Comment 8 to Rule 1.7 expresses, the focus is on whether "there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests." Mass. R. Prof. C. 1.7, cmt. 8. Comment 8 goes on to explain that not every possible limitation creates a conflict, but instead "[t]he critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." *Id.; see Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP*, 473 Mass. 336, 345 (2015) (explaining "material limitation" conflict with express reference to Mass. R. Prof. C. 1.7(a)(2) and Comment 8, and affirming dismissal of lawsuit in which client claimed that law firm had material limitation conflict because it represented both

the client and a business competitor in prosecuting patents based on similar inventions, which the court determined did not create material limitation).

Instead of focusing on any limitation on Morgan Lewis's ability to represent the Luxottica Defendants—which is what a Rule 1.7(a)(2) material limitation is all about—Solos focuses on a concern that Morgan Lewis might (it speculates) have some important, confidential information from its prior work for Kopin on the 2019 Transaction that could be used against Solos in this case. Even if it were true that Morgan Lewis had that sort of information (it is not), it gets Solos nowhere.

First, Morgan Lewis's possession of that information would not create a material limitation conflict because it does not restrict what Morgan Lewis can do for the Luxottica Defendants. Solos has not identified any limitation—material or otherwise—on Morgan Lewis's ability to fulfill its responsibilities to its clients in this case. It draws no connection between any information the firm might have from its prior, limited work on the 2019 Transaction and any restriction on the firm's ability "to consider, recommend or carry out an appropriate course of action for" the Luxottica Defendants. Nor does Solos explain how any information the firm might have "will materially interfere with [Morgan Lewis's] independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of" the Luxottica Defendants. Morgan Lewis, therefore, has no material limitation conflict.

Second, Morgan Lewis has duties to Kopin under Mass. R. Prof. C. 1.6 and 1.9(c) that prevent it from revealing confidential information relating to its prior representation of Kopin or using that information to Kopin's disadvantage or the advantage of Morgan Lewis or a third person. There is no reason to assume that Morgan Lewis will not abide by its ethical responsibilities to Kopin. Kopin remains a current client of Morgan Lewis (on matters unrelated to this lawsuit), so Morgan Lewis has incentive to respect its duty of confidentiality to Kopin.

Third, although it is true that a lawyer's possession of confidential information from a representation can, in certain rare circumstances, create a material limitation conflict, none of those circumstances are present. Comment 31 to Mass. R. Prof. C. 1.7, for example, addresses potential confidentiality conflicts that may arise where a lawyer undertakes a joint representation of clients and both clients have a right to be informed of anything bearing on their representation. Those principles do not apply in our case, however, because there has been no joint representation. The Luxottica Defendants have no right to insist that Morgan Lewis must use any confidential information it has from its prior representation of Kopin.

Along similar lines, Comment g(ii) to Section 132 of the Restatement (Third) of the Law Governing Lawyers (2000) posits that a lawyer "might have" obligations to persons who were not the lawyer's client in certain circumstances where information about the non-client "was revealed to the lawyer under circumstances obligating the lawyer not to use or disclose the information." The Comment clarifies that "[t]hose obligations arise under other law, particularly the law of agency," rather than under the Rules of Professional Conduct themselves. This distinction comes with a critical corollary: "[a]n important difference between general agency law and the law governing lawyers is that general agency law does not normally impute a restriction to other persons. Thus, when a lawyer's relationship to a nonclient is not that of lawyer-client, but that, for example, of a subagent-principal, the imputation might not be required under the law governing subagents." This means that even where a lawyer has obtained confidential information about a non-client that is material to a subsequent matter adverse to the non-client, other lawyers at the same law firm may handle the subsequent matter without having a material limitation conflict.

Thus, even assuming (contrary to fact) that the Morgan Lewis lawyers who worked for Kopin on the 2019 Transaction obtained confidential information material to Solos's patent

infringement claims, Morgan Lewis has no material limitation conflict because none of those lawyers are working on the Luxottica case, and they have been screened by an ethical wall that prohibits any lawyer on the Kopin team from sharing any Kopin privileged or confidential information with any member of the team representing Luxottica in this case. Concannon Decl. ¶ 23; Declaration of Ali S. Razai ("Razai Decl.") at ¶ 12. The screen prevents the lawyers on the Luxottica team from accessing Kopin's privileged and confidential documents and information maintained by the firm. *Id.* There is, therefore, no material risk that any Kopin confidential information will be misused in connection with the defense of this patent infringement case.

A decision by the United States District Court for the District of Colorado in *Jefferson St. Holdings, LLC v. Otter Prods., LLC,* No. 123CV01514RMRSBP, 2023 WL 7551560 (D. Colo. Nov. 14, 2023), is illuminating. In *Jefferson Street*, the plaintiff in a patent infringement case moved to disqualify defendant's counsel on the basis that counsel's law firm had represented a former client "from whom [the plaintiff] asserts it took over the cradl phone case business," the patents for which were similar to those asserted in infringement lawsuit. *Jefferson St. Holdings, LLC,* 2023 WL 7551560, at *1-2. The law firm's prior work involved "intellectual property issues, both on trademarks for the 'cradl' brand as well as patent strategy for the cradl phone cases." *Id.*, at *3. And, before withdrawing from the prior representation, the firm even drafted and filed a parent patent application from which the patents being litigated derived. *Id.*, at *4.

Even on these facts, the court rejected the plaintiff's contention that it was entitled to "stand in the shoes" of the former client, recognizing that "'[t]he assignment of a patent does not transfer an attorney client relationship'" or the attorney-client privilege. *Id.*, at *12, quoting *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1336 (Fed. Cir. 1988). Having determined that the plaintiff was never the law firm's client, the court quickly disposed of the plaintiff's

contention that the firm nevertheless should be disqualified because it might breach a duty to its former client "by disclosing or using its confidential information in this case." *Id.*, at *22. The Court observed that "[t]here is no evidence that [the firm] has used any confidential communications . . . in representing [its client] in this case," and that the firm had implemented an ethical wall to protect the former client's confidential information. *Id.*, at *23. The court found "no grounds for employing the extreme remedy of disqualification." *Id.*

Just like in *Jefferson Street*, Solos was never a client of Morgan Lewis, and the fact that Morgan Lewis's client assigned patents to Solos does not create a conflict of interest or justify disqualification. Solos's speculation that Morgan Lewis could possibly have confidential information from its prior representation material to this patent infringement case that it could use against the assignee of its former client's patents—unsupported by any evidence this actually has happened—does not justify disqualification. Speculation does not suffice to establish a material limitation conflict, especially where the law firm has put an ethical wall in place to prevent misuse of confidential information. Solos has offered no case law or legal ethics support for its contention that Morgan Lewis has a material limitation conflict because there is none.

## III. The Luxottica Defendants' Right to Choose Their Counsel and the Harms They Would Suffer If Morgan Lewis Is Disqualified Outweigh Any Risk to Solos.

"'[N]ot every violation of a [rule of professional conduct] will necessarily lead to disqualification.'" *Network Apps*, 598 F. Supp. 3d at 128 (quoting *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 56 (S.D.N.Y. 2017)). Instead, "courts must balance a client's right to be represented by an attorney of their choice and the integrity of the legal system." *Somascan Plaza, Inc. v. Siemens Med. Sys., Inc.*, 187 F.R.D. 34, 37 (D.P.R. 1999) (citing *Kevlik*, 724 F.2d at 850). As part of its analysis, the Court should consider a range of interests including "a client's right to counsel of his choice," "the hardship suffered by a party whose lawyer is disqualified," "the

financial burden of a client to replace disqualified counsel," and "lawyers' interests in representing particular clients." *Combustion Eng'g Caribe*, 298 F. Supp. 2d at 219–20 (D.P.R. 2003) (quoting Douglas R. Richmond, *The Rude Question of Standing in Attorney Disqualification Disputes,* 25 Am. J. Trial Advoc. 17, 22–3 (2001)).

Weighing these factors, even if the Court were to conclude that Morgan Lewis might have material confidential information that could be misused in this case—a conclusion that cannot reasonably be drawn from the evidence—the Court should exercise its discretion to deny Solos's motion. *See United States v. Giorgi*, 840 F.2d 1022, 1034 (1st Cir. 1988) ("The decision to grant or deny a motion for disqualification is committed largely to the discretion of the trial court[.]"). As discussed above, the risk that Morgan Lewis has material, confidential information about Kopin's patents that would give the Luxottica Defendants an unfair advantage in this case is tenuous, at best. On the other hand, the Court should weigh heavily the right of the Luxottica Defendants to choose their counsel and the harm the Luxottica Defendants would suffer if they were forced to hire different counsel.

The Morgan Lewis lawyers handling the defense of this case have a deep and long history of representing the Luxottica Defendants in similar cases. Ali Razai, the head of the Morgan Lewis team on the case, has represented the Luxottica Defendants and their affiliates in contested patent matters since 2010. Razai Decl. ¶ 4; Declaration of Anbar Khal ("Khal Decl.") ¶ 4. Over the past 16 years, Mr. Razai has handled eighty-six (86) patent infringement litigations for the Luxottica Defendants and their affiliates and has been involved in over one hundred pre-litigation matters. Razai Decl. ¶ 5; Khal Decl. ¶ 5. After Mr. Razai and a group of other Knobbe Martens lawyers who did patent litigation work for the Luxottica Defendants joined Morgan Lewis in February 2025 (including Brandon Smith, who also is counsel for the Luxottica Defendants in this case),

the Luxottica Defendants transferred all patent-related litigation matters from Knobbe Martens to Morgan Lewis. Razai Decl. ¶ 6; Khal Decl. ¶ 4.

Since 2023, Mr. Razai and his colleagues (including Mr. Smith) have handled patent litigation matters involving the Ray-Ban Meta line of electronic eyewear—the very technology at issue in this case. Razai Decl. ¶ 7; Khal Decl. ¶ 5. This team has handled nine separate matters involving allegations of patent infringement against the Ray-Ban Meta line of eyewear across various jurisdictions, including federal district court, the United States International Trade Commission, and the United States Patent and Trademark Office. Razai Decl. ¶ 7. In total, the team has handled approximately twenty federal patent infringement matters for Luxottica Defendants related to electronic eyewear. *Id.* at ¶ 8.

The Morgan Lewis team's extensive experience representing the Luxottica Defendants in patent infringement matters, especially matters related to electronic eyewear, makes them uniquely qualified to defend the Luxottica Defendants in this action. *Id.* at ¶ 9; Khal Decl. ¶ 6. The team has extensive experience with prior art related to electronic eyewear, a unique understanding of the Ray-Ban Meta products at issue, and extensive institutional knowledge of the development process of the accused products, the documents and discovery related to the accused products, and the individuals having knowledge relevant to the lawsuit. Razai Decl. ¶ 9; Khal Decl. ¶¶ 5-6. Because of this experience and expertise, the Luxottica Defendants retained Morgan Lewis shortly after learning of this lawsuit without soliciting proposals from any other firms. Razai Decl. ¶ 10.

These facts establish that the Luxottica Defendants have a strong interest in keeping Morgan Lewis as their counsel in this case. The Luxottica Defendants would be materially disadvantaged if they were forced to find new counsel to defend them because they would lose the Morgan Lewis team's extensive experience with them, the prior art, and the accused products. *Id.*

at ¶ 11; Khal Decl. ¶ 7. If the Luxottica Defendants were forced to retain new counsel, new counsel would require significant time and expense to get up to speed regarding the technology, intellectual property, and products at issue in this case. Razai Decl. ¶ 11; Khal Decl. ¶ 7. This is not a case that other counsel can handle as efficiently and as well as Morgan Lewis can. No other firm has the depth of experience representing the Luxottica Defendants and their affiliates in cases like this one, including many matters involving the exact same products and technology.

The Court can and should consider these factors and balance them against any slight risk posed by the possibility—fueled by speculation only—that Morgan Lewis has confidential information pertaining to the patents at issue that could be used to create an unfair advantage, and find that on balance the interest of fairness and justice will be better served by permitting the Luxottica Defendants to continue with their counsel of choice.[3]

**Conclusion**

For these reasons, Solos's motion should be denied.

[3] Contrary to Solos's suggestion, allowing Morgan Lewis to continue representing its clients will not create a legitimate concern about safeguarding the integrity of the judicial process or an "appearance that confidential information may influence the litigation." Docket 19, Memorandum p. 11. There is nothing unseemly about allowing a law firm to continue representing clients it has represented for years in a matter adverse to a party whom the law firm never represented and has been adverse to in the past (in the 2019 Transaction).

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP,

By its attorneys,

*/s/ Gary M. Ronan*
Gary M. Ronan (BBO# 653899)
Kathleen M. Ritter (BBO# 716086)
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109
(617) 482-1776
gronan@goulstonstorrs.com
kritter@goulstonstorrs.com

LUXOTTICA OF AMERICA INC.,
ESSILOARLUXOTTICA USA INC.,
and OAKLEY, INC.,

By their attorneys,

*/s/ Katherine W. Soule*
Katherine W. Soule (BBO # 703965)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Tel: (617) 341-7700
Facsimile: (617) 341-7701
katherine.soule@morganlewis.com

Andrew V. Devkar (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067
Tel: (310) 907-1000
Facsimile: (310) 907-1001
andrew.devkar@morganlewis.com

Ali S. Razai (*pro hac vice* forthcoming)
Brandon G. Smith (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626-7653
Tel: (714) 830-0600
Facsimile: (714) 830-0700
ali.razai@morganlewis.com
brandon.smith@morganlewis.com

Dated: March 4, 2026

## CERTIFICATE OF SERVICE

I certify that this document, which is being filed using the Court's CM/ECF system, will be served electronically on counsel for the parties who are registered participants in the system and that, in addition, a copy will be emailed to counsel of record for the parties on March 4, 2026.

*/s/ Gary M. Ronan*
Gary M. Ronan (BBO# 653899)