**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SOLOS TECHNOLOGY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., et al.<br><br>Defendants. | Case No. 1:26-cv-10304<br><br>Leave to File Granted on<br>March 6, 2026 |

# PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISQUALIFY

Not once does Morgan Lewis & Bockius LLP ("Morgan Lewis") deny that it could have had access to confidential information relating to the intellectual property now at issue. Instead, Morgan Lewis emphasizes that it served as "corporate counsel" rather than intellectual-property counsel. That distinction is immaterial. The governing standard is not whether Morgan Lewis acted as IP counsel or whether confidential information was actually used in this litigation. The question is whether Morgan Lewis could have had access to confidential information that is substantially related to the issues now before the Court. The record confirms that it did.

Next, Morgan Lewis remains bound by its confidentiality obligations arising from its prior representation of Kopin Corporation ("Kopin"), including the smart-glasses division which operated within Kopin's corporate structure. In representing Kopin during the spin-off of that division, Morgan Lewis obtained confidential information concerning the smart-glasses business. Those confidences did not disappear when Solos Technology Limited ("Solos") later became a separate entity. Whether viewed through Rule 1.9(a), which prohibits a lawyer from representing a new client in a substantially related matter adverse to a former client, or through Rule 1.9(c),

which independently protects confidential information obtained during the prior representation, the result is the same: Morgan Lewis' continuing confidentiality obligations bar its adverse participation here.

Third, the authorities cited by Morgan Lewis do not support its position. Many of the cases arise in circumstances where the prior representation concerned matters unrelated to the later dispute or where the attorney's role was insulated from exposure to confidential information related to the subsequent litigation. Other cases involve circumstances where the party seeking disqualification failed to identify any meaningful overlap between the subject matter of the prior and subsequent representations. Those circumstances are not present here.

Lastly, the accompanying declarations fail to address the relevant disqualification issue. Rather than confronting Morgan Lewis' exposure to confidential information, the declarations focus on peripheral matters. For example, they emphasize that certain Morgan Lewis attorneys worked on corporate, tax, or securities aspects of the transaction, or describe the professional backgrounds and current roles of various individuals involved in the litigation. These points are unrelated to the governing framework.

## ARGUMENT

### A. The Fan Declaration Confirms Morgan Lewis Had Access to Confidential Information Substantially Related to the Asserted Patents

As explained in the opening brief, the governing inquiry is whether Morgan Lewis could have had access to confidential information that is substantially related to the issues now before the Court. *See* Plaintiff's Memorandum of Law in Support of Motion to Disqualify ("Pl.'s Mem.") (Doc. No. 19) at 2 (citing *Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436, 439–40 (1st Cir. 1991) (the relevant inquiry is whether the subject matter of the two representations is substantially

related), and *Kevlik v. Goldstein*, 724 F.2d 844, 850–51 (1st Cir. 1984) (focusing on the nature and scope of confidential information to which the attorney could have had access)). Morgan Lewis' opposition fails to fully address that standard. Here, the transactions centered on the value, monetization, transfer, and licensing of the very intellectual property from which the Asserted Patents arise. Even Kopin's announcement of the transaction identifies it as "one of the strategic steps we have taken to monetize our intellectual property (IP)." *See* Declaration of John Fan ("J. Fan Decl.") (Ex. A) ¶ 22.

Consistent with that strategic announcement, the declaration of Kopin's former Chairman and Chief Executive Officer, Dr. John C. C. Fan, states that Morgan Lewis' access was direct, substantive, and tied to the economic and ownership structure of the underlying intellectual property. Dr. Fan also states that, in June 2019, he discussed with Morgan Lewis partner John J. Concannon ("Mr. Concannon") a draft Memorandum of Understanding ("MOU") that "formed the basis" for the later Asset Purchase Agreement and that addressed "the transfer of patents, royalty provisions, equity allocations, and milestone-based financial obligations." *Id.* ¶ 14. Dr. Fan further explains that Mr. Concannon's "involvement in handling the MOU provided him [Mr. Concannon] access to confidential information concerning the technology and intellectual property now at issue in this litigation." *Id.* This testimony is critical for two reasons. First, it rebuts Morgan Lewis' suggestion that its role was so narrow that it could not have received confidential information substantially related to this case. Second, it places Morgan Lewis inside the drafting process regarding the very documents that assigned value to Solos' intellectual property.

Those transaction terms, moreover, are directly relevant to damages in patent litigation. *See, e.g.*, *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1583 (Fed. Cir. 1983) (an established

royalty informs infringement damages). Dr. Fan states that the royalty provisions governing Solos' payments to Kopin were discussed as part of the transaction's value structure. Most notably, the publicly filed Asset Purchase Agreement ("APA") disclosed the existence of a royalty obligation but intentionally redacted the specific royalty percentage from the SEC filing, replacing it with "[***]" placeholders. *See* J. Fan Decl. ¶¶ 17–18. The MOU also included milestone amounts distinct from those publicly disclosed. *Id*. ¶ 15–16. These documents thus contain nonpublic economic terms reflecting the parties' rights regarding the underlying intellectual property.[1] Morgan Lewis' involvement in the transaction and its access to the underlying documents thus exposed it to confidential royalty information that was not publicly disclosed. *Id*. ¶ 19–21; *see also* Declaration of Dr. Chi-Chia Hsieh (Ex. B) ¶ 7–10. The publicly filed APA also omitted schedules and exhibits containing "technical, proprietary, and commercially sensitive information." *Id*. ¶ 19–21.

Of equal significance, Dr. Fan links those confidential terms to the Asserted Patents at issue. He explains that the transaction documents referenced patents or applications that either are the Asserted Patents themselves or later issued into them. *Id*. ¶ 23. That showing negates Morgan Lewis' position that the Asserted Patents are unrelated simply because they issued after 2019. In addition to the Asserted Patents correlating to the intellectual property underlying the transactions, the timing of the applications further demonstrates Morgan Lewis' exposure to confidential information concerning that intellectual property during the pre-transaction discussions. For

[1] Solos does not concede, admit, or otherwise take a position regarding any damages calculations based on confidential royalty rates, milestone payments, or other nonpublic financial terms referenced herein. Such references are included solely to illustrate the nature of the confidential information to which Morgan Lewis had access.

example, one of the Asserted Patents—the 10,651,866 patent—was subject to a nonpublication request filed on April 30, 2019, which later published when the patent issued on May 12, 2020. This illustrates that during the pre-transaction discussions, including after April 30, 2019, and well before any publication, Morgan Lewis had access to confidential information impacting the value of intellectual property that was part of the spin-off.

Indeed, nowhere does Morgan Lewis deny that it could have had access to nonpublic valuation and technical information, including information contained in the schedules and exhibits that Morgan Lewis itself omitted from the SEC filings; the MOU terms; and the milestone and royalty provisions, including the specific royalty rate redacted from the publicly filed APA. Nor could it plausibly do so while simultaneously representing that it handled board resolutions, corporate disclosures, and structuring for a transaction publicly described by Kopin as a step taken to "monetize [its] intellectual property." *See* J. Fan Decl. ¶ 22. The point is not only that the final APA contained economic terms, but that Morgan Lewis had access to nonpublic information concerning those provisions and other confidential information during meetings and board-level discussions.

**B. Morgan Lewis' Confidentiality Obligations Extend to Solos Both Within the Kopin Enterprise and After the Spin-Off**

Rule 1.9 imposes two confidentiality obligations relevant here. First, Rule 1.9(a) prohibits a lawyer from representing another person in the same or a substantially related matter where that person's interests are materially adverse to those of a former client, particularly where confidential information obtained in the prior representation could materially advance the new client's position. Second, Rule 1.9(c) independently protects that information by prohibiting the lawyer from using

or revealing confidential information relating to the prior representation to the disadvantage of the former client or for the advantage of another person.

Courts recognize that an attorney's duties regarding these protections extend across a corporate enterprise. Subsidiaries and affiliates that operate as part of an integrated organization are treated as a single client for purposes of conflict-of-interest analysis. *See*, *e.g.*, *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 210–11 (2d Cir. 2010) (corporate affiliates treated as a single client where operationally integrated); *see also Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1110–13 (E.D. Cal. 2015) (disqualifying counsel where related entities shared legal and operational framework). Notably, these principles apply to business units operating within a corporation. *UCAR Int'l Inc. v. Union Carbide Corp.*, 2002 WL 31519616, at *3–4 (S.D.N.Y. Nov. 8, 2002).

In *UCAR Int'l Inc. v. Union Carbide Corp.*, the court addressed a dispute arising from the restructuring of a corporate division that later became the subject of litigation. 2002 WL 31519616, at *1–4 (S.D.N.Y. Nov. 8, 2002). There, counsel had advised the parent corporation during negotiations of a transaction and was privy to confidential information concerning the structure, valuation, and strategic purposes of the transaction. *Id*. at *3. Although the firm formally represented the parent entity, the court recognized that the confidential information obtained during those negotiations was relevant to the later dispute involving the business unit. Because the litigation turned on issues related to the transaction, the court disqualified counsel. *Id*. at *4–6.

Here, Morgan Lewis represented Kopin while the Solos business operated as a division within Kopin's corporate structure. Morgan Lewis had served as outside counsel to Kopin for years leading up to the spin-off. In the months preceding the separation, Morgan Lewis participated in

discussions laying the framework for the separation of the smart-glasses business and the allocation of the intellectual property associated with that division. These discussions occurred before Solos retained independent counsel and before Solos was incorporated. *See* J. Fan Decl. ¶¶ 10–13. Morgan Lewis' representation of Kopin therefore encompassed matters relating to the Solos business while it operated as part of the Kopin enterprise. Because the present litigation concerns an overlapping body of intellectual property, the matters are at minimum substantially related within the meaning of Rule 1.9(a). Furthermore, the information Morgan Lewis obtained during the spin-off discussions constitutes confidential information relating to the prior representation and is independently protected from later use or disclosure under Rule 1.9(c).

Accordingly, since a conflict exists under Rule 1.9(a), the same circumstances necessarily implicate Rule 1.9(c)'s continuing prohibition on the use or revelation of confidential information obtained during the prior representation.

In the alternative, if analyzed under Rule 1.7(a)(2), the same circumstances create a concurrent conflict. Morgan Lewis represents the Luxottica defendants while its other client Kopin maintains a significant ownership interest in Solos and an ongoing license with Solos, meaning the outcome of this litigation directly affects the value of Kopin's stake and the intellectual property in which it has rights. Morgan Lewis' advocacy on behalf of the Luxottica defendants therefore carries a significant risk of materially limiting its responsibilities to Kopin, because arguments that attempt to diminish the value or commercialization of the Solos intellectual property would impact Kopin's economic interest. At the same time, Morgan Lewis' involvement in the spin-off gave it access to confidential information concerning the intellectual property at issue. As such, Morgan Lewis cannot fully challenge or test those issues in this litigation without

risking the misuse of confidential information obtained during the prior representation, creating a significant risk that its representation of the Luxottica defendants will be materially limited within the meaning of Rule 1.7(a)(2).[2]

### C. The Authorities Cited by Morgan Lewis Either Support Solos or Are Inapposite

Morgan Lewis relies on cases supporting the very proposition that a moving party need not prove that confidential information was used. In other words, it is sufficient to show that confidential information could have been obtained during the prior representation and is substantially related to the subsequent matter. *Rodriguez v. Montalvo*, 337 F. Supp. 2d 212 (D. Mass. 2004); *Dee v. Conference Holdings, Inc.*, No. 976608, 1998 WL 1247926 (Mass. Super. July 14, 1998). That is the circumstance presented here.

Other cases cited by Morgan Lewis, including *Dmitriev v. Mann*, No. 1:21-CV-40068-NMG, 2022 WL 22854439 (D. Mass. Sept. 13, 2022), recite the proposition that disqualification is a serious remedy that courts do not impose lightly. That principle does not alter the governing framework, and *Dmitriev* nevertheless involved a materially different situation concerning an alleged conflict among jointly represented plaintiffs. It did not involve a lawyer's prior access to confidential information or the substantial-relationship analysis that governs the disqualification inquiry in the instant matter.

Several other authorities cited by Morgan Lewis fail to provide even persuasive value. For example, Morgan Lewis cites *Nike, Inc. v. Lululemon USA Inc.*, No. 23-CV-771 (JPO), 2023 WL

---

[2] Solos recognizes that the central disqualification inquiry arises under the "substantially related" analysis associated with Rule 1.9(a). Rule 1.7 is also implicated, however, because the same facts give rise to a concurrent conflict based on Morgan Lewis' duties to Kopin, which maintains a twenty percent ownership interest in Solos while Morgan Lewis appears in this action on behalf of the Luxottica defendants.

5938942, at *2 (S.D.N.Y. May 1, 2023), which applies Second Circuit precedent defining a "substantial relationship" as one where the overlap between issues is "identical." That formulation reflects Second Circuit doctrine and does not govern disqualification analysis in Massachusetts. The circumstances in *Nike* were also materially different: the prior representation involved general advice regarding patent procurement strategy and premature public disclosure, rather than work involving the specific patents or technology asserted in the later litigation.

Many of the remaining authorities, moreover, are noncontrolling or arise in materially different contexts, including *Regalo Int'l, LLC v. Munchkin, Inc.*, 211 F. Supp. 3d 682 (D. Del. 2016) (where prior representation involved trademarks rather than the patent at issue); *Etna Prods. Co. v. Tactica Int'l, Inc.*, 234 F. Supp. 2d 442 (S.D.N.Y. 2002) (involving patent work unrelated to the patent involved in the subsequent litigation); *Kragel v. V.I. Water & Power Auth.*, No. 2021-78, 2022 WL 17847083 (D.V.I. Dec. 22, 2022) (arising from a joint-defense agreement in an unrelated case and did not involve relevant confidential information); and *Somascan Plaza, Inc. v. Siemens Med. Sys., Inc.*, 187 F.R.D. 34 (D.P.R. 1999) (concerning prior tax-exemption representation unrelated to the later contract dispute).[3]

**D. The Declarations Submitted by Morgan Lewis Do Not Address the Relevant Disqualification Inquiry**

Morgan Lewis primarily relies on the declaration of partner John J. Concannon, but that declaration does not address the relevant issue here. Mr. Concannon attempts to characterize

[3] Other matters cited by Morgan Lewis are inapposite. *Adoption of Erica*, 426 Mass. 55 (1997) involved a child-welfare adoption proceeding and denied disqualification because there was no showing that the matters were related or that confidential information could be used in the subsequent case. *Commonwealth v. Zabek*, 86 Mass. App. Ct. 520 (2014) arose in the criminal context and addressed a defendant's right to conflict-free counsel rather than successive representation or misuse of confidential information.

Morgan Lewis' role as limited to corporate work with no involvement in intellectual property matters, but that distinction is immaterial to the governing inquiry. *See Borges*, 935 F.2d at 439–40; *see also The Hillman Group, Inc. v. KeyMe, LLC*, 439 F. Supp. 3d 845, 855–59 (E.D. Tex. 2020) (finding patent infringement suit substantially related to corporate counsel's past representation of business, where counsel attended board meetings involving confidential IP discussions). Even accepting Mr. Concannon's characterization as true, his declaration does not deny that Morgan Lewis' representation could have exposed it to confidential information substantially related to the issues in this case. Similarly, the declaration of Richard A. Sneider does not dispute that Morgan Lewis could have had such access.

The declarations of Anbar Khal and Ali Razai are likewise unrelated to the disqualification inquiry. Mr. Khal primarily describes relationships among the Luxottica entities and Morgan Lewis attorneys in other litigation, but familiarity between counsel and a party is not a factor in the substantial-relationship analysis. *See*, *e.g.*, *John Crane Production Solutions, Inc. v. R2R & D, LLC*, 2012 WL 3453696, at *7 n.14 (N.D. Tex. Aug. 14, 2012) (declining to consider "the length of the attorney-client relationship"). Mr. Razai similarly focuses on those relationships and on Morgan Lewis' creation of an internal "ethical wall." But an ethical wall does not cure a conflict arising from prior exposure to confidential information. If anything, it implicitly acknowledges that confidential information could exist within the firm.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the opening memorandum, Plaintiff Solos Technology Limited respectfully requests that the Court grant its Motion to Disqualify Morgan Lewis & Bockius LLP from participating in this action.

Respectfully submitted,

/s/ Jameson J. Pasek

Jameson J. Pasek, Esq. (BBO# 692924)
CALDWELL
200 Clarendon Street, 59th Floor
Boston, MA 02116
jameson@caldwelllaw.com
(857) 990-4914

*Attorneys for Plaintiff Solos Technology Limited*

Dated: March 13, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the Court's CM/ECF system on March 13, 2026, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Jameson J. Pasek

Jameson J. Pasek, Esq. (BBO# 692924)