**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

SOLOS TECHNOLOGY LIMITED,

     Plaintiff,

    v.

META PLATFORMS, INC.,
META PLATFORMS TECHNOLOGIES, LLC
OAKLEY, INC.
LUXOTTICA OF AMERICA, INC. AND
ESSILORLUXOTTICA USA, INC.

     Defendants.

Civil Action No. 1:26-cv-10304

**REQUEST FOR HEARING**

**DEFENDANTS META PLATFORM, INC. AND META PLATFORMS
TECHNOLOGIES, LLC'S MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(7),
OR IN THE ALTERNATIVE, STAY THE PROCEEDINGS**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

      A.      BlueRadios and Kopin Jointly Develop Golden-i Technology ............................ 2

      B.      BlueRadios Establishes Joint Ownership of Golden-i Intellectual Property .......... 4

      C.      Plaintiff Purchases Kopin's Intellectual Property Rights ..................................... 6

      D.      BlueRadios Claims An Ownership Interest In the Asserted Patents ...................... 7

III.     LEGAL STANDARDS ....................................................................................... 8

      A.      Joinder of Required Parties ............................................................................. 8

      B.      Stay ............................................................................................................. 9

IV.     ARGUMENT .................................................................................................. 10

      A.      This Action Should be Dismissed Under Rules 12(b)(7) and 19 for
             Nonjoinder of a Required Party ..................................................................... 10

           1.      BlueRadios is a required party under Rule 19(a) ..................................... 10

           2.      BlueRadios cannot be involuntarily joined .............................................. 15

           3.      This case must be dismissed under Rule 19(b) ........................................ 15

      B.      Alternatively, This Action Should be Stayed ................................................. 18

V.      CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*A123 Sys. v. Hydro-Quebec*,
626 F.3d 1213 (Fed. Cir. 2010)..................................................................................................16

*Acton Co. v. Bachman Foods, Inc.*,
668 F.2d 76(1st Cir. 1982)......................................................................................................9,20

*AntennaSys, Inc. v. AQYR Techs., Inc.*,
976 F.3d 1374 (Fed. Cir. 2020)..................................................................................................10

*Automated Transactions, LLC v. Bath Sav. Inst.*,
No. 2:12-cv-393-JAW, 2013 U.S. Dist. LEXIS 48964 (D. Me. Mar. 14, 2013).....................20

*Axis Ins. Co. v. Hall*,
287 F.R.D. 110 (D. Me. 2012)......................................................................................................9

*Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*,
633 F. Supp. 3d 385 (D. Mass. 2022) ........................................................................................20

*BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*,
No. 21-cv-10488-DJC (D. Mass.)................................................................................................6

*BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*,
No. 24-1942, 2026 U.S. App. LEXIS 3271 (1st Cir. Feb. 2, 2026)................................ *passim*

*BlueRadios, Inc. v. Kopin Corp.*,
No. 16-cv-2052, 2017 U.S. Dist. LEXIS 231631 (D. Colo. Jan. 24, 2017) ...............2, 3, 4, 12

*BlueRadios, Inc. v. Kopin Corp.*,
No. 16-cv-2052-JLK (D. Colo.)...................................................................................5, 6, 14, 16

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*,
142 F.3d 1266 (Fed. Cir. 1998)....................................................................................................8

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
517 F.3d 1284 (Fed. Cir. 2008)..................................................................................................15

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
623 F. Supp. 2d 1144 (E.D. Cal. 2009)......................................................................................16

*Diomed, Inc. v. Total Vein Sols., LLC*,
498 F. Supp. 2d 385 (D. Mass. 2007) ....................................................................................9, 19

*Ethicon, Inc. v. U.S. Surgical Corp.*,
 135 F.3d 1456, 1468 (Fed. Cir. 1998)................................................................10, 15

*Hilton v. Kerry*,
 No. 13-11710-TSH, 2013 U.S. Dist. LEXIS 169661 (D. Mass. Dec. 2, 2013)......................20

*Israel Bio-Eng'g Project v. Amgen Inc.*,
 475 F.3d 1256 (Fed. Cir. 2007)..........................................................................15

*Landis v. North Am. Co.*,
 299 U.S. 248 (1936)........................................................................................9

*Lee v. Anthony Lawrence Collection, L.L.C.*,
 47 F.4th 262 (5th Cir. 2022) ......................................................................11, 18

*McCowen v. Jamieson*,
 724 F.2d 1421 (9th Cir. 1984) ...........................................................................18

*N. Arapaho Tribe v. Harnsberger*,
 697 F.3d 1272 (10th Cir. 2012) .........................................................................17

*Names for Dames v. Gimbel*,
 1989 WL 82417 (S.D.N.Y. July 19, 1989) ...............................................................19

*Nken v. Holder*,
 556 U.S. 418 (2009)....................................................................................9, 20

*Phoenix Ins. Co. v. Delangis*,
 2015 U.S. Dist. LEXIS 31161 (D. Mass. Feb. 17, 2015) ..................................................9

*Picciotto v. Cont'l Cas. Co.*,
 512 F.3d 9 (1st Cir. 2008)............................................................................8, 9, 20

*Picone v. Shire*,
 LLC, 2020 U.S. Dist. LEXIS 99910 (D. Mass. Jun. 8, 2020) ...............................................9

*In re Republic of Philippines*,
 309 F.3d 1143 (9th Cir. 2002) ...........................................................................18

*Schering Corp. v. Roussel-UCLAF SA*,
 104 F.3d 341 (Fed. Cir. 1997)...........................................................................15

*Shermoen v. United States*,
 982 F.2d 1312 (9th Cir. 1992) ...........................................................................11

*STC.UNM v. Intel Corp.*,
 754 F.3d 940 (Fed. Cir. 2014)........................................................................15, 17

*STC.UNM v. Intel Corp.*,
  767 F.3d 1351 (Fed. Cir. 2014)............................................................................8, 15

*Televisa, S.A. de C.V. v. Koch Lorber Films*,
  382 F. Supp. 2d 631 (S.D.N.Y. 2005)........................................................................18

*Tell v. Trustees of Dartmouth College*,
  145 F.3d 417 (1st Cir. 1998)........................................................................................16

*Travelers Indem. Co. v. Dingwell*,
  884 F.2d 629 (1st Cir. 1989)..........................................................................................9

*Univ. of Pittsburgh v. Varian Med. Sys., Inc.*,
  569 F.3d 1328 (Fed. Cir. 2009).....................................................................................11

*White v. Univ. of Cal.*,
  765 F.3d 1010 (9th Cir. 2014) ......................................................................................11

**Other Authorities**

35 U.S.C. § 256............................................................................................................5

Fed. R. Civ. P. 12(b)(7)...........................................................................................1, 9

Fed. R. Civ. P. 12(h)(2)...............................................................................................18

Fed. R. Civ. P. 19(b) .......................................................................................... *passim*

Fed. R. Civ. P. 19............................................................................8, 9, 10, 15, 19

Fed. R. Civ. P. 19(a) ......................................................................8, 10, 11, 15

Fed. R. Civ. P. 19(a)(1)..................................................................................................8

Fed. R. Civ. P. 19(a)(1)(B) .........................................................................................11

Fed. R. Civ. P. 19(b)(2)...........................................................................................18, 19

Pursuant to Federal Rule of Civil Procedure 12(b)(7), Defendants Meta Platforms, Inc. and Meta Platforms Technologies, LLC (collectively, "Meta") respectfully move to dismiss the Complaint (Dkt. 1) for failure to join a required party. In the alternative, Meta respectfully requests this Court stay the action pending resolution of the ongoing patent ownership dispute.

## I.     INTRODUCTION

In a patent infringement case, all patent owners must be joined as plaintiffs. But Plaintiff has not done so. After the filing of this suit, BlueRadios, Inc. sent a letter to Meta referencing Solos' Complaint against Meta and stating that "BlueRadios, Inc. believes they are the co-owners of the 5 patents specified in the complaint filed by Solos Technology, Limited on 01/23/26." *See* Ex. 1 (BlueRadios Letter) at 3. BlueRadios, Inc. has a nonfrivolous claim to co-ownership of the Asserted Patents, either through contract or inventorship. BlueRadios is therefore a required party (and cannot be involuntarily joined). Absent BlueRadios, this suit must be dismissed.

BlueRadios and Plaintiff's predecessor company, Kopin Corp., agreed to jointly develop a virtual reality headset device. BlueRadios provided Kopin with its previously developed technology and the two companies worked together to further develop it into a commercial product. BlueRadios' technology and the jointly developed BlueRadios-Kopin technology became the foundation of the commercially sold Solos™ device.

The parties agreed that while Kopin would handle obtaining patents on their intellectual property, the two companies would be co-owners of the jointly developed intellectual property and BlueRadios would be the sole owner of its independently developed intellectual property. But then Kopin cut BlueRadios out: it removed BlueRadios' employees as named inventors on some applications, abandoned other applications listing BlueRadios' employees as inventors, and misappropriated BlueRadios' technology as its own. Based on those facts, a jury already

determined that BlueRadios is the rightful co-owner to their jointly developed technology and BlueRadios' employees were improperly omitted as inventors on at least one patent. A related lawsuit against Kopin's patent prosecution counsel is ongoing.

Amid its litigation against BlueRadios in Colorado, Kopin sold its Solos™ intellectual property, including the patent portfolio, to Plaintiff. And now Plaintiff has sued Meta and the other defendants. Because BlueRadios has a non-frivolous claim of han ownership interest in the Asserted Patents, it is a required party. To protect the interests of Meta and BlueRadios, and preserve resources of all parties and this Court, the most equitable outcome is dismissal. In the alternative, this case should be stayed pending resolution of BlueRadios' and Plaintiff's ownership dispute.

## II.  FACTUAL BACKGROUND

### A.  BlueRadios and Kopin Jointly Develop Golden-i Technology

BlueRadios is a three-person, Colorado-based engineering company that focuses on data and voice communications through wireless technology like Bluetooth.[1] *BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, No. 24-1942, 2026 U.S. App. LEXIS 3271, at *2, 22 (1st Cir. Feb. 2, 2026); Ex. 4 (BlueRadios Colorado Compl.) at ¶ 7. Kopin is a supplier of micro-displays and small optical displays for sale in consumer markets. Compl., ¶¶ 51-52.; Ex. 4 at ¶ 9; *BlueRadios*, 2026 U.S. App. LEXIS 3271 at *2. Although neither are parties to this case, they are

---

[1] Because certain primary documents are confidential or not otherwise available to Meta, much of the relevant facts are taken from the First Circuit's and Colorado District Court's recitation of them in *BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, No. 24-1942, 2026 U.S. App. LEXIS 3271 (1st Cir. Feb. 2, 2026), and *BlueRadios, Inc. v. Kopin Corp.*, No. 16-cv-2052, 2017 U.S. Dist. LEXIS 231631 (D. Colo. Jan. 24, 2017). Where possible, additional sources have been cited. Notably, the First Circuit explained that its statement of facts "most often draw[s] from the parties' statements of undisputed facts filed to the district court, but where necessary, [] pull[s] directly from evidentiary source material -- a contract, patent applications, emails, deposition transcripts, and the like." *BlueRadios*, 2026 U.S. App. LEXIS 3271, at *2 n.2.

both critical players in why this suit must be dismissed.

In 2006, BlueRadios and Kopin began a joint endeavor to develop a virtual reality ("VR") headset known as "Golden-i." *BlueRadios*, 2026 U.S. App. LEXIS 3271 at *2-3; *BlueRadios, Inc. v. Kopin Corp.*, 2017 U.S. Dist. LEXIS 231631, at *3 (D. Colo. Jan. 24, 2017); Ex. 1 at 1. Golden-i was supposed to be a "headset . . . capable of playing and controlling audio and video, hands-free, by voice, and wirelessly." Ex. 5 (BlueRadios Mass. Compl.) at ¶ 32. According to BlueRadios, Golden-i eventually incorporated technology "for head mounted computers, with wireless, hands-free motion and voice control capabilities that displayed data." *Id.* at ¶ 1.

In 2007, BlueRadios and Kopin entered into a contract governing their joint development project. *Id.* Under the agreement, BlueRadios would develop a wireless design solution for Kopin, which would in turn commercialize micro-display products containing the BlueRadios technology. *BlueRadios*, 2017 U.S. Dist. LEXIS 231631, at *3. BlueRadios asserts that it contributed all intellectual property related to wireless transmission and micro-PCBs, which it had developed prior to engaging with Kopin. Ex. 5 at ¶¶ 33-46. BlueRadios and Kopin ultimately "jointly developed Golden-i." 2017 U.S. Dist. LEXIS 231631, at *5; *see also* Ex. 4 at ¶¶ 11, 16; Ex. 1 at 1 (BlueRadios asserting that it "was the original architect, designer, developer, and manufacturer for the Golden-i family of devices. Kopin Corporation technical role was limited to providing BlueRadios their micro-display.").

Relevant here, that contract provided that "BlueRadios and Kopin would jointly own any IP that BlueRadios developed for the Golden-i project." *BlueRadios*, 2026 U.S. App. LEXIS 3271 at *3; *see also id.* at *4 ("The contract provides that any technology developed by the parties would be jointly owned. Pursuant to the contract, the parties jointly developed wireless headset technology named Golden-i."), *6 ("per the contract the Patent Applications and Golden-i

- 3 -

technology were jointly owned by BlueRadios and Kopin"); Ex. 4 at ¶ 13 (BlueRadios asserting that the contract "provided that any intellectual property rights developed by BlueRadios under the proposal would be owned jointly by BlueRadios and Kopin"); Ex. 1 at 1 (BlueRadios asserting that it "acquired IP ownership under a joint venture contract from Kopin").

The contract likewise provided that Kopin was responsible for filing "patent protections for any IP developed during the Golden-i project" at its expense. *Id.*; *see also BlueRadios*, 2017 U.S. Dist. LEXIS 231631, at *10 ("In this case the contract between Kopin and BlueRadios shows the parties' clear understanding that Kopin would undertake the necessary steps to obtain patents on jointly developed technologies for the benefit of both itself and BlueRadios."). Pursuant to this agreement, between January 2008 and January 2009, Kopin filed several patent applications directed to Golden-i technology, including some that—at least originally—included BlueRadios' employees as named inventors. *BlueRadios*, 2026 U.S. App. LEXIS 3271 at *7-8. According to BlueRadios, without its knowledge at the time, Kopin later removed BlueRadios' employees from patent applications, abandoned at least one application for a patent where BlueRadios' employees were the sole inventors, and, in at least one instance, falsely claimed that Kopin had a 100 percent interest in the Golden-i technology patents. *Id.* at *6-8; Ex. 4 at ¶¶ 25-29. BlueRadios also asserts that in late 2008, Kopin sent draft agreements requesting that BlueRadios' employees assign their rights in BlueRadios' technology to Kopin; however, BlueRadios refused to execute those documents and never assigned any of its patent rights to Kopin. Ex. 4 at ¶ 32.

For unknown reasons, BlueRadios and Kopin had a falling out in mid-2009 and ceased not only their joint work on Golden-i, but all communication. *BlueRadios*, 2026 U.S. App. LEXIS 3271 at *8-9. Nonetheless, BlueRadios never terminated the contract. Ex. 4 at ¶ 22; Ex. 1 at 3.

**B.      BlueRadios Establishes Joint Ownership of Golden-i Intellectual Property**

In 2014, when reviewing their patent portfolio for potential sale, BlueRadios discovered

- 4 -

that it was neither listed as an assignee on any patents related to Golden-i technology nor were its employees listed as inventors. *BlueRadios*, 2026 U.S. App. LEXIS 3271 at *10-12. When BlueRadios reached out to Kopin about the discrepancy, Kopin dismissed BlueRadios' concerns and asserted that Kopin had correctly named the inventors on all of its patents and pending applications. *Id*.

BlueRadios then sued Kopin in the U.S. District Court for the District of Colorado for breach of contract, trade secret misappropriation, and correction of inventorship, among other claims, in *BlueRadios, Inc. v. Kopin Corp.*, No. 16-cv-2052-JLK, (D. Colo.) (the "first BlueRadios litigation"). BlueRadios asserted that it had "inventorship rights to the BlueRadios Technology and Kopin-BlueRadios IP," and that "inventors employed by BlueRadios had been left off of patent applications prepared and filed by Kopin's patent counsel." Ex. 4 at ¶ 33. BlueRadios likewise claimed that "the Solos™ products resulted from the Golden-i joint venture between BlueRadios and Kopin, and incorporate BlueRadios Technology and the Kopin-BlueRadios IP." *Id*. at ¶ 35; *see also* Ex. 1 at 1 (BlueRadios asserting that "[t]he genesis of the Solos™ IP came from the Golden-i project co-developed by BlueRadios and Kopin").

During the first BlueRadios litigation, the court ordered correction of inventorship under 35 U.S.C. § 256 of two patents that had omitted BlueRadios inventors. Ex. 6 (Colorado Order). And following a jury trial and verdict, the court ordered the inventorship of another patent to be corrected to include BlueRadios employees. Ex. 7 (Colorado Final Judgment) at 2-3. BlueRadios ultimately secured a multimillion-dollar verdict against Kopin for its conduct. In so doing, the jury found that it was "more likely than not that Kopin agreed under the contract" to "[a]ssign BlueRadios co-ownership of patents that incorporate Golden-i technology." Ex. 8 (Colorado Verdict Form) at 3. The jury further found that Kopin "incorporate[ed] BlueRadios' employees'

inventive contributions in issued patents and patent applications without naming them as co-inventors," and "incorporate[ed] BlueRadios' developments in issued patents and patent applications without naming BlueRadios as a co-owner." *Id.* at 5. This included, *inter alia*, "[f]igures and explanations of figures contained in certain patents on which Kopin did not name BlueRadios as a co-owner." *Id.* at 7-8. This verdict is presently on appeal to the U.S. Court of Appeals for the Federal Circuit.

According to BlueRadios, through discovery in the first BlueRadios litigation, it learned of possible malfeasance by Kopin's patent prosecution counsel, Hamilton, Brook, Smith & Reynolds, P.C. ("HBSR"). *BlueRadios*, 2026 U.S. App. LEXIS 3271 at *13. It then sued HBSR in this Court for, *inter alia*, legal malpractice, breach of fiduciary duty, and fraudulent concealment in *BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.,* No. 21-cv-10488-DJC (D. Mass.) (the "second BlueRadios litigation"). BlueRadios alleged, among other things, that numerous other patents and patent applications improperly omitted or removed BlueRadios employees as inventors. *See generally* Ex. 5. The Court ultimately granted summary judgment in favor of HBSR, finding the claims time-barred, and denied BlueRadios' motion for summary judgment on the existence of an attorney-client relationship. But the First Circuit recently reversed. *BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, 2026 U.S. App. LEXIS 3271 (1st Cir. Feb. 2, 2026). In so doing, the First Circuit found that HBSR "would have read [the contract] (and thus understood) that BlueRadios and Kopin jointly owned the IP for Golden-i." *Id*. at *44-45.

### C.    Plaintiff Purchases Kopin's Intellectual Property Rights

Kopin is essentially the predecessor company to Plaintiff. Compl., ¶¶ 50-52, 61-63. In September 2019, Plaintiff purchased from Kopin "all assets associated with the Solos™ smart-glasses product line and the Whisper™ audio-processing technology," including "associated intellectual property rights." *Id*. at ¶ 61. It is undisputed that one of the Asserted Patents, U.S. Pat.

No. 10,306,389, was originally assigned to Kopin, Compl., Ex. 1, and the others stem from work done with Kopin. Indeed, Plaintiff acknowledges that the work at Kopin "formed the foundation of the Asserted Patents." *Id*. at ¶ 53. Plaintiff further asserts that Kopin's lead of wearable product development, Ernesto Martinez, transitioned his work to Plaintiff, "establishing a direct line of development" between Kopin and Plaintiff. And Mr. Martinez is a named inventor on two of the Asserted Patents: U.S. Pat. Nos. 11,871,174 and 12,216,339. *Id*. at ¶¶ 53-54, 63; *id.*, Exs. 4 and 5. But it appears Plaintiff's technology did not come solely from Kopin—it came from the joint project between Kopin and BlueRadios.

Despite Plaintiff's Asserted Patents relying on intellectual property from the BlueRadios-Kopin joint development of Golden-i, which BlueRadios jointly owns, Plaintiff filed this litigation without BlueRadios as a co-plaintiff.

### D.    BlueRadios Claims An Ownership Interest In the Asserted Patents

After the filing of this suit, BlueRadios sent Meta a letter expressly stating that "BlueRadios, Inc. believes they are the co-owners of the 5 patents specified in the complaint filed by Solos Technology, Limited on 01/23/26." See Ex. 1 at 3. The BlueRadios Letter explained that it "acquired IP ownership under a joint venture contract from Kopin Corporation signed and executed by CFO Richard Sneider and CEO John Fan, which provided that any intellectual property rights developed by BlueRadios was co-owned by BlueRadios." Id. at 1. BlueRadios' letter states that "The genesis of the Solos™ IP came from the Golden-i project co-developed by BlueRadios and Kopin." Id. at 2. BlueRadios asserts that it

> was the original architect, designer, developer, and manufacturer for the Golden-i family of devices. Kopin Corporation technical role was limited to providing BlueRadios their micro-display. BlueRadios had responsibility for the entire system design, integration, and development of this new wireless head mounted computer device technology. This included voice recognition, noise cancellation with two or more microphone audio inputs, stereo

output and head tracking capabilities to name just a few. The Whisper™ Audio-processing technology was derived from BlueRadios original work on Golden-i.

*Id.* Meta then promptly filed the present motion.

## III.     LEGAL STANDARDS

### A.       Joinder of Required Parties

Under Rule 19(a)(1), a person is generally a "Required Party" and must be joined if (A) "in that person's absence, the court cannot accord complete relief among existing parties," or if (B) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1). Patent co-owners may not be involuntarily joined in an infringement suit. *STC.UNM v. Intel Corp.*, 767 F.3d 1351, 1353 (Fed. Cir. 2014). When a required party cannot be joined, the Court must determine whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

Under Rule 19, a court first must determine whether the absent party is required under Rule 19(a), and if the party is required but joinder is not feasible, then the court must decide whether the party is indispensable under Rule 19(b). *Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 15-18 (1st Cir. 2008). "Whether a party is indispensable under Rule 19(b) is a matter of regional circuit law," *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1269 (Fed. Cir. 1998)—here, the First Circuit—unless the indispensability and inability to join is a matter of substantive patent law, in which case Federal Circuit law applies, *STC.UNM.*, 767 F.3d at 1353 (denying petition for rehearing en banc). Both are implicated here.

Although courts in deciding a motion to dismiss must accept the allegations in the

complaint as true, when considering a motion under Rule 12(b)(7), they are not limited to the pleadings and may consider other relevant evidence. *Phoenix Ins. Co. v. Delangis*, 2015 U.S. Dist. LEXIS 31161, at \*5 (D. Mass. Feb. 17, 2015); *Axis Ins. Co. v. Hall*, 287 F.R.D. 110, 113 (D. Me. 2012). And in the First Circuit, "a district court should keep in mind the policies that underlie Rule 19, 'including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them.'" *Picciotto*, 512 F.3d at 15-16 (quoting *Acton Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982)); *see also Travelers Indem. Co. v. Dingwell*, 884 F.2d 629 (1st Cir. 1989).

**B.    Stay**

District courts have the discretionary power to stay proceedings. *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). That power "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id*. at 254. Deciding whether to stay proceedings involves balancing the interests of the parties and the Court. *Id*. at 254-55. A stay is appropriate where it is "likely to conserve judicial and party time, resources, and energy." *Diomed, Inc. v. Total Vein Sols., LLC*, 498 F. Supp. 2d 385, 387 (D. Mass. 2007). Under the traditional standard for a stay, the Court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Picone v. Shire*, LLC, 2020 U.S. Dist. LEXIS 99910, at \*5-6 (D. Mass. Jun. 8, 2020) (citing *Nken v. Holder*, 556 U.S. 418, 425-26 (2009)).

- 9 -

## IV.    ARGUMENT

### A.    This Action Should be Dismissed Under Rules 12(b)(7) and 19 for Nonjoinder of a Required Party

This Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(7) and 19 because (1) BlueRadios is a required party, (2) BlueRadios cannot be joined, and (3) the equitable factors favor dismissal.

### 1.    BlueRadios is a required party under Rule 19(a)

Because BlueRadios has a non-frivolous claim that it is a co-owner of the Asserted Patents, it is a required party to this action under Rule 19(a). Namely, without BlueRadios' participation in this action, (1) the Court cannot accord complete relief among the existing parties, (2) BlueRadios' interests cannot be adequately protected, and (3) Meta would be at substantial risk of incurring multiple inconsistent obligations from different suits. Fed. R. Civ. P. 19(a). In particular, Meta's eventual defenses and counterclaims (*e.g.*, invalidity, unenforceability, and noninfringement) will necessarily affect BlueRadios' interests in the Asserted Patents. *See infra* at 16. And Meta is presently at substantial risk of multiple time-consuming and expensive suits and incurring multiple, potentially inconsistent, obligations to Plaintiff and BlueRadios if the Asserted Patents were found to be valid, enforceable, and infringed. *Id.* For these reasons, the Federal Circuit has routinely found that patent co-owners are required parties in an infringement suit under Rule 19(a).[2] *See, e.g.*, *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1378 (Fed. Cir. 2020) (a

---

[2] Some older cases discuss the requirement to join all owners to an infringement suit in terms of "standing," but the Federal Circuit has more recently held, "it is improper to discuss requirements for establishing a statutory cause of action in terms of 'standing.'" *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1378 (Fed. Cir. 2020) ("AntennaSys's failure to join Windmill as a co-plaintiff impacts AntennaSys's ability to satisfy the statutory prerequisites for bringing an infringement suit; it does not impact AntennaSys's Article III standing."). For that reason, some cases cited throughout this brief may reference "standing" when they mean this statutory prerequisite, but the same principle applies.

patent infringement action "must join as plaintiffs all co-owners") (quoting *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998)); *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1331 (Fed. Cir. 2009) ("[I]f a co-owner of a patent wishes to sue for infringement, he must join the other co-owners in the action in order to avoid a dismissal for lack of standing.").

It is of no consequence that BlueRadios' claim of ownership has not been fully adjudicated in its favor. BlueRadios has a non-frivolous claim that it is a co-owner of the Asserted Patents, which is all that is needed to be a required party. *See supra*, Sec. II; Ex. 1. Rule 19(a)(1)(B) only specifies that an entity who "*claims* an interest relating to the subject of the action" (emphasis added) is a required party. *See White v. Univ. of Cal.*, 765 F.3d 1010, 1027 (9th Cir. 2014) (noting that "the language of the rule contemplates that a party need only have a *'claim'* to an interest") (emphasis added). And in *Republic of Philippines v. Pimentel*, the Supreme Court found that where an asserted claim was "not frivolous," "dismissal of the action must be ordered where there is a potential for injury to the interests of the absent [party]." 553 U.S. 851, 867 (2008). Indeed, the Court specified that it "need not seek to predict the outcome[]" of the claim, and that it "suffices that the claim[] would not be frivolous." *Id*. at 868; *see also Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 266 (5th Cir. 2022) (noting that "the inquiry at this stage is more about whether the absent party claims a non-frivolous interest, not the ultimate merit of the claim"); *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) ("Just adjudication of claims requires that courts protect a party's right to be heard and to participate in adjudication of a claimed interest, even if the dispute is ultimately resolved to the detriment of that party.").

That low bar is met here—there is a non-frivolous claim of co-ownership that triggers Rule 19(a). As Plaintiff acknowledges in its complaint, it purchased from Kopin "all assets associated

with the Solos™ smart-glasses product line and the Whisper™ audio-processing technology," including "associated intellectual property rights." Compl., ¶ 61. In fact, one of the Asserted Patents was originally assigned to Kopin. Compl., Ex. 1; *see also* Compl., ¶ 57. But Kopin's virtual reality technology largely stemmed from the joint development project with BlueRadios to develop virtual reality headset known as "Golden-i." Ex. 1 at 1.

BlueRadios is entitled to joint ownership of intellectual property rights to this technology. *See supra*, Sec. II. Specifically, the contract between BlueRadios and Kopin expressly states that "[a]ny intellectual property rights developed by BlueRadios in the course of this development contract ('Joint Developments'), will be owned jointly." *BlueRadios*, 2017 U.S. Dist. LEXIS 231631, at *4-5 (quoting the contract). Moreover, a jury recently found that it was "more likely than not that Kopin agreed under the contract" to "[a]ssign BlueRadios co-ownership of patents that incorporate Golden-i technology." Ex. 8 at 2. The First Circuit agreed, recently finding that the contract provided that, "BlueRadios and Kopin would jointly own any IP that BlueRadios developed for the Golden-i project." *BlueRadios*, 2026 U.S. App. LEXIS 3271, at *3.

All five Asserted Patents in this case incorporate Golden-i technology developed by BlueRadios, making BlueRadios a co-owner of all the Asserted Patents. *See* Ex. 1 at 1 ("BlueRadios was the original architect, designer, developer, and manufacturer for the Golden-i family of devices"), 3 ("BlueRadios, Inc. believes they are the co-owners of the 5 patents specified in the complaint filed by Solos Technology, Limited on 01/23/26."). As Plaintiff admits, the work at Kopin "formed the foundation of the Asserted Patents." Compl., ¶ 53. And Plaintiff's employment of Ernesto Martinez, the former lead of wearable product development at Kopin, "establish[ed] a direct line of development" between the work at Kopin and that at Plaintiff. *Id*. at ¶¶ 53-55, 63. In fact, Mr. Martinez is a named inventor on two of the Asserted Patents now assigned

to Plaintiff. Compl., Exs. 4 and 5. Given that Solos admits Kopin's technology and personnel were used to develop the patented technology, there is a clear question of ownership given BlueRadios' claims against Kopin.

In the Colorado case BlueRadios described joint developing "a voice-activated, wireless, hands-free micro-display product for use with a headset computer" (Ex. 5), and the jury found that it contributed the following trade secrets to Kopin in association with that joint development:

- Board support package designed for wearable computer with head-mounted display;
- Miniaturized printed circuit board designed for wearable computer with head-mounted display;
- Technological platform designed for wireless head-mounted display platform; and
- Figures and explanations of figures contained in certain patents on which Kopin did not name BlueRadios as a co-owner.

Ex. 8 at 7-8. The Asserted Patents in this case generally relate to audio processing in smart-glasses, which seemingly takes place in technological platform, circuit board, and board support package described above. But we have more than that presumption here, as BlueRadios' letter to Meta states that "The Whisper™ Audio-processing technology" referenced in Solos' Complaint against Meta "was derived from BlueRadios original work on Golden-i." *See* Ex. 1 at 2. As explained above, BlueRadios' claims of ownership need not be fully adjudicated to establish sufficient interest such that they are a required party.

Notably, patents on which BlueRadios inventors were originally included, or which have now been added, include disclosures similar to those claimed in the Asserted Patents. For example, U.S. Pat. No. 8,909,296, which a jury found should have included BlueRadios inventors, Ex. 8, describes using a "microphone" to "receive verbal commands from a user," Ex. 2 at 9:5-8, and claims a "headset computing device" and a "wireless communications interface further configured to transmit the control signal based on the speech data generated by the user input device," *id*. at claim 1. *See also id.* at claim 9; Ex. 3 at 3:45-50. This is similar to asserted U.S. Pat. No.

10,306,389, which claims a "head wearable device" with a "microphone . . . to receive a voice signal from the user." Compl., Ex. 1 at claim 1. Likewise, U.S. Pat. No. 9,886,231, to which a court ordered BlueRadios inventors to be added, Ex. 6, describes a "handheld unit" with "sensors . . . that may indicate lateral movements along and rotational gestures around the X, Y and Z axes." Ex. 3 at 3:34-43; *see also id.* at 7:1-6, claim 5. This is similar to asserted U.S. Pat. No. 12,216,339, which claims a method where data is received from sensors, and that data is analyzed and used to determine the state and context of the user. Compl., Ex. 5 at claim 1.

And these are just examples. BlueRadios alleges that it "had responsibility for the entire system design, integration, and development of this new wireless head mounted computer device technology. This included voice recognition, noise cancellation with two or more microphone audio inputs, stereo output and head tracking capabilities" and the Solos device's "Whisper™ Audio-processing technology was derived from BlueRadios original work on Golden-i." Ex. 1 at 1-2. Several of the Asserted Patents are directed to this very technology. Indeed, BlueRadios has expressly asserted that it believes it is "the co-owner[] of the 5 patents specified in the complaint filed by Solos Technology, Limited on 01/23/26," *Id.* at 3, and offered to license or sell the technology to Meta, *id*. at 1.

Even if the first BlueRadios litigation did not specifically address the Asserted Patents,[3] BlueRadios consistently claimed that that it had "inventorship rights to the BlueRadios Technology and Kopin-BlueRadios IP," "inventors employed by BlueRadios had been left off of patent applications prepared and filed by Kopin's patent counsel," and "the Solos™ products resulted from the Golden-i joint venture between BlueRadios and Kopin, and incorporate

---

[3] The five patents asserted in this case all issued *after* the first BlueRadios litigation was substantially underway, so BlueRadios could not have sought correction of inventorship or co-ownership of them in that case.

- 14 -

BlueRadios Technology and the Kopin-BlueRadios IP." Ex. 4 at ¶¶ 33, 35. Given the circumstances and prior litigations, BlueRadios has at least a non-frivolous claim of ownership over the Asserted Patents such that they are a required party under Rule 19(a).

### 2. BlueRadios cannot be involuntarily joined

The Federal Circuit has "explicitly held that Rule 19 does not permit the involuntary joinder of a patent co-owner in an infringement suit brought by another co-owner." *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1289 n.2 (Fed. Cir. 2008); *see also Ethicon*, 135 F.3d at 1468 ("[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit."); *STC.UNM*, 767 F.3d at 1353 (the Federal Circuit has "consistently recognized that . . . each co-owner has a substantive right not to be involuntarily joined in a patent infringement suit without such agreement"); *Israel Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007) ("Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack standing."). There are only two exceptions to this rule, neither of which apply here: (1) an exclusive licensee may join the patent owner as an involuntary plaintiff in an infringement suit, and (2) a co-owner who, by agreement, waives his right to refuse to join suit, may be forced to join an infringement suit. *DDB Techs.*, 517 F.3d at 1289 n.2. Generally, "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997); *see also STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014) ("[T]he right of a patent co-owner to impede an infringement suit brought by another co-owner is a substantive right that trumps the procedural rule for involuntary joinder under Rule 19(a)."). BlueRadios, as an absent co-owner of the Asserted Patents, thus cannot be involuntarily joined.

### 3. This case must be dismissed under Rule 19(b)

Because BlueRadios is a required party that cannot be joined, the Court must next

- 15 -

determine whether the suit should be dismissed "in equity and good conscience." Fed. R. Civ. P. 19(b). It should—all enumerated factors weigh in favor of dismissal.

*First*, a judgment rendered in BlueRadios' absence would prejudice both BlueRadios and Meta. As explained above, Meta's expected defenses and counterclaims (*e.g.*, invalidity, unenforceability, and noninfringement) necessarily affect BlueRadios' rights. BlueRadios indisputably has an interest in at least maintaining the validity and enforceability of its patents. *See Delano Farms Co. v. Cal. Table Grape Comm'n*, 623 F. Supp. 2d 1144, 1159 (E.D. Cal. 2009) (dismissing under Rule 19(b) because "[i]f the patent is declared invalid, the [absent owner] loses the ownership and value of its patents and any royalty derived from the patent" (collecting cases)). Even if Plaintiff arguably has similar interests in maintaining the validity of the Asserted Patents, that does not mean all of their interests are sufficiently aligned. *Tell v. Trustees of Dartmouth College*, 145 F.3d 417, 419 (1st Cir. 1998) (finding that "without a perfect identify of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party"); *A123 Sys. v. Hydro-Quebec*, 626 F.3d 1213, 1221 (Fed. Cir. 2010) (finding that even if the absent party and plaintiff "share the same overarching goal of defending the patents' validity," that does not mean the absent party's interests "will be adequately represented" by the plaintiff). Were disputes over proper inventorship to arise—which seems likely, based on the circumstances— Plaintiff's and BlueRadios' interests would be in direct conflict.[4] Given Plaintiff and BlueRadios are currently embroiled in litigation against each other, it would be difficult to say their interests are identically or even substantially aligned. And as discussed above, continuation of this suit would also diminish BlueRadios' opportunities to license the Asserted Patents and likely subject

---

[4] In the first BlueRadios litigation, the district court ordered that two BlueRadios employees be added as inventors on one of the patents that had been assigned to Kopin. Ex. 7 at 2-3.

it to significant third-party discovery in this case.

Meta, meanwhile, would be prejudiced because it would be forced to expend significant resources defending against an infringement suit by Plaintiff when another court may eventually determine that BlueRadios *is* a co-owner of the Asserted Patents such that this suit cannot be maintained. It could also open Meta up to the possibility of being subject to another, future suit on the same patents, this time involving BlueRadios, at additional time and expense. *See, e.g.*, *Pimentel*, 553 U.S. at 870-71 (finding that going forward "would not further the public interest in settling the dispute as a whole" because the absent party "would not be bound by the judgment"); *STC.UNM*, 754 F.3d at 947 (noting that the "the rule requiring in general the participation of all coowners safeguards against the possibility that each coowner would subject an accused infringer to a different infringement suit on the same patent"); *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1279 (10th Cir. 2012) (noting that collateral estoppel would not preclude the absent party, "unbound by the decision, from relitigating the issue"). Not to mention that multiple suits could have inconsistent outcomes.

*Second*, the prejudice cannot be lessened through protective measures such that a judgment rendered in BlueRadios' absence would be adequate. Even if certain protective measures, such as putting any awarded damages in a trust, could be taken, they do not sufficiently lessen the prejudice to BlueRadios or Meta. Such measures would not adequately protect the interest of BlueRadios, who would not be present to fully defend its patents, or Meta, who may still be subject to an injunction or subsequent suit for monetary damages absent the consent of BlueRadios to forgo such litigation in favor of a portion of any damages from this suit. It would also not resolve BlueRadios' decreased licensing capacity and subjugation to discovery. Only a dismissal adequately protects BlueRadios and Meta. *See Pimentel*, 553 U.S. at 870 (holding Rule 19(b)(2)

favored dismissal given conflicting claims of ownership, which is "a textbook example" of "severe[] prejudice" (quotation and citation omitted)).

*Third*, Plaintiff would have an adequate remedy if this action were dismissed for nonjoinder. Plaintiff can resolve the ownership issues and then re-file its infringement claims against Meta if it proves that it is the sole owner of the Asserted Patents. *See Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 270 (5th Cir. 2022) ("Because appellants can presumably bring these claims [] *after* they have established their superior rights to the mark, this factor too weighs in favor of dismissal."). This is particularly feasible where, as is here, this case is in its nascent stages. Although a motion for nonjoinder may be brought at any time and cannot be waived, Meta has brought this motion as soon as practicable. *See* Fed. R. Civ. P. 12(h)(2) (permitting failure to join to be raised "at trial"); *McCowen v. Jamieson*, 724 F.2d 1421, 1424 (9th Cir. 1984) (noting that the issue of nonjoinder is "is sufficiently important that it can be raised at any stage of the proceedings"). At present, only minimal effort and cost has been expended by Plaintiff. There is no reason it cannot simply refile its suit after resolving the ownership issue.

## B.    Alternatively, This Action Should be Stayed

As explained above, this case should be dismissed. Only if Plaintiff establishes that it is the sole owner of the Asserted Patents should this case exist; Plaintiff can refile after that issue has been fully adjudicated. Meta should not be left in a holding pattern in the interim. *See Pimentel*, 553 U.S. at 870 (holding Rule 19(b)(2) favored dismissal given conflicting claims of ownership since it is "a textbook example" of "severe[] prejudice" (citation and quotation omitted)).

But if this Court does not dismiss this case for lack of standing or failure to join a required party, it should issue a stay. *See In re Republic of Philippines*, 309 F.3d 1143, 1153 (9th Cir. 2002) (staying rather than dismissing under Rule 19(b)); *Televisa, S.A. de C.V. v. Koch Lorber Films*, 382 F. Supp. 2d 631, 633 (S.D.N.Y. 2005); *Names for Dames v. Gimbel*, 1989 WL 82417, at *3

(S.D.N.Y. July 19, 1989) ("[I]t is in the interest of judicial economy and consistent with the flexible approach to resolution of Rule 19(b) motions advocated by the Advisory Committee, to stay this action."); *Pimentel*, 553 U.S. at 875 ((Stevens, J., concurring in part) (advocating for stay pending resolution of parallel litigation over ownership). Courts have thus, in certain circumstances, considered a stay a possible alternative to a dismissal under Rule 19(b)(2).

Even considering the standard factors for a stay outside of the Rule 19 context, a stay would be appropriate here because it is "likely to conserve judicial and party time, resources, and energy." *Diomed*, 498 F. Supp. 2d at 387. As explained above with respect to dismissal, this case is only in its early stages such that little judicial and party resources have been expended. Were this case allowed to continue, and it later be determined that BlueRadios was a co-owner of the Asserted Patents such that this suit cannot proceed, that would be a significant waste of time, resources, and energy by all of the Court, Plaintiff, and Meta.

All traditional factors weigh in favor of a stay for similar reasons that dismissal was appropriate. Namely, (1) it is likely that BlueRadios will be adjudicated to be a co-owner of the Asserted Patents, (2) Meta would be irreparably injured absent a stay, (3) Plaintiff would not be irreparably injured by a stay, and (4) public interest favors a stay. *Id*. First, as explained above, *supra* Sec. IV.A.1, it is likely BlueRadios will be adjudicated to be a co-owner of the Asserted Patents given similar findings in other litigation. Second, Meta would be forced to spend significant time and costs litigating a case that may ultimately not result in any final resolution were BlueRadios found to be a co-owner of the Asserted Patents. It could then be subject to *another* suit involving BlueRadios on substantially the same issues, forcing it to expend more resources relitigating the same claims. District court cases are frequently stayed pending, *e.g.*, appeals or other litigation to avoid these very burdens. *See, e.g.*, *Blue Cross & Blue Shield of Mass., Inc. v.*

*Regeneron Pharms., Inc.*, 633 F. Supp. 3d 385, 393 (D. Mass. 2022) (finding that "a stay while the DOJ action proceeds will conserve resources and avoid duplicative litigation"); *Hilton v. Kerry*, No. 13-11710-TSH, 2013 U.S. Dist. LEXIS 169661, at *4 (D. Mass. Dec. 2, 2013) ("A federal court can stay the enforcement of a judgment pending the outcome of an appeal 'as part of its traditional equipment for the administration of justice.'" (quoting *Nken v. Holder,* 556 U.S. 418, 421, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)); *Automated Transactions, LLC v. Bath Sav. Inst.*, No. 2:12-cv-393-JAW, 2013 U.S. Dist. LEXIS 48964, at *5 (D. Me. Mar. 14, 2013) (granting stay for reasons including, "the potential cost in time and money, not to mention the waste of judicial resources, inherent in repetitive and overlapping discovery.). Third, Plaintiff would not be irreparably injured by a stay. As an initial matter, Meta does not infringe. But if Plaintiff ultimately successfully proved infringement of valid, enforceable, patents, a stay would not affect any damages award. Fourth, public interest favors conservation of resources, protection of absent parties' rights, and a single, final determination on an issue. *See, e.g.*, *Picciotto*, 512 F.3d at 15-16 (quoting *Acton Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982)).

For at least these reasons, if the Court does not find dismissal appropriate, it should stay this case pending resolution of Plaintiff and BlueRadios' patent ownership dispute.

## V.    CONCLUSION

Meta respectfully asks the Court to (1) dismiss this action for lack of standing or for nonjoinder of a required party, or (2) stay the case pending resolution of the ownership dispute.

| Dated: March 25, 2026 | Respectfully submitted,<br><br>By: */s/ Matthias A. Kamber*<br>**PAUL HASTINGS LLP**<br>200 Clarendon Street, 49th Floor<br>Boston, MA 02116<br>Tel: (415) 856-7050 |
| --- | --- |

|  | Fax: (415) 856-7150 |
|  | Matthias A. Kamber (Mass BBO #654217)<br>**PAUL HASTINGS LLP**<br>101 California St., 48th Floor<br>San Francisco, CA 94111<br>Tel: (415) 856-7050<br>Fax: (415) 856-7150<br>matthiaskamber@paulhastings.com |
|  | Lisa Nguyen (*pro hac vice pending)*<br>Eric Lancaster (*pro hac vice pending)*<br>**PAUL HASTINGS LLP**<br>Palo Alto, CA 94304<br>Tel: (650) 320-1800<br>Fax: (650) 320-1990<br>lisanguyen@paulhastings.com<br>ericlancaster@paulhastings.com |
|  | Stephanie Adamakos (Mass BBO #705076)<br>**PAUL HASTINGS LLP**<br>2050 M St. NW<br>Washington, DC 20005<br>Tel: (202) 551-1700<br>Fax: (202) 551-1705<br>stephanieadamakos@paulhastings.com |
|  | ***Attorneys for Defendant***<br>***Meta Platforms, Inc. and Meta Platforms***<br>***Technologies, LLC*** |