**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SOLOS TECHNOLOGY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., et al.<br><br>Defendants. | Case No. 1:26-cv-10304-ADB |

**PLAINTIFF'S OPPOSITION TO LUXOTTICA OF AMERICA, INC., ESSILORLUXOTTICA USA, INC., AND OAKLEY, INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 3

III. ARGUMENT ..... 3

A. Defendants' Knowledge-Related Arguments Are Misplaced ..... 3

1. Solos Plausibly Alleges Pre-Suit Knowledge ..... 5

2. Solos Plausibly Alleges Post-Suit Knowledge ..... 8

B. Solos Sufficiently Pleads Induced Infringement ..... 10

C. Solos Sufficiently Pleads Contributory Infringement ..... 12

D. Solos Plausibly Alleges Willful Infringement ..... 14

1. Solos Plausibly Alleges the Knowledge Requirement for Willfulness ..... 14

2. Solos Plausibly Alleges That Defendants Intended to Infringe ..... 15

E. Solos Plausibly Alleges Coordinated Conduct Supporting Joint and Vicarious Liability Theories ..... 16

1. Solos Plausibly Alleges a Joint Enterprise ..... 16

2. Solos Sufficiently Alleges Agency and Vicarious Liability Arising from the Joint Enterprise ..... 18

3. Solos Plausibly Alleges Agency and Vicarious Liability as to Individuals ..... 20

IV. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Cases**


*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)........................................................................ 17, 18

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) ........................................................................... 3, 16

*Armstrong v. White Winston Select Asset Funds, LLC*,
648 F. Supp. 3d 230 (D. Mass. 2022) ..................................................................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................ 3

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*,
2020 WL 2079422 (D. Mass. Apr. 30, 2020) ......................................................... 10

*Canon, Inc. v. Avigilon USA Corp.*,
411 F. Supp. 3d 162 (D. Mass. 2019) ..................................................................... 15

*Centillion Data Sys., LLC v. Qwest Commun. Intern., Inc.*,
631 F.3d 1279 (Fed. Cir. 2011)............................................................................... 19

*Cleveland Medical Devices Inc. v. ResMed Inc.*,
696 F. Supp. 3d 4 (D. Del. 2023)............................................................................. 4

*CNE Direct, Inc. v. Blackberry Corp.*,
821 F.3d 146 (1st Cir. 2016)................................................................................... 19

*Coach, Inc. v. Sapatis*,
27 F. Supp. 3d 239 (D.N.H. 2014)........................................................................... 20

*Copan Italia S.p.A. v. Puritan Med. Prods. Co.*,
2018 WL 5891742 (D. Me. Nov. 9, 2018)................................................................ 12

*CRH Medical Corporation v. MDE Medical, LLC*,
2025 WL 2506804 (D. Del. Sept. 2, 2025)................................................................ 9

*Curtis Mfg. Co. v. Plasti-Clip Corp.*,
888 F. Supp. 1212 (D.N.H. 1994)....................................................................... 16, 17

*Dialect, LLC v. Bank of America, N.A.*,
2024 WL 4980794 (E.D. Tex. Dec. 4, 2024) .......... 4

*Echosens, S.A. v. E-Scopics S.A.S.*,
772 F. Supp. 3d 147 (D. Mass. 2025) .......... passim

*Eli Lilly and Co. v. Teva Parenteral Medicines, Inc.*,
845 F.3d 1357 (Fed. Cir. 2017) .......... 18

*Gamon Plus, Inc. v. Campbell's Co.*,
764 F. Supp. 3d 690 (N.D. Ill. 2025) .......... 5

*GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*,
2016 WL 3946770 (D. Del. July 20, 2016) .......... 5, 14

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020) .......... 19

*InterGen N.V. v. Grina*,
344 F.3d 134 (1st Cir. 2003) .......... 18

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
2019 WL 330515 (D. Del. Jan. 25, 2019) .......... 12

*L.A. Biomed. Rsch. Inst., at Harbor-UCLA Med. Ctr. v. Eli Lilly & Co.*,
2014 WL 11241786 (C.D. Cal. May 12, 2014) .......... 5

*Lexington Luminance LLC v. TCL Multimedia Tech. Holdings, Ltd.*,
2017 WL 3795769 (D. Mass. Aug. 30, 2017) .......... 10

*Longhorn Vaccines & Diagnostics, LLC v. Spectrum Solutions LLC*,
564 F. Supp. 3d 1126 (D. Utah 2021) .......... 9

*Merrill Mfg. Co. v. Simmons Mfg. Co.*,
553 F. Supp. 3d 1297 (N.D. Ga. 2021) .......... 8

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) .......... 10, 12, 18

*Ocado Innovation, Ltd. v. AutoStore AS*,
561 F. Supp. 3d 36 (D.N.H. 2021) .......... 14

*Ocean Semiconductor LLC v. Analog Devices, Inc.*,
698 F. Supp. 3d 204 (D. Mass. 2023) .......... 11

*Ryba v. LaLancette*,
417 F. Supp. 2d 199 (D. Mass. 2006) .......... 19

*Simplivity Corp. v. Springpath, Inc.*,
2016 WL 5388951 (D. Mass. July 15, 2016) .......... 5, 6, 8, 14

*Symbol Techs., Inc. v. Metrologic Instruments, Inc.*,
771 F. Supp. 1390 (D.N.J. 1991) .......... 16

*Therabody, Inc. v. Tzumi Elecs. LLC*,
2022 WL 17826642 (S.D.N.Y. Dec. 19, 2022) .......... 8

*Touchstream Technologies, Inc. v. Altice USA, Inc.*,
2024 WL 1117930 (E.D. Tex. Mar. 14, 2024) .......... 4

*Travel Sentry, Inc. v. Tropp*,
877 F.3d 1370 (Fed. Cir. 2017) .......... 18

*T-Rex Prop. AB v. Regal Ent. Group*,
2017 WL 4229372 (E.D. Tex. Aug. 31, 2017) .......... 9

*Trustees of Boston U. v. Everlight Elecs. Co., Ltd.*,
2014 WL 12792363 (D. Mass. May 16, 2014) .......... 18

*USC IP Partnership, L.P. v. Facebook, Inc.*,
2021 WL 3134260 (W.D. Tex. July 23, 2021) .......... 8

*UUSI, LLC v. Futaba Corporation of America*,
2025 WL 2817655 (E.D. Mich. Sept. 30, 2025) .......... 4

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009) .......... 3, 11

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
609 F.3d 1308 (Fed. Cir. 2010) .......... 18

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
528 F. Supp. 3d 247 (D. Del. 2021) .......... 9, 15

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*,
990 F. Supp. 2d 50 (D. Mass. 2014) .......... 10

*Zond, LLC v. Renesas Elecs. Corp.*,
2014 WL 4161348 (D. Mass. Aug. 15, 2014) .......... 9

**Statutes**

§ 271(a) ........................................................................................................................... 19

**Rules**

Rule 12(b)(6)........................................................................................................................ 3

## I. INTRODUCTION

Defendants Luxottica of America, Inc., EssilorLuxottica USA, Inc., and Oakley, Inc.'s (the "Defendants") motion to dismiss should be denied.

First, Defendants attempt to narrow the meaning of knowledge by suggesting that it requires direct communication of the Asserted Patents.[1] Pre-suit knowledge, however, may be alleged through circumstantial evidence. The circumstantial evidence here includes numerous interactions between Plaintiff Solos Technology Limited ("Solos") and Defendants regarding smart-glasses technology—specifically, Solos was invited to Defendants' corporate headquarters to explore potential collaboration and conduct product demonstrations; Solos shipped smart-glasses products to Defendants for evaluation; the parties communicated via LinkedIn, where one of Solos's co-founders identifies several of the Asserted Patents; and Defendants subsequently developed the Accused Products,[2] which embody the very technologies claimed in the Asserted Patents. This is the type of circumstantial evidence courts have found sufficient to plausibly allege pre-suit knowledge.

Next, Defendants contend that Solos fails to plead induced infringement. However, inducement may be inferred by encouraging infringing use through product instructions, technical support, or user manuals. Solos identifies precisely these types of materials, including user-facing instructions, customer support, and other guidance that direct consumers to use the Accused Products in the manner alleged to infringe.

Third, Defendants' challenge to contributory infringement fares no better. The relevant inquiry is whether the allegations permit a reasonable inference that the accused components are

---

[1] "Asserted Patents" refers to U.S. Patent Nos. 10,306,389; 10,651,866; 11,082,055; 11,871,174; and 12,216,339.

[2] "Accused Products" is synonymous with "Infringing Products" as defined in paragraph 14 of the Complaint (Doc. No. 1).

made or adapted for use in infringement and are not suitable for substantial non-infringing uses. The Complaint satisfies both requirements. It identifies specific integrated hardware and software components configured to perform the infringing functionality and alleges that those components cannot be meaningfully used without practicing the relevant claims. That position is reinforced by Solos's claim charts, which map component-level details of the Accused Products to the Asserted Patents. Accepting these allegations as true, any hypothetical alternative use would be at most incidental and insubstantial.

Fourth, Defendants' arguments as to willfulness similarly fail. In addition to plausibly alleging pre-suit knowledge, Defendants' post-suit knowledge may derive from the Complaint itself. Indeed, courts in this Circuit follow the majority rule that post-suit knowledge may be established after the filing of the Complaint.

Lastly, Solos pleads joint liability by alleging a coordinated, interdependent enterprise in which Defendants, Meta Platforms, Inc., and Meta Platforms Technologies, LLC ("Meta") play integrated roles in commercializing the Accused Products. Specifically, Solos alleges that Meta and Defendants jointly participated in the co-development of the Accused Products, combining their respective expertise to develop and commercialize the accused technology. Solos is not required to plead internal corporate agreements or control structures that are uniquely within Defendants' possession; Solos need only allege facts making joint liability plausible, and it does so here. Defendants nevertheless attempt to recast this joint liability theory as a corporate veil-piercing issue. That argument fails because joint liability does not require veil-piercing at any stage, let alone at the pleading stage.

For these reasons, and the reasons set forth below, Defendants' motion should be denied.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A plaintiff satisfies this standard by alleging facts sufficient to "raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556. This standard applies to patent cases, where courts recognize that many relevant facts are uniquely within defendants' possession. *See*, *e.g.*, *Echosens, S.A. v. E-Scopics S.A.S.*, 772 F. Supp. 3d 147 (D. Mass. 2025) (denying motion where allegations plausibly supported indirect and willful infringement). At this stage, moreover, all well-pleaded factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Iqbal*, 556 U.S. at 678.

## III. ARGUMENT

### A. Defendants' Knowledge-Related Arguments Are Misplaced

Defendants argue that knowledge requires direct identification or express notice, while ignoring that pre-suit knowledge may be established through circumstantial evidence. Defendants rely on *Vita-Mix Corp. v. Basic Holding, Inc.* and *AlexSam, Inc. v. Aetna, Inc.*—yet these decisions illustrate that knowledge may be inferred from a totality of the circumstances. In *Vita-Mix Corp. v. Basic Holding, Inc.*, for instance, the Federal Circuit affirmed summary judgment after evaluating a developed evidentiary record and found that the record lacked evidence of intent. 581 F.3d 1317, 1328–29 (Fed. Cir. 2009). Importantly, however, the court recognized that knowledge may be established through circumstantial evidence. In *AlexSam, Inc. v. Aetna, Inc.*, the court held that the plaintiff plausibly alleged knowledge, rejecting any requirement to plead knowledge of specific patent claims and confirming that knowledge may be inferred from circumstantial facts, including by a letter to the accused infringer. 119 F.4th 27, 46–47 (Fed. Cir. 2024).

Furthermore, Defendants' reliance on *Cleveland Medical Devices Inc. v. ResMed Inc.* and *Touchstream Technologies, Inc. v. Altice USA, Inc.* is similarly misplaced. In *Cleveland Medical Devices Inc. v. ResMed Inc.*, the court dismissed pre-suit knowledge allegations where the complaint relied on interactions that predated the asserted patents and, importantly, failed to allege sufficient facts from which the Court could infer post-issuance awareness. 696 F. Supp. 3d 4, 10–14 (D. Del. 2023). In *Touchstream Technologies, Inc. v. Altice USA, Inc.*, the court rejected allegations based on disclosures of "patent-pending" technology because such technology was unrelated to the patents at issue. The complaint was also devoid of allegations that the defendant monitored or tracked the technology. 2024 WL 1117930, at *2–3 (E.D. Tex. Mar. 14, 2024).

Defendants' remaining authorities are likewise distinguishable. In *UUSI, LLC v. Futaba Corporation of America*, the court dismissed indirect infringement claims where the complaint relied on references to earlier patents and prior litigation testimony in a separate state-court matter. The plaintiff also failed to allege any additional facts from which the defendant's knowledge of the later-issued asserted patents could be plausibly inferred. 2025 WL 2817655, at *2 (E.D. Mich. Sept. 30, 2025). Lastly, in *Dialect, LLC v. Bank of America, N.A.*, the court rejected allegations of knowledge finding that vague pre-suit communications did not plausibly connect those materials to knowledge of the patents at issue. 2024 WL 4980794, at *2–4 (E.D. Tex. Dec. 4, 2024).

Defendants' authorities involve limited or passive interactions with no collaborative relationship, whereas here Solos and Defendants engaged in repeated, direct meetings to discuss smart-glasses technology. As explained below, Solos alleges the type of factual linkage the above cases lack.

### 1. Solos Plausibly Alleges Pre-Suit Knowledge

Courts uphold indirect infringement claims where the plaintiff plausibly alleges knowledge and intent through totality of the circumstances. *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 2016 WL 3946770, at *6–7 (D. Del. July 20, 2016). Notably, a defendant's pre-issuance conduct informs post-issuance liability. *See*, *e.g.*, *Gamon Plus, Inc. v. Campbell's Co.*, 764 F. Supp. 3d 690, 704–05 (N.D. Ill. 2025); *see also L.A. Biomed. Rsch. Inst., at Harbor-UCLA Med. Ctr. v. Eli Lilly & Co.*, Case No. LA CV13-08567 JAK (JCGx), 2014 WL 11241786, at *3 (C.D. Cal. May 12, 2014) (accounting for culpable conduct before issuance).

In *GlaxoSmithKline*, for instance, the court reasoned that pre-issuance conduct informed the defendant's state of mind once the patent issued. 2016 WL 3946770, at *11 ("And surely it seems possible that what the party did and said *before* the patent issued might at least *bear on* what its mindset was in the crucial post-issuance time period . . . ."). The court denied the defendant's motion to dismiss because the complaint alleged that post-issuance the defendant crafted its product labeling in view of patented uses and engaged in marketing that encouraged the accused use, thereby supporting a reasonable inference of knowledge and intent. *Id*. at *2–5.

Courts in this District apply similar reasoning. In *Simplivity Corp. v. Springpath, Inc.*, the court found pre-suit knowledge plausibly alleged where a competitor investigated the plaintiff's technology at a trade show, interacted with the plaintiff's representatives while concealing its affiliation, and obtained technical information regarding the plaintiff's system architecture. 2016 WL 5388951, at *9 (D. Mass. July 15, 2016). The defendant subsequently developed and commercialized a competing product that mimicked the plaintiff's file system and data management methods. *Id*. The court held that investigation of the plaintiff's technology, access to publicly available patent materials, and subsequent product development reflecting the technology supported a reasonable inference of pre-suit knowledge. The court also recognized that the

infringer's investigation occurred *before the patent issued*. *Simplivity*, 2016 WL 5388951, at *9–10 (noting that patent information was then available through public sources such as the USPTO). The court reasoned that it was implausible that a sophisticated competitor could investigate and then develop the very infringing technology of its rival's innovations while remaining unaware of the patents protecting those innovations. *Id*.

Here, the Complaint alleges more than an investigation or interactions at a trade show. Solos alleges that it was invited to Defendants' headquarters to discuss smart-glasses technology and explore potential collaboration, which stands in contrast to Defendants' authorities involving limited interactions between competitors or unrelated entities. Even *Simplivity* found that pre-suit knowledge exists when the infringer conceals its identity while investigating the plaintiff's technology. Yet, in the instant matter, the parties were intimately involved—the Defendants had no need to conceal their identity when they openly engaged with Solos, including meetings at corporate headquarters. Compl. ¶¶ 70, 72.

For example, beginning in 2015, Oakley executive Scott Smith ("Mr. Smith") personally met with one of Solos's founders, Ernesto Martinez ("Mr. Martinez"), tested Solos's early technologies firsthand, and later requested and received a second-generation Solos product for evaluation. *Id*. ¶¶ 65, 67. These interactions were not isolated. Oakley personnel continued engaging with Solos at CES 2016, observing and interacting with Solos's award-winning wearable technology. *Id*. ¶ 66. Then, in January 2019, Mr. Martinez shipped a Second-Generation Solos product to Mr. Smith at his request, and the two communicated further by telephone and via LinkedIn regarding potential collaboration. *Id*. ¶¶ 67–68. As further alleged, Mr. Martinez's

LinkedIn[3] profile identifies several of the Asserted Patents and highlights the novel architecture and technical contributions those patents protect, providing an additional avenue through which Defendants could access patent-specific information. *Id*. ¶¶ 68, 87.

Solos also alleges that Defendants' senior personnel, including Luiz Dias ("Mr. Dias"), invited Solos to Defendants' headquarters for meetings. Mr. Dias served as Senior Director of Global Product Strategy at Oakley and later as Senior Director of GTM Wearable Tech Product Development. *Id*. ¶¶ 69–70. Solos also describes interactions with Fabio Borsoi, who held a wearable-technology leadership role within Defendants' enterprise and currently serves as Global R&D Director of Technology. *Id*. ¶¶ 71–72. These interactions included a 2017 meeting in Defendants' San Francisco corporate office where Solos presented its "smart-glasses roadmap" and technological innovations, as well as subsequent engagements at CES 2018, followed by invitations to EssilorLuxottica's corporate facilities in Italy. Compl. ¶¶ 70–74. These meetings were intentional and provided Defendants with direct insight into Solos's smart-glasses technology, subsequently leading to Defendants' development of the Accused Products. *Id*. ¶ 75.

The Asserted Patents, moreover, were filed between 2015 and 2023 and issued between 2019 and 2025.[4] Thus, by 2019, when Defendants formalized their collaboration with Meta to develop Ray-Ban–branded smart-glasses, at least one Asserted Patent had already issued and others were pending and publicly accessible. By the time smart-glasses products were

[3] Defendants' Footnote 1 is misplaced. Defendants argue that the Complaint lacks allegations of constructive notice. But the Complaint alleges that Solos's co-founder, Ernesto Martinez, communicated directly with Oakley executive Scott Smith via LinkedIn, where Martinez's profile references several of the Asserted Patents. Compl. ¶¶ 68, 87.

[4] U.S. Patent No. 10,306,389 was filed Oct. 18, 2015 and issued May 28, 2019; U.S. Patent No. 10,651,866 was filed Apr. 30, 2019 and issued May 12, 2020; U.S. Patent No. 11,082,055 was filed Apr. 16, 2020 and issued Aug. 3, 2021; U.S. Patent No. 11,871,174 was filed Feb. 4, 2020 and issued Jan. 9, 2024; and U.S. Patent No. 12,216,339 was filed Nov. 22, 2023 and issued Feb. 4, 2025.

commercialized in 2021, additional Asserted Patents had been filed and issued. Then, by the time this action was filed in 2026, the Asserted Patents had been publicly available for years.

Therefore, Defendants' conduct, including (1) inviting Solos executives to Defendants' headquarters to analyze and test smart-glasses technology both before and after the filing of the Asserted Patents, (2) requesting that Solos's products be shipped to Defendants' headquarters for evaluation, and (3) subsequently commercializing smart-glasses products embodying the claimed technology of the Asserted Patents, supports a reasonable inference that Defendants acquired pre-suit knowledge of the Asserted Patents after their issuance. As the court explained in *Simplivity*, "[i]ndeed, it is difficult to envision the alternative scenario: a sophisticated party, after allegedly investigating and . . . copying a competitor's technology, being oblivious to the patent reflecting that technology." 2016 WL 5388951, at *10 (emphasis added).

Solos plausibly alleges pre-suit knowledge of the Asserted Patents, and Defendants' motion should be denied.

**2. Solos Plausibly Alleges Post-Suit Knowledge**

Post-suit knowledge may be established through the filing of a complaint alone. *Therabody, Inc. v. Tzumi Elecs. LLC*, No. 21CV7803PGGRWL, 2022 WL 17826642, at *12 (S.D.N.Y. Dec. 19, 2022), report and recommendation adopted, No. 21 CIV. 7803 (PGG) (RWL), 2023 WL 6387231 (S.D.N.Y. Sept. 29, 2023). Courts applying the majority view find that knowledge of indirect and willful infringement is satisfied upon the filing of the complaint. *See, e.g.*, *USC IP Partnership, L.P. v. Facebook, Inc.*, No. 6:20-cv-00555, 2021 WL 3134260, at *2 (W.D. Tex. July 23, 2021) ("Facebook has knowledge of the asserted patent and the alleged infringement at least at the commencement of this action"); *see also Merrill Mfg. Co. v. Simmons Mfg. Co.*, 553 F. Supp. 3d 1297, 1303 (N.D. Ga. 2021) (service of the complaint is sufficient to

show the defendant's post-suit knowledge); *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Solutions LLC*, 564 F. Supp. 3d 1126, 1148–49 (D. Utah 2021) (same).

Courts in this Circuit follow the majority view and permit post-suit knowledge upon filing. *Echosens*, 772 F. Supp. 3d at 158–60 (holding that the complaint itself can establish the requisite knowledge for post-filing conduct). *Echosens* is directly on point, is a 2025 decision, and has not been negatively treated or meaningfully distinguished by subsequent courts. Courts from other circuits have also stated that there is no principled reason to immunize a defendant from liability for continuing infringing conduct simply because knowledge of the asserted patents was first obtained through the complaint. *T-Rex Prop. AB v. Regal Ent. Group*, No. 6:16-CV-1029-RWS-KNM, 2017 WL 4229372, at *8 (E.D. Tex. Aug. 31, 2017), report and recommendation adopted sub nom. *T-Rex Prop. AB v. Regal Ent. Group.*, No. 6:16-CV-1029-RWS-KNM, 2017 WL 4225441 (E.D. Tex. Sept. 22, 2017) (post-complaint knowledge is sufficient under *Halo*) (internal quotations and citations omitted).

By contrast, Defendants rely on *ZapFraud, Inc. v. Barracuda Networks, Inc.*, but that case explicitly rejects the majority view and is in contrast with *Echosens*. In *ZapFraud*, the court dismissed post-suit indirect infringement claims where the only alleged basis for knowledge was the complaint itself. The plaintiff had also failed to allege *any* sufficient facts regarding pre-suit awareness. 528 F. Supp. 3d 247, 250–51 (D. Del. 2021). Defendants also rely on *CRH Medical Corporation v. MDE Medical, LLC*, where the court rejected pre-suit allegations because the timeline made pre-suit knowledge implausible. In *CRH*, the plaintiff's argument required that the defendant both learn of the patent and form intent to infringe within a single day. 2025 WL 2506804, at *1 (D. Del. Sept. 2, 2025). Defendants also rely on two *Zond* matters to argue a lack of post-suit knowledge. Yet, in *Zond, LLC v. Renesas Elecs. Corp.*, the court found that the plaintiff

stated a claim of post-suit knowledge after filing an amended complaint. 2014 WL 4161348, at *5–6 (D. Mass. Aug. 15, 2014). Similarly, in *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, the court recognized that a complaint could provide a defendant with knowledge of the patent and, more specifically, that inducement may attach to post-filing conduct through an amended pleading. 990 F. Supp. 2d 50, 55–57 (D. Mass. 2014). Thus, these cases do not support Defendants' post-suit knowledge arguments.

Solos nevertheless satisfies both knowledge standards. Under the restrictive approach, Defendants' knowledge is based on direct engagement and evaluation of Solos's technology. Under the majority approach, Defendants' knowledge is established by the filing of the Complaint. Therefore, in either context, Solos adequately alleges knowledge. As such, Defendants' motion should be denied.

**B. Solos Sufficiently Pleads Induced Infringement**

Solos plausibly alleges that Defendants had the knowledge required to plead inducement. The remaining element, whether Defendants intended to encourage infringing use, is also sufficiently pled. Courts have repeatedly held that intent may be inferred where a defendant takes steps to encourage infringement: this includes providing instructions, technical documentation, marketing materials, or other guidance directing users to perform the accused functionality. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355–56 (Fed. Cir. 2018) (plausibly pleading inducement by providing instructions and technical assistance); *see also Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, No. 19-cv-12533, 2020 WL 2079422, at *7 (D. Mass. Apr. 30, 2020) (advertising one's product for a specific use constitutes inducement); *Lexington Luminance LLC v. TCL Multimedia Tech. Holdings, Ltd.*, No. 16-CV-11458-DJC, 2017 WL 3795769, at *6 (D. Mass. Aug. 30, 2017) (instructional materials support inducement) (internal citation omitted).

Defendants principally rely on cases distinguishable from the instant matter such as *Vita-Mix Corp. v. Basic Holding, Inc.* and *Ocean Semiconductor LLC v. Analog Devices, Inc.* In *Vita-Mix*, the Federal Circuit found no inducement because the defendant's product design and instructions encouraged non-infringing use. 581 F.3d at 1329. Similarly, in *Ocean Semiconductor*, the complaint failed to plausibly allege that the defendant intended another to infringe or knew that the induced acts constituted infringement. 698 F. Supp. 3d 204 (D. Mass. 2023) (lacking allegations of technical support or other materials directing infringing use).

By contrast, the Complaint here identifies concrete, user-facing instructions that expressly direct users to perform the accused functionality. For example, Exhibit 7 to the Complaint (Doc. No. 1-7) incorporates Meta's Help Center materials, which provide step-by-step instructions directing users to activate and operate the accused functionality, including commands such as "Hey Meta, start live AI," "Pause live AI," and "resume live AI." These materials further explain that the glasses' camera and microphone remain continuously active during use, teaching and encouraging the precise conduct alleged to infringe.

Similarly, Exhibit 8 (Doc. No. 1-8) reflects Ray-Ban branded product pages that instruct users to perform actions such as "Hey Meta, play lo-fi music." These materials also direct the conduct alleged to infringe. Exhibits 9 through 11 (Doc. Nos. 1-9, 1-10, 1-11) further reinforce this intent by promoting features such as listening to music, using voice commands, and explaining how the speakers operate. These materials do not merely describe the products; they provide guidance that teaches and encourages users to engage in the accused functionality. *See, e.g.*, Compl. ¶¶ 125–26 (citing Exhibit 7 and alleging that Defendants' instructions and materials encourage infringing use). Solos identifies the type of materials that courts find sufficient to allege inducement, and as such, Defendants' motion should be denied.

### C. Solos Sufficiently Pleads Contributory Infringement

Solos plausibly alleges knowledge to support contributory infringement. The remaining element, whether the accused components lack substantial non-infringing uses, is also sufficiently pled. This factor does not require identifying and negating every conceivable non-infringing use but instead requires allegations that permit a reasonable inference that the components are not suitable for substantial non-infringing uses. *Echosens*, 772 F. Supp. 3d at 162–63 (quoting *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 330515, at *5 (D. Del. Jan. 25, 2019) ("[S]imply pleading the absence of substantial non-infringing uses is normally sufficient")). Pleading "substantial" non-infringing use does not allow for hypothetical or theoretical possibilities but only meaningful uses that are independent of the infringing functionality. It is sufficient to provide claim charts demonstrating that the Accused Products cannot be used in a manner that does not perform the claimed methods. *Echosens*, 772 F. Supp. 3d at 163 (finding allegations that an accused product "was formulated" for a specific use and had "no substantial non-infringing uses" sufficient to withstand dismissal) (internal citations omitted).

A "non-infringing use," moreover, must be evaluated based on the component as configured and promoted within the accused product, not in the abstract. *Copan Italia S.p.A. v. Puritan Med. Prods. Co.*, No. 1:18-cv-00218-JDL, 2018 WL 5891742, at *4–5 (D. Me. Nov. 9, 2018) (recognizing the challenge of pleading a negative and permitting an inference of no substantial non-infringing uses where the product is designed and marketed for the accused use). Courts in this District also acknowledge that the non-infringing use inquiry is inherently fact-bound and not suitable for resolution at the pleading stage. *Echosens*, 772 F. Supp. 3d at 163 (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018)).

Here, Solos identifies hardware and system components, including embedded microphones, multi-microphone arrays, onboard processors, sensor modules, and integrated audio systems, that are configured and implemented to perform the claimed functionality. Compl. ¶¶ 4–6, 13, 108–110. The attached claim charts (Exhibits 7 through 11) map these components directly to the claims of the Asserted Patents at a granular level, demonstrating how the Accused Products incorporate and use those components to perform the patented methods. Compl., Ex. 7 (identifying embedded microphones and integrated electronics); *id*., Ex. 8 (describing multi-microphone arrays and beamforming processing); *id*., Ex. 9 (identifying onboard memory and processing systems); *id*., Ex. 10 (describing integrated acoustic chambers and speakers); *id*., Ex. 11 (identifying sensor modules and camera systems). For each of these components, Solos alleges that they are "specially made or adapted for infringing use and have no substantial non-infringing use." *See*, *e.g.*, Compl. ¶¶ 136–138 (citing to Exhibit 8 which includes component-level infringement followed by allegations of no substantial non-infringing use).

The claim charts further demonstrate that the accused components operate together as an integrated system that continuously captures audio and visual data, processes that data through AI-driven pipelines, and delivers real-time outputs—functionalities that perform the claimed methods when the product is used as intended. *See*, *e.g.*, *id*., Ex. 9 (showing coordinated processing of audio and data through onboard systems) and *id*., Ex. 11 (describing real-time capture and AI processing of visual and sensor data). These processes are intentional and cannot be meaningfully used without invoking the claimed functionality. Therefore, any hypothetical alternative use would be at most incidental and insubstantial.

As such, Solos plausibly alleges that the Accused Products are specially made or adapted for use in an infringing system and lack any substantial non-infringing uses. Defendants' motion should be denied.

**D. Solos Plausibly Alleges Willful Infringement**

A plaintiff need only allege facts supporting a reasonable inference that the defendant (1) knew of the asserted patents and (2) acted despite that knowledge. *Echosens*, 772 F. Supp. 3d at 161–63 (denying dismissal where knowledge and intent were plausibly inferred). As explained above, knowledge and intent are evaluated under a totality of the circumstances and may be established through circumstantial evidence, including exposure to a plaintiff's technology and subsequent commercialization of infringing products. *Simplivity*, 2016 WL 5388951, at *9–10; *GlaxoSmithKline*, 2016 WL 3946770, at *6–7, 18. Courts further recognize that willfulness may be based on post-suit conduct where a defendant continues its infringing activities after gaining knowledge of the patent, resting on the filing of the complaint. *Echosens*, 772 F. Supp. 3d at 160–61 (finding the complaint sufficient to support post-suit willfulness); *Ocado Innovation, Ltd. v. AutoStore AS*, 561 F. Supp. 3d 36, 58 (D.N.H. 2021) (same).

**1. Solos Plausibly Alleges the Knowledge Requirement for Willfulness**

As explained above, Solos alleges knowledge of the Asserted Patents due to sustained, direct interactions between Defendants and Solos, including meetings at Defendants' corporate headquarters, and product demonstrations and product shipments. *Simplivity*, 2016 WL 5388951, at *9–10 (inferring pre-suit knowledge from competitor investigation and subsequent development of similar technology). Post-suit conduct nevertheless satisfies the knowledge requirement of willful infringement. *Echosens*, 772 F. Supp. 3d at 158–61 (the filing of the complaint is sufficient to support willfulness regarding post-suit conduct).

Defendants' argument that "[t]he Complaint itself cannot satisfy the knowledge prong for willful infringement" reflects a minority view. In support of their argument, Defendants principally rely on *Canon, Inc. v. Avigilon USA Corp.*, which is does not reject that post-suit knowledge may be obtained following the filing of a complaint*.* In *Canon*, the court dismissed willfulness claims because the complaint failed to allege *any* facts supporting an inference that the defendant had pre-suit knowledge of the asserted patent. 411 F. Supp. 3d 162, 164–66 (D. Mass. 2019). Here, Solos alleges pre-suit corporate meetings, product demonstrations, shipments, and ongoing engagement with Solos's technology, providing the type of factual linkage that was absent in *Canon*.

Nevertheless, *Canon* acknowledges that an infringer does not necessarily evade post-suit liability because it learned of the patent as a result of a lawsuit. *Id.* at 165. While *Canon* declined to permit complaint-based knowledge on the facts before it, it recognized that courts allow post-suit knowledge for post-filing conduct. In that respect, *Canon* is consistent with *Echosens*, rather than *ZapFraud,* which adopts the hardline minority rule. Under the majority rule, Defendants' motion should be denied.

**2. Solos Plausibly Alleges That Defendants Intended to Infringe**

At the pleading stage, a plaintiff is not required to plead abstract "intent" in isolation, but rather facts showing that the defendant took affirmative steps to commercialize and promote use of the accused products in an infringing manner. *Echosens*, 772 F. Supp. 3d at 161–62 (finding allegations sufficient where the complaint identified user manuals and explained how they encouraged infringing use).

Here, the Complaint does precisely that. The claim charts (Exhibits 7–11; Doc. No. 1-7 through 1-11) identify specific user-facing instructions, product documentation, and technical materials that direct users to engage the accused functionality. These materials include voice-

command instructions (e.g., "Hey Meta, start live AI" or "resume live AI"), product setup guidance, and documentation enabling continuous audio and visual capture and processing. As illustrated in Solos's claim charts, Defendants' materials instruct users to operate and rely on the very features alleged to infringe. *See supra* Section C (explaining that Defendants' components are specifically configured and promoted to perform the accused functionality, supporting an inference of intent). Courts routinely find such allegations sufficient because they show that the defendant did not merely sell a product but actively guided and encouraged users to perform the accused functionality. *AlexSam*, 119 F.4th at 46–47 (holding that references to instructions support a plausible inference of inducement).

Solos, therefore, plausibly alleges that Defendants induced infringing use of the Accused Products.

**E. Solos Plausibly Alleges Coordinated Conduct Supporting Joint and Vicarious Liability Theories**

Solos alleges that Defendants operated as part of a coordinated and interdependent enterprise to develop and commercialize the Accused Products. The Complaint describes a unified effort with a shared commercial objective, aligned interests, and coordinated responsibilities, all directed toward bringing the Accused Products to market. Collectively, these allegations plausibly show that Defendants acted in concert in carrying out the accused conduct. As explained below, such allegations are sufficient to support a theory of joint liability.

**1. Solos Plausibly Alleges a Joint Enterprise**

Multiple actors may be held liable for the same underlying tort where each participates in the wrongful conduct. *See*, *e.g.*, *Curtis Mfg. Co. v. Plasti-Clip Corp.*, 888 F. Supp. 1212, 1222–24 (D.N.H. 1994) (multiple parties may be liable for infringement regardless of veil-piercing); *see also Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 771 F. Supp. 1390, 1403 (D.N.J. 1991)

("until changed by [a Federal Circuit] en banc decision, the court finds that the long-established rule that a corporate officer can be liable for direct infringement without piercing the corporate veil remains in effect"). In *Curtis*, for instance, the court emphasized that liability for patent infringement turns on a party's participation in the wrongful conduct, without any need to disregard the corporate form. This principle confirms that joint or coordinated liability is grounded in conduct, not in collapsing corporate separateness. 888 F. Supp. at 1222–23 (infringement liability turns on participation, not veil piercing). This approach is also consistent with the Federal Circuit.

As the Federal Circuit has explained, multiple entities may be held liable for infringement based on their participation in the accused conduct, without any need to pierce the corporate veil. *See Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022–23 (Fed. Cir. 2015) (en banc) (where multiple actors operate as a joint enterprise all infringing steps are attributable to a single entity). Under *Akamai*, infringement cannot be avoided by dividing performance of a claimed method among multiple actors. Rather, where the actors form a joint enterprise, their combined conduct may be treated as that of a single infringer. *Id*. This framework for joint enterprise liability bolsters Solos's allegations.

Solos alleges that Defendants and Meta coordinated in a joint effort to develop the Accused Products, spanning research and testing through manufacturing and distribution. *See* Compl. ¶¶ 26, 28–29, 31–33, 35–36, 38–39. Solos further alleges that Defendants and Meta each played a knowing and material role in bringing the Accused Products to market. *See id.* ¶¶ 76, 83, 96–106. These allegations describe the type of joint participation that gives rise to shared liability consistent with the Federal Circuit.

Defendants, however, conflate Solos's joint enterprise theory with the distinct doctrine of corporate veil piercing. In doing so, Defendants rely on *Trustees of Boston U. v. Everlight Elecs. Co., Ltd.*, No. 12-CV-11935-PBS, 2014 WL 12792363 (D. Mass. May 16, 2014), *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308 (Fed. Cir. 2010), and *InterGen N.V. v. Grina*, 344 F.3d 134 (1st Cir. 2003), but those cases address alter ego liability. They do not address situations where separate businesses are each alleged to have participated in coordinated wrongful conduct. By recasting Solos's allegations as a veil-piercing issue, Defendants impose an unrelated standard that is inapplicable to the relevant theory. Therefore, Defendants' motion should be denied.

**2. Solos Sufficiently Alleges Agency and Vicarious Liability Arising from the Joint Enterprise**

Federal Circuit law recognizes that where multiple actors participate in practicing a claimed method, liability may attach if the acts of one are attributable to another under principles of agency, direction or control, or joint enterprise. *Akamai Technologies*, 797 F.3d at 1022–23 (a party may be responsible for another's conduct where they form a joint enterprise); *Eli Lilly and Co. v. Teva Parenteral Medicines*, Inc., 845 F.3d 1357, 1364–65 (Fed. Cir. 2017) (same; performance is attributable where a joint enterprise exists). At the pleading stage, a plaintiff need only allege facts supporting a reasonable inference of such coordinated enterprise; detailed proof of contractual relationships or internal arrangements is not required prior to discovery. *Nalco*, 883 F.3d at 1351–53 (reversing dismissal where allegations plausibly supported attribution). Defendants, however, rely on cases that are unrelated to this point.

For instance, in *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017), the Federal Circuit addressed attribution of a third party's conduct at summary judgment, focusing on whether the defendant directed or controlled that conduct such that all steps could be attributed to a single

actor. That case turned on a developed evidentiary record and does not govern whether a complaint plausibly alleges coordinated conduct at the pleading stage. Likewise, *Centillion Data Sys., LLC v. Qwest Commun. Intern., Inc.*, 631 F.3d 1279 (Fed. Cir. 2011) addresses when a defendant "uses" a system under § 271(a), requiring that the defendant put the system into service and control its use, not whether multiple actors may be jointly liable based on a joint enterprise. And *In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020) and *CNE Direct, Inc. v. Blackberry Corp.*, 821 F.3d 146 (1st Cir. 2016) articulate agency principles in the context of fully developed commercial relationships, requiring proof of control and mutual assent rather than assessing the joint enterprise plausibility standard applicable here. The remaining cases relied on by Defendants, including *Armstrong v. White Winston Select Asset Funds, LLC*, 648 F. Supp. 3d 230 (D. Mass. 2022), *Ryba v. LaLancette*, 417 F. Supp. 2d 199 (D. Mass. 2006), address distinct issues such as multi-factor joint ventures and alter ego analyses, or are distinguishable because they do not involve a commercial collaboration with coordinated roles and a shared economic purpose.

Conversely, here, Solos alleges that Defendants operate as part of a coordinated and interdependent enterprise with Meta, including through a formalized collaboration to jointly develop and commercialize the Accused Products. *See* Compl. ¶¶ 76–83, 96–106. Although Meta and Defendants each contributed particular expertise, Solos nevertheless alleges that they jointly participated in the co-development of the Accused Products. *Id.* ¶¶ 25–26, 28–29, 31–33, 35–36, 38–39. These allegations plausibly support the existence of a common purpose and a shared pecuniary interest as well as joint participation in directing and carrying out the relevant activities. Defendants' and Meta's conduct may be treated, therefore, as a single entity under the joint enterprise theory.

Accordingly, Defendants' motion should be denied.

### 3. Solos Plausibly Alleges Agency and Vicarious Liability as to Individuals

Defendants' challenge to Paragraph 105 mischaracterizes the Complaint. Solos does not assert liability against unidentified actors in the abstract; rather, it alleges that Defendants engaged in the accused conduct through a range of actors and mechanisms, including agents and intermediaries such as employees, contractors, and suppliers, consistent with how complex technology products are developed and commercialized. These allegations further support agency and vicarious liability. As courts recognize, a corporation acts through its agents, and liability may arise from those agents' conduct undertaken within the scope of their roles. *See Coach, Inc. v. Sapatis*, 27 F. Supp. 3d 239, 245–47 (D.N.H. 2014) (recognizing that liability may arise from the acts of corporate agents).

Solos is not required to allege internal corporate relationships or control structures uniquely within Defendants' possession, nor must it identify every individual participant in the infringing scheme. It is sufficient to allege facts supporting a plausible inference that Defendants participated in or were responsible for the accused conduct, including, without limitation, through agents. The Complaint nevertheless identifies specific individuals, including Scott Smith, Luis Dias, and Fabio Borsoi, as persons associated with Defendants and their smart-glasses development efforts, further grounding its allegations. Accordingly, Defendants' motion should be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Solos Technology Limited respectfully requests that the Court deny Defendants Luxottica of America, Inc., EssilorLuxottica USA, Inc., and Oakley, Inc.'s motion in its entirety. Alternatively, to the extent the Court determines that any claim or theory is inadequately pled, Solos respectfully requests leave to amend.

Respectfully submitted,

/s/ Jameson J. Pasek
Jameson J. Pasek, Esq. (BBO# 692924)
CALDWELL
200 Clarendon Street, 59th Floor
Boston, MA 02116
jameson@caldwelllaw.com
(857) 990-4914

Dated: April 8, 2026

*Counsel for Plaintiff Solos Technology Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the Court's CM/ECF system on April 8, 2026, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Jameson J. Pasek
Jameson J. Pasek, Esq. (BBO# 692924)