**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| SOLOS TECHNOLOGY LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-10304-ADB |
| | ) | |
| v. | ) | |
| | ) | |
| META PLATFORMS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO META PLATFORMS, INC. AND META
PLATFORMS TECHNOLOGIES, LLC'S MOTION TO DISMISS,
<u>OR IN THE ALTERNATIVE, STAY THE PROCEEDINGS</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION..................................................................................................1

II.   FACTUAL BACKGROUND..................................................................................3

     A.    The BlueRadios–Kopin Collaboration Was Limited to a Discrete Project Ending in 2009..........................................................................................................3

     B.    The Asserted Patents Were Developed Years Later Through Independent Work.................................................................................................................4

     C.    Solos Acquired Its Patent Rights Through a Subsequent Transaction with Kopin.................................................................................................................5

     D.    The Prior BlueRadios Litigation Concerned Different Patents and a Different Time Period.....................................................................................................5

III.  LEGAL STANDARD............................................................................................5

     A.    Joinder Under Rule 19......................................................................................5

     B.    Stay...................................................................................................................6

IV.  ARGUMENT.........................................................................................................7

     A.    This Action Should Not Be Dismissed Under Rules 12(b)(7) and 19(a)..............7

          1.    BlueRadios Is Not a Required Party Under Rule 19(a)................................7

               i.     Complete Relief Is Available Among the Parties............................7

               ii.    BlueRadios Has No Interests That Can Be Impaired........................8

               iii.   Meta Is Not Subject to a Substantial Risk of Incurring Double or Inconsistent Obligations..................................................................13

          2.    Meta's Involuntary Joinder Argument Fails Absent Proof of Co-Ownership.................................................................................................14

          3.    Rule 19(b) Weighs Against Dismissal.......................................................15

     B.    A Stay Is Unwarranted......................................................................................17

V.   CONCLUSION.....................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                                 **Pages**

*A.L.M. Holding Co. v. All States Materials Grp. Inc.*,
    784 F. Supp. 3d 417 (D. Mass. 2025)....................................................................18, 19, 20

*Amersham Int'l v. Corning Glass Works*,
    108 F.R.D. 71 (D. Mass. 1985).....................................................................................6, 18

*Amgen, Inc. v. Ariad Pharm., Inc.*,
    513 F. Supp. 2d 34 (D. Del. 2007)................................................................................8, 15

*Automated Transactions, LLC v. Bath Sav Inst.*,
    2013 U.S. Dist. LEXIS 48964 (D. Me. Mar. 14, 2013).....................................................19

*Bacardi Int'l Ltd. v. V. Suarez & Co.*,
    719 F.3d 1 (1st Cir. 2013).................................................................................................14

*Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*,
    996 F.3d 1302 (Fed. Cir. 2021)...............................................................................8, 10, 11

*Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*,
    633 F. Supp. 3d 385 (D. Mass. 2022).................................................................................19

*BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*,
    166 F.4th 197 (1st Cir. 2026)................................................................................................3

*BlueRadios, Inc. v. Kopin Corp., Inc.*,
    2017 WL 11546716 (D. Colo. Jan. 24, 2017)..............................................................3, 5, 9

*Chr. Hansen HMO GmbH v. Glycosyn LLC*,
    662 F. Supp. 3d 50 (D. Mass. 2023)...................................................................................18

*DDB Technologies, LLC v. MLB Advanced Media, L.P.*,
    517 F.3d 1284 (Fed. Cir. 2008)...........................................................................................14

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
    623 F. Supp. 2d 1144 (E.D. Cal. 2009)...............................................................................16

*Delgado v. Plaza Las Americas, Inc.*,
    139 F.3d 1 (1st Cir. 1998)...................................................................................................13

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004)........................................................................................8, 11

*Ethicon, Inc. v. U.S. Surgical Corp.*,
    135 F.3d 1456 (Fed. Cir. 1998)........................................................................11, 14

*Gryphon Networks Corp. v. Contract Ctr. Compliance Corp.*,
    792 F. Supp. 2d 87 (D. Mass. 2011).......................................................................6

*H.D. Corp. of Puerto Rico v. Ford Motor Co.*,
    791 F.2d 987 (1st Cir. 1986)................................................................................ 6

*Harish v. Arbit*,
    2025 WL 3313013 (D.N.J. July 31, 2025)...........................................................7

*Hilton v. Kerry*,
    2013 U.S. Dist. LEXIS 169661 (D. Mass. Dec. 2, 2013)................................... 19

*Heath v. Aspen Skiing Corp.*,
    325 F. Supp. 223 (D. Colo. 1971).........................................................................6

*InMode Ltd. v. BTL Indus., Inc.*,
    774 F. Supp. 3d 263 (D. Mass. 2025)....................................................................6

*In re JJ. of S. Ct. of Puerto Rico*,
    695 F.2d 17 (1st Cir. 1982)..................................................................................19

*Israel Bio-Eng'g Project v. Amgen Inc.*,
    475 F.3d 1256 (Fed. Cir. 2007)................................................................10, 11, 15

*Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*,
    973 F.2d 911 (Fed. Cir. 1992)........................................................................11, 12

*Koninklijke Philips N.V. v. Amerlux, LLC*,
    167 F. Supp. 3d 270 (D. Mass. 2016)..................................................................18

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)..............................................................................................6

*Lee v. Anthony Lawrence Collection, L.L.C.*,
    47 F.4th 262 (5th Cir. 2022)..........................................................................13, 17

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019)...........................................................6, 8, 9, 10

*Merritt v. Tiernan*,
    732 F. Supp. 3d 180 (D.R.I. 2024).......................................................................7

*Murdock Webbing Co. v. Dalloz Safety, Inc.*,
   213 F. Supp. 2d 95 (D.R.I. 2002)..................................................................................11

*Names for Dames, Inc. v. Gimbel*,
   1989 WL 82417 (S.D.N.Y. July 19, 1989).....................................................................18

*Narragansett Tribe of Indians v. S. Rhode Island Land Dev. Corp.*,
   418 F. Supp. 798 (D.R.I. 1976) .......................................................................................6

*Northern Arapaho Tribe v. Harnsberger*,
   697 F.3d 1272 (10th Cir. 2012).....................................................................................15

*Omni MedSci, Inc. v. Apple Inc.*,
   7 F.4th 1148 (Fed. Cir. 2021)....................................................................................9, 10

*Propat Intern. Corp. v. Rpost, Inc.*,
   473 F.3d 1187 (Fed. Cir. 2007)........................................................................................8

*Rawlings v. Nat'l Molasses Co.*,
   394 F.2d 645 (9th Cir. 1968)..........................................................................................14

*Raytheon Co. v. Cont'l Cas. Co.*,
   123 F. Supp. 2d 22 (D. Mass. 2000)................................................................................6

*Republic of the Philippines v. Pimentel*,
   553 U.S. 851 (2008)................................................................................13, 15, 16, 18

*Schering Corp. v. Roussel-UCLAF SA*,
   104 F.3d 341 (Fed. Cir. 1997).......................................................................................15

*Shermoen v. United States*,
   982 F.2d 1312 (9th Cir. 1992)........................................................................................13

*Somerville Pub. Schools v. McMahon*,
   139 F.4th 63 (1st Cir. 2025)...........................................................................................18

*STC.UNM v. Intel Corp.*,
   754 F.3d 940 (Fed. Cir. 2014)...................................................................................14, 15

*Televisa, S.A. de C.V. v. Koch Lorber Films*,
   382 F. Supp. 2d 631 (S.D.N.Y. 2005).............................................................................18

*White v. University of California*,
   765 F.3d 1010 (9th Cir. 2014)........................................................................................13

iv

*Western Auto Supply Co. v. Noblex Advertising, Inc.*,
    173 F.R.D. 338 (D.P.R. 1997)................................................................16

*Windsurfing International, Inc. v. Ostermann*,
    100 F.R.D. 82 (S.D.N.Y. 1983)........................................................16, 17

**Statutes**

35 U.S.C. § 281 ...........................................................................................8

35 U.S.C. § 100 ...........................................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(7)..............................................................................5

Fed. R. Civ. P. 19(a).........................................................1, 2, 5, 13, 15

Fed. R. Civ. P. 19(b).........................................................2, 5, 6, 15, 17

Fed. R. Civ. P. 19(a)(1)(A)..........................................................................7

Fed. R. Civ. P. 19(a)(1)(B)..........................................................................7

Fed. R. Civ. P. 19(a)(1)(B)(i)....................................................................13

Fed. R. Civ. P. 19(a)(1)(B)(ii)..............................................................13, 14

Meta Platforms, Inc. and Meta Platforms Technologies, LLC's (collectively, "Meta") Motion to Dismiss, or in the Alternative, Stay the Proceedings (the "Motion") should be denied because it rests on speculation, applies inapposite case law, and fails to establish any basis for joinder or a stay.

## I.      INTRODUCTION

In the patent context, Fed. R. Civ. P. 19(a) permits joinder where an absent party has substantial rights in the patents at issue, meaning rights that amount to actual ownership. Courts do not permit joinder based on speculation about what ownership an absent party might have. To assert a non-frivolous claim of co-ownership, therefore, Meta must identify a patent-specific ownership nexus between BlueRadios, Inc. ("BlueRadios") and the Asserted Patents. Meta has not—and cannot—do so.

Meta relies on a letter from BlueRadios' CEO, sent six weeks after this action was filed, and a decades-old collaboration between BlueRadios and Kopin Corporation ("Kopin"), neither of which demonstrates BlueRadios having substantial rights in the Asserted Patents. Indeed, Meta effectively concedes the absence of any such rights by asserting that Solos Technology Limited's ("Solos") Asserted Patents "appear" to have "come from the joint project between Kopin and BlueRadios." At most, Meta suggests a potential interest based on contractual language or joint inventorship. However, even taking such assertions as true, Meta's arguments fail as a matter of law. Under Federal Circuit precedent, (1) contractual language stating that certain intellectual property "will be owned jointly" does not effectuate a present transfer of title absent operative assignment language, and (2) a prior collaboration does not confer an ongoing ownership right in later-developed inventions, even where those inventions build on earlier work.

1

Similarly, co-ownership through joint inventorship extends only to intellectual property developed through the parties' joint efforts. Yet, Meta fails to identify any post-2009 work under the agreement, much less any work contributing to specific claims of the Asserted Patents. Nor does Meta identify a joint inventor or allege collaboration between BlueRadios and Solos. The circumstances surrounding conception of the Asserted Patents and inventorship, moreover, are confirmed by the only inventor-specific evidence before the Court, the declaration of Solos' program lead, Ernesto Martinez.

Furthermore, even if BlueRadios were a required party under Rule 19(a), the four Rule 19(b) factors—prejudice, mitigation, adequacy of judgment, and adequacy of alternative remedies—weigh in Solos' favor. First, Meta's prejudice argument rests on speculation that BlueRadios might bring a separate infringement suit, yet speculation is insufficient, particularly where there is no ownership case pending regarding the Asserted Patents. Second, BlueRadios has demonstrated awareness of this litigation, negating any notice concern and allowing the Court to mitigate purported prejudice through tailored relief. Third, the issues before the Court would not be impacted without BlueRadios' participation and therefore a judgment in this case would be adequate; notably, Meta does not meaningfully address this factor and instead conflates adequacy with alleged prejudice. Fourth, there is no adequate alternative remedy for Solos because no proceeding exists to resolve BlueRadios' alleged interest in the Asserted Patents.

Lastly, Meta's alternative request for a stay fails. While Meta invokes the four-factor test applicable to stays pending appeal, courts in this District evaluate pretrial stays based on simplification of issues, prejudice, and the stage of the case. Under either framework, however, a stay is unwarranted because no parallel proceeding exists to resolve any alleged ownership interest, and Meta's speculative theory does not overlap with the core issues in this case. Thus, a stay would

2

not simplify the litigation, but would instead prejudice Solos by delaying enforcement of its patent rights for an indeterminate period.

For these reasons, and those set forth below, Meta's Motion should be denied.

## II.    FACTUAL BACKGROUND

### A.  The BlueRadios–Kopin Collaboration Was Limited to a Discrete Project Ending in 2009

In 2007, BlueRadios and Kopin entered into a limited collaboration to develop a prototype head-mounted device known as "Golden-i." *See BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, 166 F.4th 197, 205–09 (1st Cir. 2026); *BlueRadios, Inc. v. Kopin Corp., Inc.*, No. 16-CV-2052-JLK, 2017 WL 11546716, at \*3 (D. Colo. Jan. 24, 2017). The collaboration was governed by a development agreement under which BlueRadios provided certain wireless design components, while Kopin contributed display-related technology and undertook responsibility for patent filings. *See* 2007 BlueRadios–Kopin "Golden-i Wireless Video Design Solution" Agreement (the "Agreement") (attached hereto as Ex. 1).

The Agreement was expressly limited in scope to work performed "in the course of this development contract," and thus confined any potential rights to that discrete Golden-i project. *See* Ex. 1 at 5. The Agreement does not contain any present assignment of patent rights but instead provides only that certain intellectual property "will be owned jointly," and therefore no automatic transfer of title. *Id*. The collaboration ended in mid-2009, at which point the parties ceased all joint work and communication. *See BlueRadios*, 166 F.4th at 208. There is no allegation—and no evidence—that any collaboration between BlueRadios and Kopin continued after 2009, or that BlueRadios participated in any subsequent development efforts.

**B. The Asserted Patents Were Developed Years Later Through Independent Work**

The Asserted Patents arise from technologies conceived and developed years after the Golden-i collaboration ended. The earliest priority date associated with the Asserted Patents is no earlier than 2013, with patent filings beginning in 2015—well after any collaboration between BlueRadios and Kopin had ceased. *See*, *e.g.*, Doc. No. 1-1 (U.S. Patent No. 10,306,389; filed Oct. 15, 2015; claiming priority to Mar. 13, 2013). These later developments were part of a separate and independent effort focused on wearable computing systems, including the Solos' smart-glasses platform. As confirmed by Solos' program lead, Ernesto C. Martinez-Villalpando, Ph.D. ("Dr. Martinez"), who joined Kopin in 2013 and led its consumer wearable computing initiatives beginning in 2015, the Solos platform was conceived and developed as a distinct program within Kopin's system innovation division, focused on consumer and sports performance applications. *See* The Declaration of Ernesto C. Martinez-Villalpando, Ph.D. ("E. Martinez Decl.") (attached hereto as Ex. 2).

Dr. Martinez confirms that BlueRadios had no involvement in the development of the Solos platform or the technologies underlying the Asserted Patents, and that he did not interact with BlueRadios in connection with any such development work. *Id.* ¶¶ 7–9. Dr. Martinez further explains that the Solos smart glasses platform was developed independently of the earlier Golden-i project and was not part of any continuous development effort, but instead involved different technical architecture, design objectives, and system integration. *Id.* ¶¶ 10–11. Accordingly, none of the technology, system architecture, or development work pertaining to Golden-i was used in the development of the Solos platform, and no Golden-i intellectual property was transferred to, or used in connection with, the Solos program or any subsequent Solos-related development. *Id.* ¶¶ 12–13, 15.

4

### C. Solos Acquired Its Patent Rights Through a Subsequent Transaction with Kopin

In 2019, Solos Technology Limited ("Solos") acquired assets from Kopin associated with the Solos smart-glasses product line, including related intellectual property rights. *See* Doc. 1 ¶ 61. The Asserted Patents are part of that acquired portfolio and reflect development by Kopin's Solos division, separate and distinct from the earlier Golden-i project. *See* E. Martinez Decl. (Ex. 2 ¶¶ 12–15). Although certain work at Kopin preceded Solos, that work was distinct from the earlier 2007–2009 BlueRadios collaboration. *See id.* ¶¶ 53–55, 63.

### D. The Prior BlueRadios Litigation Concerned Different Patents and a Different Time Period

BlueRadios previously litigated claims against Kopin in the District of Colorado relating to alleged conduct during the parties' 2007–2009 collaboration. *See BlueRadios*, No. 16-CV-2052-JLK. That litigation addressed whether Kopin had improperly omitted BlueRadios inventors. *See id.*, Doc. No. 51-8 (Colorado Verdict Form) at 12; Doc. No. 51-7 (Colorado Final Judgment) at 3–4. Notably, inventorship was corrected regarding two patents that are not among the Asserted Patents, and the jury found that BlueRadios was entitled to co-ownership of one additional patent arising from the Golden-i project. *See id.*, Doc. No. 124 (Colorado joint motion to correct inventorship). BlueRadios did not allege, let alone establish, that it has an ownership interest in the Asserted Patents.

## III.   LEGAL STANDARD

### A. Joinder Under Rule 19

Federal Rule of Civil Procedure 19 outlines a three-step approach to determine whether a case should be dismissed under Rule 12(b)(7): first, whether the absent entity is a required party under Rule 19(a); if so, whether joinder is feasible; and third, if joinder is not feasible, whether the action should proceed in equity and good conscience under Rule 19(b). Fed. R. Civ. P. 19. A party

is only required if, in its absence, the Court cannot accord complete relief among existing parties, or if the absent party claims a legally cognizable interest that would be impaired or would expose existing parties to a substantial risk of inconsistent obligations. Fed. R. Civ. P. 19(a)(1). In patent cases, a non-party must have substantial rights in the patents-in-suit, not a potential interest. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1237–39 (Fed. Cir. 2019).

If a party is deemed required but joinder is not feasible, the Court must determine whether the action should proceed under Rule 19(b). The party seeking dismissal bears the burden of persuasion. *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 32 (D. Mass. 2000). Rule 19(b) considers (1) prejudice to an absent party, (2) the ability to mitigate prejudice, (3) the adequacy of a judgment in the party's absence, and (4) whether dismissal would leave the plaintiff without an adequate remedy. *H.D. Corp. of Puerto Rico v. Ford Motor Co.*, 791 F.2d 987, 992–93 (1st Cir. 1986). "In general, 'the philosophy of [] Rule 19 is to avoid dismissal wherever possible.'" *Narragansett Tribe of Indians v. S. Rhode Island Land Dev. Corp.*, 418 F. Supp. 798, 813 n.5 (D.R.I. 1976) (quoting *Heath v. Aspen Skiing Corp.* 325 F. Supp. 223, 229 (D. Colo. 1971)).

### B. Stay

A stay is only appropriate where it promotes judicial economy and the movant makes a clear showing of hardship. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *Gryphon Networks Corp. v. Contact Ctr. Compliance Corp.*, 792 F. Supp. 2d 87, 92 n.4 (D. Mass. 2011) (only granting a stay where a clear case of hardship or inequity is demonstrated). Courts consider whether a stay will simplify the issues, whether it will prejudice the non-moving party, and whether it will promote efficient resolution of the case. *InMode Ltd. v. BTL Indus., Inc.*, 774 F. Supp. 3d 263, 265 (D. Mass. 2025). A stay is not warranted where it would result in protracted delay and prejudice to the plaintiff. *Amersham Int'l v. Corning Glass Works*, 108 F.R.D. 71, 72 (D. Mass. 1985).

6

## IV.    **ARGUMENT**

### A.  **This Action Should Not Be Dismissed Under Rules 12(b)(7) and 19(a)**

Under Rule 19(a)(1)(A), complete relief is available, and under Rule 19(a)(1)(B), BlueRadios has no interests that would be impaired, and Meta does not face any substantial risk of inconsistent obligations.

### 1.  **BlueRadios Is Not a Required Party Under Rule 19(a)**

#### i.    *Complete Relief Is Available Among the Parties*

The "complete relief" inquiry under Rule 19(a)(1)(A) refers to relief as between the parties—here, Solos and Meta—not whether an absent third party might prefer to participate or could be affected by the outcome. *Merritt v. Tiernan*, 732 F. Supp. 3d 180, 183–84 (D.R.I. 2024) (Rule 19(a)(1)(A) is only concerned with existing parties; the possibility of separate litigation involving absent parties does not affect the complete relief analysis). Courts consistently apply this limitation in patent cases. For example, in *Harish v. Arbit*, 2025 WL 3313013, at *3 (D.N.J. July 31, 2025), the court held that an absent patent assignee was not a required party because its absence did not prevent resolution of the inventorship dispute or the provision of complete relief among the existing parties. The same rationale applies here.

In the instant case, the Court can fully adjudicate Solos' infringement claims and Meta's invalidity, unenforceability, and noninfringement defenses without BlueRadios' participation. Even if BlueRadios were an assignee, complete relief turns on the rights and liabilities as between Solos and Meta, not on the purported interests of BlueRadios. The absence of BlueRadios therefore poses no barrier to determining infringement, validity, or any available remedies. Any concern, moreover, that BlueRadios might be affected by the outcome falls under Rule 19(a)(1)(B), not (A), and Meta's conflation of this prong should be rejected.

7

### ii.    *BlueRadios Has No Interests That Can Be Impaired*

Meta cannot demonstrate that BlueRadios holds substantial rights[1] in the Asserted Patents because its argument rests on the assertion that BlueRadios *may* be a co-owner. A party with a purported interest in the Asserted Patents is only required if necessary to satisfy the statutory requirements of the Patent Act[2]—"a suit for infringement . . . [may] be brought by a party holding legal title to the patent." *Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007) (emphasis added) (internal citation omitted). Co-ownership, reflecting shared legal title, or the transfer of substantial rights, may arise through  (1) transfer or assignment; (2) joint development; or (3) inventorship. *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1236 (Fed. Cir. 2019) (exclusive licensee granted opportunity to join patent assignee under Rule 19 analysis); *Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*, 996 F.3d 1302, 1317–18 (Fed. Cir. 2021) (co-ownership requires joint development during the course of conduct); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1361–62 (Fed. Cir. 2004) (joint inventorship requires a contribution at the conception of the claimed invention).

First, BlueRadios has not been transferred or assigned legal rights to the Asserted Patents. In determining whether a transfer has occurred, the Federal Circuit assesses whether a party holds substantial rights (i.e., true ownership) based on the substance of the rights actually conveyed under the governing agreement. *Lone Star Silicon Innovations*, 925 F.3d at 1230 (substantive rights means actual ownership). In *Lone Star*, the court analyzed a specific patent transfer agreement and evaluated, based on its terms, whether all substantial rights had in fact been conveyed. 925 F.3d at

---

[1] In determining whether an absent party is necessary under Rule 19 in patent cases, courts apply Federal Circuit law to assess whether a party holds "substantial rights" in the patent at issue—i.e., rights sufficient to render it the effective patentee under 35 U.S.C. § 281. *See Amgen, Inc. v. Ariad Pharm., Inc.*, 513 F. Supp. 2d 34 (D. Del. 2007).

[2] The Patent Act permits a "patentee" to sue "for infringement of his patent." 35 U.S.C. § 281. "Patentee" includes "not only the patentee to whom the patent was issued but … successors in title to the patentee." 35 U.S.C. § 100(d).

1230–31. That inquiry turned on concrete contractual provisions governing control of the patents at issue, not on speculation about possible ownership of future patents. *Id*. That requirement forecloses reliance on conjecture and instead demands evidence of an executed transfer of rights of the patents at issue.

Nor can Meta rely on forward-looking contractual language to establish an automatic assignment. The Federal Circuit has held that language providing that intellectual property "shall be the property of" a party does not effectuate a present assignment, but instead "reflect[s] a future agreement to assign rather than a present assignment." *Omni MedSci, Inc. v. Apple Inc.*, 7 F.4th 1148, 1152 (Fed. Cir. 2021). Such language creates, at most, a contingent contractual right requiring a subsequent act of assignment before ownership can vest. Accordingly, under *Lone Star* and *Omni*, a party claiming an interest must identify a contractual provision that effectuates a present transfer of title through operative assignment language, not merely language reflecting a future intent to assign.

Here, the language of the Agreement confirms that no present ownership rights were ever conveyed to BlueRadios. The BlueRadios–Kopin contract provides that "[a]ny intellectual property rights developed by BlueRadios in the course of this development contract ('Joint Developments'), will be owned jointly." *See* Ex. 1 at 5 (lacking required assignment language); *BlueRadios*, No. 16-cv-2052-JLK (Doc. No. 100-4). This forward-looking language does not effectuate a present assignment and contains no operative terms (such as "hereby assigns") that would automatically transfer title to BlueRadios. *See Omni MedSci*, 7 F.4th at 1152–53. Meta also fails to identify any executed transfer of rights to BlueRadios. Conversely, Solos holds an unbroken chain of title from the inventor through assignments recorded at the USPTO.[3] Therefore,

---

[3] Assignment records for the Asserted Patents are publicly available from the United States Patent and Trademark Office's Assignment Database. *See*, *e.g.*, Reel/Frame Nos.: U.S. Pat. No. 10,306,389–37404/0115, 37404/0168,

9

Meta's arguments fail: (1) under *Lone Star*, because it does not identify any executed transfer of rights in the Asserted Patents, and (2) under *Omni*, because the type of contractual language it invokes cannot create present ownership as a matter of law.

Next, Meta has not demonstrated that BlueRadios has obtained substantial rights through joint development. Establishing co-ownership through joint development requires proof that the specific inventive concepts claimed in the Asserted Patents were developed during the relevant contract period. The Federal Circuit has made clear that a party cannot claim ownership of later-developed patents even if those inventions build upon or are informed by prior research funding or contractual arrangements. *See Israel Bio–Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1267 (Fed. Cir. 2007) (holding that a contractual joint-ownership provision did not extend to inventions conceived after the collaborative R&D period, even when those inventions built on proprietary information developed during the collaboration). Similarly, in *Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*, the Federal Circuit held that ownership provisions limited to intellectual property developed during employment did not create ownership rights in later-conceived patents, even where the later inventions built on earlier work performed during the employment relationship. 996 F.3d 1302, 1317–19 (Fed. Cir. 2021).

As explained above, the contractual provision on which Meta relies states that any ownership by BlueRadios extends to "intellectual property rights developed by BlueRadios in the course of this development contract." *See* Ex. 1 at 5; Doc. No. 50 at 3–4 (referencing the collaborative period). The contract language therefore works against Meta. All collaboration ended

---

37404/0190, 37404/0253, and 51280/0099; U.S. Pat. No. 11,082,055–56563/0796, 73032/0706, and 73032/0870; U.S. Pat. No. 10,651,866–73075/0452, 49324/0997, and 51280/0099; U.S. Pat. No. 11,871,174–64408/0557, 64408/0694, 64318/0720, 64408/0777, 64318/0843, and 64347/0190; and U.S. Pat. No. 12,216,339–73034/0033; and 73034/0524.

in 2009, and years before Solos was formed in 2015. *See* E. Martinez Decl. (Ex. 2) (explaining that Kopin's Solos division was formed in 2015).

Nor do the prior litigations between BlueRadios and Kopin alter this conclusion. *See* Doc. No. 50 at 12–15 (relying on disputes involving unrelated patents to suggest potential ownership of the Asserted Patents). The Colorado litigation addressed whether Kopin was obligated to assign co-ownership of certain patents developed during the 2007 to 2009 collaboration. As explained above, such rationale is consistent with *Israel Bio–Eng'g Project v. Amgen Inc.* and *Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*, where a contract limits co-ownership to inventions developed during the parties' collaboration, rather than extending to later-developed inventions. Therefore, BlueRadios' reliance on the prior litigation or its assertion that the contract "is still in effect" is misplaced.

Lastly, Meta fails to show that any BlueRadios employee contributed to a specific claim of the Asserted Patents. To qualify as a joint inventor, an individual must contribute to the conception of the claimed invention, and that contribution must be significant when measured against the full invention. *See Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1361–62 (Fed. Cir. 2004) (joint inventorship requires a contribution at the conception of the claimed invention). Joint inventorship also requires collaboration among the inventors. *See Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 916–17 (Fed. Cir. 1992). A person who merely assists in reduction to practice or explains the state of the art does not qualify as a joint inventor. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998); *Murdock Webbing Co. v. Dalloz Safety, Inc.*, 213 F. Supp. 2d 95, 100 (D.R.I. 2002).

As explained above, the Asserted Patents were conceived and developed years after all collaboration ceased. *See* E. Martinez Decl. (Ex. 2) (explaining that Solos-related technologies

11

were developed beginning in 2015, after the Golden-i collaboration ended, and were conceived as part of a separate and independent development effort). Even if BlueRadios played a role in developing Golden-i systems or Whisper™ audio-processing technology, that work does not establish joint inventorship of the Asserted Patents, the earliest of which was filed in 2015 and claims priority no earlier than 2013. *See* Doc. No. 1-1 (patent face listing filing date (Oct. 15, 2015) and related U.S. provisional application date (Mar. 13, 2013)). Nor does Meta attempt to make the required showing. It identifies no individual who allegedly collaborated with the named inventors or contributed to conception of any claimed invention of the Asserted Patents. *See Kimberly-Clark*, 973 F.2d at 916–17 (requiring collaboration and contribution to conception). This failure is unsurprising because there are no such allegations for Meta to support such a theory, nor any factual basis in the record from which such allegations could be drawn.

For instance, the March 10, 2026 letter from BlueRadios' CEO asserts only in general terms that BlueRadios "believes they are the co-owners of the 5 patents specified in the complaint filed by Solos" based on the 2007 to 2009 collaboration. *See* Doc. No. 51-1 at 4. These statements cannot provide a basis for joint inventorship. In addition, Meta's technological comparisons fare no better, pointing only to generalized features such as microphone-based voice input and sensor-based motion or context detection. *See* Doc. No. 50 at 12–14. These materials fail to identify any specific inventive contribution to the conception of any claim of the Asserted Patents and cannot do so because no such overlap exists. *See* E. Martinez Decl. (Ex. 2) (explaining that Golden-i and Solos were developed at different times, for different purposes, and using different system architectures); *Kimberly-Clark*, 973 F.2d at 916–17.

Because Meta cannot establish any cognizable interest under the proper framework, it pivots to a different theory, recasting its position as a "non-frivolous claim" of ownership. That

12

reframing is misplaced. Rule 19(a) does not turn on a "low bar" standard, but on whether the absent party holds a legally protected interest. Meta misapplies that standard and relies on four inapposite cases including *White v. University of California*, 765 F.3d 1010, 1015–18, 1025–27 (9th Cir. 2014) (absent tribes asserted a substantiated, legally protected claim to specific human remains supported by official determinations identifying them as the proper recipients); *Republic of the Philippines v. Pimentel*, 553 U.S. 851, 858–60 (2008) (absent sovereigns invoked a forfeiture statute granting a present legal entitlement to identified assets while actively pursuing recovery of those assets); *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 270 (5th Cir. 2022) (an active ownership dispute over the trademark was underway, creating a concrete, ongoing claim of right); and *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) (absent tribes had an indisputable, legally protected interest because the litigation directly implicated their sovereign rights). These cases share a common feature absent here: each involved a defined, legally supported claim to specific property or rights, not speculation about a possible interest. Accepting Meta's reading of these cases would mean that any purported ownership claim, no matter how speculative, could halt patent litigation.

In sum, because Meta fails to show that BlueRadios has any interest in the Asserted Patents, it cannot establish that any such interest would be impaired under Rule 19(a)(1)(B)(i), and its reliance on inapposite matters does not cure that deficiency.

### iii. *Meta Is Not Subject to a Substantial Risk of Incurring Double or Inconsistent Obligations*

Meta's argument that proceeding without BlueRadios creates a "substantial risk" of inconsistent obligations is misplaced. Rule 19(a)(1)(B)(ii) requires a concrete and practical risk that a party would be unable to comply with one court's order without breaching another, not merely the possibility of inconsistent outcomes or parallel litigation. *Delgado v. Plaza Las*

13

*Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) ("'Inconsistent obligations' are not ... the same as inconsistent adjudications or results") (internal citation omitted). Courts consistently distinguish between inconsistent obligations and inconsistent adjudications, holding that only the former implicates Rule 19. *See Bacardi Int'l Ltd. v. V. Suárez & Co.*, 719 F.3d 1, 11 (1st Cir. 2013). Moreover, a party lacking the legal right to bring an infringement action cannot create a substantial risk of inconsistent obligations for a defendant. *Rawlings v. Nat'l Molasses Co.*, 394 F.2d 645, 647–48 (9th Cir. 1968) (absence of former joint patent owner did not expose defendant to inconsistent obligations where that party lacked the capacity to sue for infringement).

No such showing can be made on this record. Here, any hypothetical risk depends on a chain of unresolved contingencies, including whether BlueRadios could establish co-ownership of the Asserted Patents, obtain the legal right to sue, and prevail on any infringement claim. Such speculative possibilities fall short of the concrete, non-speculative risk required under Rule 19(a)(1)(B)(ii). Accordingly, Meta cannot demonstrate that it faces a substantial risk of double or inconsistent obligations.

### 2. Meta's Involuntary Joinder Argument Fails Absent Proof of Co-Ownership

Meta's reliance on the rule against involuntary joinder is misplaced. The rule presupposes that BlueRadios is a co-owner of the Asserted Patents and none of the cases cited by Meta support dismissal based on alleged ownership; instead, each involves established or adjudicated co-ownership. In *Ethicon, Inc. v. U.S. Surgical Corp.*, dismissal followed only after the court determined, based on corroborated evidence, that an omitted inventor was in fact a joint inventor and thus a co-owner; in *STC.UNM v. Intel Corp.*, 754 F.3d 940 (Fed. Cir. 2014), the absent party's co-ownership derived from documented inventorship and assignment rights reflected in the patent record; in *DDB Technologies, L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284 (Fed. Cir.

14

2008), ownership turned on an employment agreement that automatically assigned rights in future inventions; in *Israel Bio–Eng'g Project v. Amgen Inc.*, the court resolved ownership on summary judgment based on contractual assignments and the timing of invention; and in *Schering Corp. v. Roussel–UCLAF SA*, 104 F.3d 341 (Fed. Cir. 1997), co-ownership was undisputed. The involuntary joinder doctrine has no application unless and until co-ownership is established.

### 3.    Rule 19(b) Weighs Against Dismissal

Even if BlueRadios were a required party under Rule 19(a), the Court must determine whether the action should proceed "in equity and good conscience." Fed. R. Civ. P. 19(b). Rule 19(b) considers four factors in determining whether to proceed, including the extent of prejudice to the absent party, the ability to lessen or avoid such prejudice, the adequacy of a judgment rendered in the party's absence, and whether the plaintiff would have an adequate remedy if the action were dismissed. The party seeking dismissal bears the burden of persuasion on these inquiries. *Amgen, Inc. v. Ariad Pharm., Inc.*, 513 F. Supp. 2d 34 (D. Del. 2007) (denying dismissal despite absent patent owners).

First, Meta's prejudice argument is premised on a mischaracterization of the record. Doc. No. 50 at 16 (claiming that "Plaintiff and BlueRadios are currently embroiled in litigation against each other"). In fact, BlueRadios and Solos are not currently engaged in any litigation, and no inventorship or ownership dispute is pending between them. Meta's assertions are also internally inconsistent, simultaneously claiming that such a dispute exists while also suggesting a dispute over ownership "seems likely." *Id*.

In support of its argument, Meta relies on several inapposite cases, all of which involve concrete, legally established interests including: *Pimentel*, 553 U.S. at 867–68 (sovereign immunity and statutory ownership claim); *STC.UNM*, 754 F.3d at 942–43 (action barred where co-owner refused to join); *Northern Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1279–81 (10th

Cir. 2012) (existing property interest coupled with sovereign immunity); *Delano Farms Co. v. Cal. Table Grape Comm'n*, 623 F. Supp. 2d 1144, 1170 (E.D. Cal. 2009) (sovereign owned the patents at issue). Here, BlueRadios has not established any ownership interest in the Asserted Patents nor initiated any proceeding to adjudicate such a claim. *Western Auto Supply Co. v. Noblex Advertising, Inc.*, 173 F.R.D. 338, 341–42 (D.P.R. 1997) (finding no prejudice where any risk of future dispute was "abstract"). Absent a concrete ownership interest, Meta cannot demonstrate that any judgment in this action would impair BlueRadios' rights or result in legally cognizable prejudice.

Second, Meta's contention that any prejudice cannot be mitigated ignores both the record and controlling authority. Meta argues that BlueRadios must be present to "defend its patents," despite the absence of any adjudicated ownership interest or proceeding regarding ownership of the Asserted Patents. Its continued reliance on *Pimentel* underscores the weakness of its position. As referenced above, *Pimentel* turned on the combination of foreign sovereign immunity and claims to specifically identified assets subject to a statutory forfeiture regime which were also pending in another proceeding. 553 U.S. 851, 867–70 (2008). The court required dismissal because there were no alternative means to accord relief or mitigate prejudice in the sovereigns' absence. By contrast, in patent cases, courts have recognized that any potential prejudice can be mitigated through tailored relief, even absent a confirmed co-owner. For instance, in *Windsurfing International, Inc. v. Ostermann*, the court held that any potential prejudice to an absent co-owner could be addressed through tailored relief, including holding damages in trust and providing notice to the absent party. 100 F.R.D. 82, 83–84 (S.D.N.Y. 1983) (finding that specific relief sufficiently mitigates prejudice). Thus, even assuming some risk of prejudice, the Court can fashion relief to mitigate it.

16

Third, the adequacy of a judgment weighs strongly in Solos' favor. This Court can adjudicate Solos' infringement claims and Meta's defenses, and award complete relief, without BlueRadios' participation. There is no basis to conclude that a judgment in this matter would be anything but adequate. *See Windsurfing*, 100 F.R.D. at 84 n.4 (judgment adequate despite absence of alleged co-owner). Meta nevertheless fails to meaningfully address this prong and instead conflates the adequacy of a potential judgment with the purported prejudicial effect of a judgment.

Fourth, the absence of an adequate alternative remedy weighs strongly against dismissal. Meta argues that Solos can resolve the ownership issue and then refile, but that assertion is both speculative and unsupported by the record. Unlike *Lee v. Anthony Lawrence Collection, L.L.C.*, on which Meta relies, an active ownership dispute over the trademark at issue was underway. 47 F.4th 262, 270 (5th Cir. 2022) (plaintiffs could reassert claims after establishing rights to the mark). There is no pending proceeding here that will resolve BlueRadios' alleged interest in the Asserted Patents. The Colorado litigation concerns different patents and the malpractice dispute on appeal does not adjudicate ownership of the Asserted Patents. *See Windsurfing*, 100 F.R.D. at 84 (declining to stay patent dispute where delay would effectively deprive plaintiff of an adequate remedy given the patent's defined term). Like *Windsurfing*, dismissal here would not preserve an adequate alternative remedy but instead would deprive Solos of a meaningful opportunity to enforce its patents.

Accordingly, the four Rule 19(b) factors weigh against dismissal, and Meta has failed to meet its burden to demonstrate that this action cannot proceed in BlueRadios' absence.

### B.  A Stay Is Unwarranted

The Court should decline Meta's alternative request for a stay. Although Meta invokes the traditional four-factor test applicable to stays pending appeal, courts in this District typically

evaluate pretrial stays under a three-factor framework[4] focused on simplification of issues, prejudice to the non-moving party, and the stage of the litigation. Applying the four-factor test Meta puts forth, it must establish (1) a likelihood of success on the merits; (2) irreparable injury absent a stay; (3) that a stay will not substantially injure other parties; and (4) that the public interest favors a stay. *Somerville Pub. Schools v. McMahon*, 139 F.4th 63 (1st Cir. 2025) (denying stay after applying the four-factor test and finding no likelihood of success on the merits); *Amersham Int'l*, 108 F.R.D. at 72 n.3 (denying stay due to the risk of prejudice from protracted delay). Under either standard, Meta's request fails.

First, Meta cannot show that BlueRadios is likely to succeed on the merits regarding co-ownership of the Asserted Patents. As explained above, its arguments are insufficient as a matter of law and premised on mischaracterizations of the record. Doc. No. 50 at 16 (claiming that "Plaintiff and BlueRadios are currently embroiled in litigation against each other"). In making this claim, Meta relies on inapposite authority, including *Televisa, S.A. de C.V. v. Koch Lorber Films*, 382 F. Supp. 2d 631 (S.D.N.Y. 2005), where a parallel proceeding was actively addressing the ownership dispute, *Pimentel*, where absent sovereigns asserted direct, legally cognizable ownership claims to specific assets, and *Names for Dames, Inc. v. Gimbel*, 1989 WL 82417 (S.D.N.Y. July 19, 1989) where joinder was denied because the absent party had no independent interest. By contrast, Meta claims, without support, that "it is likely BlueRadios will be adjudicated to be a co-owner of the Asserted Patents." *See* Doc. No. 50 at 19. Yet, there is no proceeding

---

[4] Courts in this District typically evaluate stays under a three-factor framework, considering (1) whether a stay would simplify the issues, (2) whether a stay would unduly prejudice the non-moving party, and (3) the stage of the litigation. *See Chr. Hansen HMO GmbH v. Glycosyn LLC*, 662 F. Supp. 3d 50, 53 (D. Mass. 2023). Under this framework, Meta's request fails for reasons similar to those under the four-part test it invokes. A stay would not simplify the issues, as Meta's ownership theory does not overlap with infringement, validity, or claim construction. An open-ended stay would also prejudice Solos, as delayed enforcement would cause harm and could extend for years. *See A.L.M. Holding Co. v. All States Materials Grp. Inc.*, 784 F. Supp. 3d 417, 421 n.4 (D. Mass. 2025). Finally, although this case is at an early stage, there is no other proceeding that would meaningfully simplify the issues. *See Koninklijke Philips N.V. v. Amerlux, LLC*, 167 F. Supp. 3d 270, 274–75 (D. Mass. 2016).

18

pending in which BlueRadios could succeed on the merits, and, as discussed above, BlueRadios cannot obtain any cognizable interest under Federal Circuit precedent.

Second, Meta fails to show that it will be irreparably harmed absent a stay. Its purported hardship—routine time and costs—is not considered irreparable. *In re JJ. of S. Ct. of Puerto Rico*, 695 F.2d 17, 20 (1st Cir. 1982) ("even substantial and unrecoupable" litigation costs do not amount to irreparable injury) (internal citation omitted). Meta's reliance, moreover, on *Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*, 633 F. Supp. 3d 385, 392 (D. Mass. 2022) underscores the weakness of its position: the stay in *Blue Cross* was predicated on a pending parallel action involving the same underlying factual dispute. Likewise, *Hilton v. Kerry*, No. 13-11710-TSH, 2013 U.S. Dist. LEXIS 169661, at *2 (D. Mass. Dec. 2, 2013), involved a demonstrated risk due to imminent self-harm, and *Automated Transactions, LLC v. Bath Sav. Inst.*, No. 2:12-cv-393-JAW, 2013 U.S. Dist. LEXIS 48964, at *1 (D. Me. Mar. 14, 2013), involved multiple actions brought by the same plaintiff concerning the same patents. Meta provides no similar circumstances and fails to show any potential harm, let alone irreparable harm.

Third, the issuance of a stay would substantially injure Solos. Courts recognize that patent owners suffer significant harm when enforcement is delayed, particularly where a stay is based on speculation. *See A.L.M. Holding Co. v. All States Materials Grp. Inc.*, 784 F. Supp. 3d 417, 421 n.4 (D. Mass. 2025) (undue prejudice where the likely length of the stay was "potentially years"). Here, Solos would suffer the same undue prejudice as *A.L.M.* because a stay would delay enforcement for an indeterminate period, allowing continued infringement without any corresponding benefit to resolving such issues.

Fourth, the public interest does not favor a stay. Meta argues that a stay would conserve resources, protect absent parties' rights, and promote a single, final determination. But those

19

interests are not served here. No current or prior litigation involves ownership of the Asserted

Patents. As a result, halting this case would waste judicial resources and fail to produce any final

determination on ownership. *See A.L.M.*, 784 F. Supp. 3d at 421 n.3 (public policy favors the

expeditious resolution of patent cases because they are time-limited assets). Accordingly, Meta's

alternative request for a stay should be denied.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff Solos Technology Limited respectfully requests that

the Court deny Meta Platforms, Inc. and Meta Platforms Technologies, LLC's Motion to Dismiss

or, in the Alternative, Stay the Proceedings.

Respectfully submitted,

/s/ Jameson J. Pasek
Jameson J. Pasek, Esq. (BBO# 692924)
CALDWELL
200 Clarendon Street, 59th Floor
Boston, MA 02116
jameson@caldwelllaw.com
(857) 990-4914

Dated: April 22, 2026                    *Counsel for Plaintiff Solos Technology Limited*

20

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the Court's CM/ECF system on April 22, 2026, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Jameson J. Pasek
Jameson J. Pasek, Esq. (BBO# 692924)