UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SOLOS TECHNOLOGY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.; META PLATFORMS TECHNOLOGIES, LLC; OAKLEY, INC.; LUXOTTICA OF AMERICA, INC.; and ESSILORLUXOTTICA USA, INC.,<br><br>Defendants. | * * * * * * * * * * * * * * | Civil Action No. 26-cv-10304-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

In this action, Plaintiff Solos Technology Limited ("Solos"), a technology company that designs and sells smart glasses, alleges that Defendants Meta Platforms, Inc. and Meta Platforms Technologies, LLC (collectively, "Meta"), along with Defendants Oakley, Inc. ("Oakley"), Luxottica of America, Inc., and EssilorLuxottica USA, Inc. (collectively, the "Luxottica Defendants," and together with Meta, "Defendants"), have infringed five patents related to smart glasses technology by making and selling Defendants' jointly developed "Meta Ray-Ban" and "Oakley Meta" product lines. [ECF No. 1 ("Compl.") ¶¶ 1–16]. Solos claims infringement of United States Patent Nos. 10,306,389 ("the '389 Patent"), 10,651,866 ("the '866 Patent"), 11,082,055 ("the '055 Patent"), 11,871,174 ("the '174 Patent"), and 12,216,339 ("the '339 Patent") (collectively, the "Asserted Patents"). [Id. ¶ 5].

Currently before the Court are Meta's motion to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party, or in the alternative to stay the

proceedings, [ECF No. 49], and the Luxottica Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, [ECF No. 44]. For the following reasons, both motions are **DENIED**.

# I. BACKGROUND

## A. Factual Background

The Court recounts the facts relevant to the Luxottica Defendants' Rule 12(b)(6) motion by "accept[ing] as true all well-pleaded facts alleged in the complaint and draw[ing] all reasonable inferences therefrom in the pleader's favor," Lawrence Gen. Hosp. v. Cont'l Cas. Co., 90 F.4th 593, 598 (1st Cir. 2024) (quoting Lanza v. Fin. Indus. Regul. Auth., 953 F.3d 159, 162 (1st Cir. 2020)), and to Meta's Rule 12(b)(7) motion by "accept[ing] the allegations contained in the plaintiff's complaint as true," Romero v. Clean Harbors Surface Rentals USA, Inc., 368 F. Supp. 3d 152, 158 (D. Mass. 2019) (quoting J & J Sports Prods. Inc. v. Cela, 139 F. Supp. 3d 495, 499 (D. Mass. 2015)), and also considering "other relevant extra-pleading evidence, such as declarations or affidavits," id. (citing J & J Sports Prods., 139 F. Supp. 3d at 499).

### 1. Solos's Claims

Solos is a technology company based in Cambridge, Massachusetts which has "continuously researched, designed, engineered, and commercialized head-worn wearable systems for more than a decade." [Compl. ¶¶ 3, 17]. As relevant to this case, Solos designs, manufactures, and sells "smart glasses," which are head-worn computer systems that "integrate computation, sensing, and display directly into the user's natural field of view" through a device that appears similar to an ordinary pair of glasses. [Id. ¶¶ 3, 115].

Between 2015 and 2019, Solos and its corporate predecessor, Kopin Corporation ("Kopin"), "filed a series of patent applications" that eventually led to the issuance of the five

Asserted Patents between 2019 and 2025. [Compl. ¶¶ 50, 57]; [ECF No. 1-1 at 2]; [ECF No. 1-2 at 2]; [ECF No. 1-3 at 2]; [ECF No. 1-4 at 2]; [ECF No. 1-5 at 2]. Solos spun off from Kopin in or around 2019, and it now owns all five Asserted Patents. [Compl. ¶ 61].

The Asserted Patents claim various "architectures for directional audio projection, fractional delay and oversampled sensor beamforming, personalized audio rendering, and multimodal wearable assistance systems," [Compl. ¶ 57], which Solos alleges have become "defining features of next-generation smart eyewear," [id. ¶ 59]. The '389 Patent, which issued first, claims a "head wearable acoustic system with noise canceling microphone geometry." [ECF No. 1-1 at 2]. The '866 and '055 Patents, which issued second and third, respectively, each claim systems and methods of "beamforming using fractional time delay in digitally oversampled sensor systems." [ECF No. 1-2 at 2]; [ECF No. 1-3 at 2]. The '174 Patent, which issued fourth, claims systems, apparatuses, and methods for "personalized directional audio for head-worn audio projection." [ECF No. 1-4 at 2]. The '339 Patent, which issued last, claims systems, apparatuses, and methods for "provid[ing] assistance to a user through an eyewear device" by combining data from both internal and external sensors. [ECF No. 1-5 at 2].

Between 2015 and 2019, the Luxottica Defendants' personnel had substantial exposure to Solos's smart glasses technology through interactions with Kopin/Solos personnel. In 2015, 2016, 2017, and 2018, various Luxottica executives attended industry conferences where they met with high-level Kopin/Solos personnel and tested Solos's smart glasses. [Compl. ¶¶ 65–66, 73–74]. Ernesto Martinez ("Martinez"), then the head of wearable product development at Kopin, [id. ¶ 53], met several times throughout this period with Luxottica's and Oakley's technology and product executives at their offices in San Francisco and Italy, as well as over the phone, to discuss potential collaborations, [id. ¶¶ 68–72]. Through these interactions, Martinez

provided the Luxottica Defendants' technological personnel with sample Solos products and helped them gain "familiarity with Solos'[s] integrated eyewear architecture and open-ear audio approach, including core design principles." [Id. ¶ 68]; see [id. ¶¶ 67, 69–75].

Meta personnel have likewise been exposed to Solos's technology and intellectual property. In 2021, an MIT graduate student who later became a product manager at Meta published a research study that analyzed Solos's smart glasses technology and architecture and acknowledged the portfolio of patents protecting it. [Compl. ¶¶ 78–81]. In 2022, Meta personnel "engaged Martinez in discussions" regarding potential employment at Meta, during which they "asked Martinez questions about Solos'[s] technology, including technology that Solos publicly identifies on its website along with the patents that cover it." [Id. ¶¶ 84–85, 88]. In June 2024, a Technical Program Manager at Meta informed Solos's co-founder that "an internal meeting at Meta had taken place in which Solos'[s] smart-glasses were passed around the meeting room and examined," [id. ¶¶ 92–93], and also that Meta had "awareness of Solos'[s] engineering sophistication," [id. ¶ 92].

The Luxottica Defendants and Meta partnered in or around 2019 to develop a line of "Ray-Ban-branded smart glasses," [Compl. ¶ 76], and then commercialized their jointly developed products in or around 2021, [id. ¶ 96]. Based on Solos's analysis of these products and publicly available information about them, it alleges that these products "incorporate[] multiple audio, processing, and sensor components that function in a manner consistent with the limitations of the Asserted Patents," including possessing "microphone structures used for directional and noise-reducing capture, digital processing features used for combining and timing signals, and audio-output elements integrated into the eyewear temples." [Id. ¶ 109]; see [ECF No. 1-7]; [ECF No. 1-8]; [ECF No. 1-9]; [ECF No. 1-10]; [ECF No. 1-11] (Solos's claim charts).

Meta directly sells these products on its website, [id. ¶ 116], and the Luxottica Defendants sell them through their Ray-Ban and Oakley retail networks, [id. ¶ 118].

2. The BlueRadios Dispute

BlueRadios, Inc. ("BlueRadios") is a "Colorado-based company that focuses on wireless technology like Bluetooth." BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C., 166 F.4th 197, 205 (1st Cir. 2026). In 2006, BlueRadios and Kopin began a collaboration "to develop a unique wireless headset called 'Golden-i.'" Id. In 2007, the two companies "entered a contract detailing their rights and obligations for the Golden-i project." Id. As relevant here, the contract provided, "Any intellectual property rights developed by BlueRadios in the course of this development contract . . . will be owned jointly with no obligation of financial accounting to the other party . . . ." [ECF No. 100-1 at 6]. The resulting collaboration lasted approximately two years and resulted in several technological developments, including some embodied in contemporaneous patent applications. BlueRadios, 166 F.4th at 207.

The relationship between the two companies broke down in or around 2009, BlueRadios, 166 F.4th at 208, and BlueRadios later filed a lawsuit in the United States District Court for the District of Colorado accusing Kopin of improperly removing BlueRadios from patent applications for jointly developed technologies in violation of the contract, and of misappropriating BlueRadios's trade secrets. See Complaint and Jury Demand ¶¶ 24–34, 45, 61–81, BlueRadios, Inc. v. Kopin Corp., Inc, No. 16-cv-02052 (D. Colo. Aug. 12, 2016), ECF No. 1. That litigation resulted in a jury verdict awarding BlueRadios several million dollars and a final judgment ordering that several patents be corrected to reflect BlueRadios as a co-owner. See Final Judgment, BlueRadios, Inc. v. Kopin Corp., Inc, No. 16-cv-02052 (D. Colo. Sep. 5, 2025), ECF No. 786. BlueRadios has also sued the patent counsel who prosecuted the Golden-i

patents for legal malpractice, among other misconduct, in a case which remains pending in this district. See Complaint and Jury Demand, BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C., 21-cv-10488 (D. Mass. Mar. 22, 2021), ECF No. 1. Neither lawsuit has involved the Asserted Patents.

The parties dispute the extent of the relationship, if any, between the Golden-i technology developed under the collaboration with BlueRadios and the smart glasses technology underlying the Asserted Patents. Shortly after Solos filed this case, BlueRadios sent Meta a letter asserting that "[t]he genesis of the Solos™ IP came from the Golden-i project co-developed by BlueRadios and Kopin," and that "BlueRadios, Inc. believes they are the co-owners of the 5 patents specified in the complaint filed by Solos Technology, Limited on 01/23/26." [ECF No. 51-1 at 2–4]. Martinez contests these assertions in a declaration in which he states that the Golden-i project was a "separate initiative focused on different wearable computing concepts and use cases" that predated the development of the Solos smart glasses technology at issue by several years. [ECF No. 100-2 ¶ 9]. Martinez further attests that the two projects were "not part of a continuous development effort," [id. ¶ 11], and that "none of the technology, system architecture, or development work associated with Golden-i was used in the development of the Solos smart glasses platform," [id. ¶ 12]. The earliest application date for any of the Asserted Patents is October 18, 2015, approximately six years after the BlueRadios collaboration ended, [ECF No. 1-1 at 2], and the earliest priority date associated with any of the Asserted Patents is March 13, 2013, approximately four years after the collaboration ended, [id. at 3].

### B. Procedural Background

Solos filed suit on January 23, 2026, asserting claims against all Defendants for direct, induced, and contributory infringement of each Asserted Patent. [Compl. ¶¶ 122–76]. After

Defendants appeared, Solos filed a motion to disqualify the Luxottica Defendants' counsel from Morgan Lewis & Bockius LLP, [ECF No. 18], which the Court later denied, [ECF No. 68]. On March 25, 2026, while the motion to disqualify remained pending, both sets of Defendants filed their respective motions to dismiss, with the Luxottica Defendants seeking dismissal under Rule 12(b)(6), [ECF No. 44], and Meta seeking dismissal under Rule 12(b)(7), [ECF No. 49]. Solos filed an opposition to the Luxottica Defendants' motion on April 8, 2026, [ECF No. 71], and an opposition to Meta's motion on April 22, 2026, [ECF No. 100]. The Luxottica Defendants filed a reply brief on April 15, 2026, [ECF No. 89], and Meta filed its reply brief on April 30, 2026, [ECF No. 108]. While briefing on Defendants' motion to dismiss was underway, a third-party (unrelated to BlueRadios) who claimed ownership rights in the Asserted Patents sought leave to intervene under Federal Rule of Civil Procedure 24, [ECF No. 58], which the Court denied, [ECF No. 90].

## II. META'S MOTION TO DISMISS OR STAY

### A. Legal Standard

#### 1. Required Joinder

Under Federal Rule of Civil Procedure 12(b)(7), a party may move to dismiss a claim for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 "instructs courts to engage in a two-part analysis" to determine whether a third party must be joined. Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 25 (1st Cir. 2010).

At the first step, the court determines whether the absent party is a "required" party under Rule 19(a), which occurs, as relevant here, where the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence

may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1).

If the absent party is "required," and court-ordered joinder is not feasible, the court must then determine at the second step whether the absent party is "indispensable" under Rule 19(b). "The 'critical question' in the [indispensability] context is 'whether in equity and good conscience the action may proceed in [the necessary party]'s absence.'" Jimenez, 597 F.3d at 25 (second alteration in original) (quoting B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc., 516 F.3d 18, 23 (1st Cir. 2008)). If the absent party cannot be joined and is "indispensable" under Rule 19(b), the court must dismiss the action. Fed. R. Civ. P. 19(b).

"The party raising a Rule 19 defense has the burden 'to show that the absent party is needed for a just adjudication' of the case." Duggan v. Martorello, 596 F. Supp. 3d 195, 203 (D. Mass. 2022) (quoting Romero, 368 F. Supp. 3d at 157). In ruling on a Rule 12(b)(7) motion, the Court must "accept the allegations contained in the plaintiff's complaint as true," Romero, 368 F. Supp. 3d at 158 (quoting J & J Sports Prods., 139 F. Supp. 3d at 499), but may also "consider other relevant extra-pleading evidence, such as declarations or affidavits," id.

2. Stay of Proceedings

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases," including the authority to stay proceedings. Dietz v. Bouldin, 579 U.S. 40, 47 (2016). "In patent cases, courts typically consider three factors when deciding if a stay is appropriate," including "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay would simplify the issues in question and trial of the case; and (3) the stage of the litigation." A.L.M. Holding Co. v. All States Materials Grp. Inc., 784 F. Supp. 3d 417, 420 (D.

Mass. 2025) (quoting In re Body Sci. LLC Pat. Litig., No. 12-md-02375, 2012 WL 5449667, at *3 (D. Mass. Nov. 2, 2012)). The appropriateness of a stay "is based on the totality of the circumstances and is 'largely case specific.'" Id. (quoting Chr. Hansen HMO GmbH v. Glycosyn LLC, 662 F. Supp. 3d 50, 53 (D. Mass. 2023)). "The party moving for the stay bears the burden of proving that a stay is appropriate." Thakkar v. United States, 389 F. Supp. 3d 160, 171 (D. Mass. 2019) (citing Landis v. N. Am. Co., 299 U.S. 248, 255 (1936)).

**B. Discussion**

Meta argues that this action should be dismissed because BlueRadios's claimed ownership interest in the Asserted Patents makes it both a "required" and an "indispensable" party under Rule 19 who cannot be involuntarily joined. [ECF No. 50 at 15–23]. Meta cites cases holding that patent suits generally cannot proceed without all co-owners present as plaintiffs, [id. at 15–16], and cases holding that an absent party's claimed interest in the outcome of a lawsuit is sufficient under Rule 19(a) if it is "not frivolous," [id. at 16]. Thus, Meta reasons, a third party's "non-frivolous claim that it is a co-owner of the Asserted Patents . . . is all that is needed to be a required party." [Id.]. According to Meta, BlueRadios's contention that the Asserted Patents derive from technology developed under the 2007 Golden-i contract establishes such a "non-frivolous claim." [Id. at 16–18].

Solos disagrees with the standard Meta sets out and argues that the rule requiring joinder of patent co-owners only applies to third parties with actual co-ownership rights over the patents, not to any third party with a "non-frivolous claim" to such rights. [ECF No. 100 at 14, 18–19]. Under this standard, Solos contends that Meta has failed to show that BlueRadios is a co-owner of any of the Asserted Patents, either through "a contractual provision that effectuates a present transfer of title," [id. at 14–16], or through "joint development," [id. at 16].

Here, the parties' arguments fail to differentiate between two distinct legal routes by which a court may require a non-party's presence in a patent lawsuit. These two routes arise from different sources, advance different policies, and impose different substantive requirements, such that their distinctions warrant a brief discussion.

First, there is the bright line rule that requires joinder of all patent co-owners ("the co-owner joinder rule"). Under the co-owner joinder rule, a person must be joined as a plaintiff if, but only if, he is a co-owner of a patent-in-suit. STC.UNM v. Intel Corp., 754 F.3d 940, 945–46 (Fed. Cir. 2014). Contrary to Meta's characterization, this rule is not a Rule 19 doctrine but a "matter of substantive patent law" arising from the "substantive right" of a patent co-owner "to impede an infringement suit brought by another co-owner." Id. Because only actual co-owners hold this "substantive right" under the Patent Act, id., the co-owner joinder rule only protects third parties with actual, present co-ownership interests—not those with mere potential claims to co-ownership. See Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1468 (Fed. Cir. 1998) (quoting 35 U.S.C. § 262) (explaining that co-owner joinder rule arises from rights held by "joint owners" under section 262 of the Patent Act).

Second, a court may require a non-party's presence pursuant to Rule 19's "pragmatic, practical" test for required joinder. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden, 11 F.4th 12, 17 (1st Cir. 2021). The "non-frivolous claim" principle Meta invokes is a standard some courts have applied when assessing whether a non-party possesses a cognizable interest in the outcome of a lawsuit, which is a requirement under certain formulations of this test. See Lee v. Anthony Lawrence Collection, L.L.C., 47 F.4th 262, 266 (5th Cir. 2022); White v. Univ. of Cal., 765 F.3d 1010, 1027 (9th Cir. 2014). Rule 19, however, requires courts to consider more than just the existence of such an interest, including, most notably, whether the

non-party is "so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a).

Meta's proposed standard fails because it attempts to fuse these two distinct paths together, allowing Meta to enjoy the benefits of both while suffering the drawbacks of neither. Under the law as properly construed, Meta may not require a non-party's participation simply by showing that the non-party has a "non-frivolous claim that it is a co-owner of the Asserted Patents." [ECF No. 50 at 16]. Rather, it must either (1) show that BlueRadios is an actual co-owner subject to the bright-line co-owner joinder rule, or (2) show that BlueRadios has a non-frivolous claim to an interest and that the interest may practically be impaired under the pragmatic Rule 19 test. The Court will separately analyze both the co-owner joinder rule and Rule 19 to determine whether either rule requires BlueRadios's participation in this lawsuit.

1. Co-Owner Joinder Rule

On the current record, the co-owner joinder rule does not apply because the Court cannot conclude that BlueRadios is a co-owner of any of the Asserted Patents. Meta's co-ownership argument primarily relies on BlueRadios's rights under the 2007 Golden-i contract with Solos's predecessor in which the predecessor agreed that "[a]ny intellectual property rights developed by BlueRadios in the course of this development contract . . . will be owned jointly with no obligation of financial accounting to the other party." [ECF No. 100-1 at 6]. Meta asserts that this agreement granted BlueRadios joint ownership of the Asserted Patents. This argument fails for several reasons.

First, the language of the Golden-i contract does not effectuate a present assignment of ownership rights to BlueRadios. For a contract to create present ownership rights in a patent, the

contract language must "automatically and presently assign[] legal title" to the recipient. Omni MedSci, Inc. v. Apple Inc., 7 F.4th 1148, 1151 (Fed. Cir. 2021). Such an assignment typically requires "present tense words of execution," while "passive verbs in indefinite or future tense" generally signify "a future agreement to assign rather than a present assignment." Id. at 1152–53. A future agreement of this sort may create a contractual right to an assignment, but it does not by itself operate to transfer any rights in a patent. Id.

Here, the Golden-i contract provision providing that intellectual property rights "will be owned jointly," [ECF No. 100-1 at 6], is insufficient to effectuate a present assignment and therefore confers no ownership rights upon BlueRadios. In Omni, the Federal Circuit reached the same conclusion in interpreting a substantially similar provision that stated that certain inventions "shall be the property" of an employer. 7 F.4th at 1153. Here, as in Omni, the contract language consists of "passive verbs in indefinite or future tense" and lacks "present tense words of execution." Id. Accordingly, regardless of whether the technology at issue falls within the scope of the Golden-i contract, the agreement's language does not create any present co-ownership rights for BlueRadios in the Asserted Patents.

Second, Meta has not adequately shown that the Asserted Patents fall within the scope of the Golden-i contract's intellectual property provision. The agreement covers only "intellectual property rights developed by BlueRadios in the course of this development contract." [ECF No. 100-1 at 6]. As an initial matter, it is not clear that this language was intended to cover post-collaboration developments that merely "incorporate Golden-i technology developed by BlueRadios," [ECF No. 50 at 17], as Meta contends the Asserted Patents do. In any event, to support its claim of direct lineage between the Golden-i project and the Asserted Patents, Meta offers only a general similarity in the areas of technology involved, along with BlueRadios's

founder's claim that it is a co-owner. [Id. at 17–20]. Given the countervailing evidence—including Solos's sworn declaration disclaiming any relationship between the two technologies, [ECF No. 100-2 ¶¶ 8–15], and the six-year time gap between the Golden-i project and the first application for an Asserted Patent, [ECF No. 1-1 at 2]—the Court cannot conclude on this record that the Asserted Patents constitute "intellectual property rights developed by BlueRadios in the course of th[e] [Golden-i] development contract." [ECF No. 100-1 at 6].[1]

2. Fed. R. Civ. P. 19

The Court likewise finds that BlueRadios is not a "required party" under Rule 19. Even assuming arguendo that (1) Meta's "non-frivolous claim" standard is the applicable test for determining the existence of an "interest," and (2) that BlueRadios's claimed rights to the Asserted Patents suffice to demonstrate an "interest relating to the subject of the action," Fed. R. Civ. P. 19(a)(1)(B), BlueRadios is nonetheless not a "required party" because Meta has not shown that BlueRadios "is so situated that disposing of the action in [its] absence may . . . as a practical matter impair or impede [its] ability to protect the interest," as required by Rule 19, Fed. R. Civ. P. 19(a)(1)(B)(i); see Maple St. Holdings, LLC v. Arch Specialty Ins. Co., 830 F. Supp. 3d 104, 118 (D. Mass. 2026).[2]

---

[1] For the same reason, Meta has not shown that BlueRadios gained co-ownership rights in the Asserted Patents through joint inventorship under 35 U.S.C. § 116. "Patent issuance creates a presumption that the named inventors are the true and only inventors." Ethicon, 135 F.3d at 1460. Given Meta's lack of specificity and the countervailing evidence discussed above, Meta has not presented evidence sufficient to overcome this presumption and show that BlueRadios "conceived . . . the subject matter of [one or more of] the claims at issue" in the Asserted Patents. Id.

[2] Meta has disclaimed any arguments under Rule 19(a)'s other prongs, which apply where "the court cannot accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), or where a non-party's absence may subject an existing party to "inconsistent obligations," id. at

Meta's only claim of prejudice is that BlueRadios, as a potential ownership claimant over the Asserted Patents, could suffer prejudice if Defendants prevail in their invalidity arguments without BlueRadios's presence in the litigation. [ECF No. 50 at 21]. Solos, however, has the same interest—indeed, a stronger interest—in maintaining the validity of the Asserted Patents. "If an absent party's interests are the same as those of an existing party, and the existing party will adequately protect those interests, this bears on whether the absent party's interest will be impaired by its absence from the litigation." Tell v. Trs. of Dartmouth Coll., 145 F.3d 417, 419 (1st Cir. 1998). Meta identifies no divergence in the two companies' interests with respect to the validity or construction of the Asserted Patents and has therefore not shown that Solos will inadequately represent BlueRadios's interests in this litigation. Id.; cf. A123 Sys., Inc. v. Hydro-Quebec, 626 F.3d 1213, 1221 (Fed. Cir. 2010) (finding patent licensee inadequate to protect absent patentee's interests in litigation because the patentee's and licensee's desired claim constructions may diverge).

More fundamentally, a non-party's "decision to forgo intervention indicates that [it] does not deem its own interests substantially threatened by the litigation," and "the court should not second-guess this determination, at least absent special circumstances." United States v. San Juan Bay Marina, 239 F.3d 400, 407 (1st Cir. 2001). As its lawsuits against Kopin and its former patent counsel demonstrate, BlueRadios is an experienced and sophisticated litigant that is capable of asserting its interests in court when it believes those interests are threatened. See Complaint and Jury Demand, BlueRadios, Inc. v. Kopin Corp., Inc, No. 16-cv-02052, ECF No.

---

19(a)(1)(B)(ii). See [ECF No. 108 at 7]. Accordingly, the Court analyzes only Rule 19(a)'s "impair or impede" provision here.

1; Complaint and Jury Demand, BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C., No. 21-cv-10488, ECF No. 1. BlueRadios's letter to Meta shows that BlueRadios is aware of this litigation, that it is familiar with the technology at issue, and that it believes it is a co-owner of the Asserted Patents. See generally [ECF No. 51-1]. Nonetheless, BlueRadios has not sought to intervene or expressed reservations about Solos's ability or incentive to defend the Asserted Patents' validity. The Court therefore declines to override BlueRadios's decision to remain a non-party to this case.

Accordingly, the Court finds that BlueRadios is not a necessary party to this litigation and will deny Meta's motion to dismiss under Rule 12(b)(7).

3. Stay of Proceedings

Because the Court denies Meta's request to dismiss the case under Rule 12(b)(7), it considers Meta's alternative request to stay the case. [ECF No. 50 at 23–25].

On the circumstances presented, the Court does not find a stay appropriate. At the outset, Meta's stay request is too open-ended. It requests a stay pending a separate adjudication of the ownership of the Asserted Patents, [ECF No. 50 at 24], but no such adjudication is ongoing or, by any indication, impending. The only ongoing case related in any way to this dispute is BlueRadios's malpractice lawsuit against the law firm that prosecuted certain patents related to the Golden-i project. See Amended Complaint and Jury Demand, BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C., No. 21-cv-10488, ECF No. 47. That case does not involve any of the Asserted Patents and will not result in an adjudication of their ownership. Id.

The relevant factors, which include "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay would simplify the issues in question and trial of the case; and (3) the stage of the litigation," do not support

granting a stay, particularly one so open-ended. A.L.M. Holding, 784 F. Supp. 3d at 420 (quoting Body Sci., 2012 WL 5449667, at *3). The requested stay has no apparent end date and would last until the resolution of an adjudication that may never occur. This indefinite hold would "unduly prejudice" Solos's interest in resolving its claims and preventing what it claims is infringement of its patents. Id. Because no action is pending that could materially affect the issues Meta raises, a stay would not "simplify the issues in question." Id. Finally, although the litigation is at an early stage, the Court "accords this consideration comparatively little weight in its analysis" given that this case is not trailing another, more advanced, proceeding. Id. at 422.

Accordingly, the Court will deny Meta's alternative request for a stay of proceedings.[3]

## III. THE LUXOTTICA DEFENDANTS' MOTION TO DISMISS

### A. Legal Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts as true, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citation modified)

[3] Since filing their motions to dismiss, Defendants have filed petitions for inter partes review of the Asserted Patents and stated that they "reserve all rights to seek . . . a stay of this action pending resolution of the IPRs." [ECF No. 117]. These petitions, however, form no part of the basis for Meta's pending request for a stay and will not be considered at this time.

(quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679).

**B. Discussion**

The Luxottica Defendants seek dismissal of Solos's claims against them for induced infringement, contributory infringement, and willful infringement. [ECF No. 44]. They argue that Solos fails to plausibly allege that: (1) the Luxottica Defendants had pre-suit knowledge of the Asserted Patents, as necessary to support each of Solos's indirect (i.e. induced and contributory) infringement claims, [ECF No. 45 at 9–14]; (2) the Luxottica Defendants specifically intended to induce infringement, as necessary to support Solos's induced infringement claims, [id. at 14–15]; (3) the accused components lack substantial non-infringing uses, as necessary to support Solos's contributory infringement claims, [id. at 15–16]; and (4) the Luxottica Defendants specifically intended to infringe, as necessary to support Solos's willful infringement claims, [id. at 17–19]. The Court will address each argument in turn.[4]

---

[4] The Luxottica Defendants also argue that Solos's attempt to hold them liable for the conduct of Meta (and each other) under a common enterprise, agency, or vicarious liability theory fails. [ECF No. 45 at 19–23]. Because the Court finds that Solos has plausibly alleged that the Luxottica Defendants are liable in their own right, it does not reach this argument.

1. Knowledge

The Luxottica Defendants first argue that all indirect infringement claims against them must be dismissed because Solos fails to plausibly allege that they possessed pre-suit knowledge of the Asserted Patents. As the Luxottica Defendants correctly note, both forms of indirect infringement (that is, induced infringement and contributory infringement) "require[] knowledge of the patent in suit" by the Defendant. Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 639 (2015) (citing Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 488 (1964)). The Luxottica Defendants contend that Solos's allegations of pre-suit contact with them are insufficient to plausibly establish their knowledge of the Asserted Patents because none of the alleged interactions specifically involved the Asserted Patents, and many occurred before the Asserted Patents even existed. [ECF No. 45 at 9–12]. Solos responds that a defendant's knowledge of patents can be inferred through circumstantial evidence like the pre-suit interactions Solos alleges, and that a plaintiff is not required to plead pre-suit contact specifically involving the patents at issue to establish pre-suit knowledge of them. [ECF No. 71 at 9–14].

The Court agrees with Solos. Although Solos does not plead facts directly showing the Luxottica Defendants' knowledge, its allegations, taken in combination and viewed in the light most favorable to Solos, are sufficient to "nudge[] [its] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. The extensive pre-suit contacts between Solos and the Luxottica Defendants demonstrate that the latter have paid close attention to Solos's products and technological developments for several years. [Compl. ¶¶ 65–75]. Given the Luxottica Defendants' evident interest in Solos's smart glasses technology, [id.], their size and sophistication, [id. ¶¶ 12 n.1, 33, 35, 38], their participation in the development of products that directly compete with Solos's, [id. ¶¶ 3, 107], the alleged infringing nature of their products, [id.

¶ 114], the emerging and "highly specialized" nature of smart glasses technology, [id. ¶ 4], and the ease of accessing patent information, it is plausible that the Luxottica Defendants would have become aware at some point of the patent portfolio protecting Solos's smart glasses products, including the Asserted Patents. That is all that is required at this stage.

Cases from this District have reached this same conclusion on similar facts. In Simplivity Corp. v. Springpath, Inc., No. 15-cv-13345, 2016 WL 5388951 (D. Mass. July 15, 2016), the court inferred pre-suit knowledge of a patent from (1) the fact that the defendant was "a sophisticated entity and [plaintiff's] competitor"; (2) the "ease of online patent research"; (3) the fact that the defendant undertook an "investigation at [a] trade show of [plaintiff's] technology"; and (4) the defendant's "subsequent development of a product which mimics the technology underlying the [asserted] [p]atent." Id. at *9. There, as here, the plaintiff's allegations supporting knowledge "relate[d] to a period before the [asserted] [p]atent issued," but the court found that fact "of no moment" in light of the circumstantial evidence alleged. Id. at *10. This Court finds the same inference appropriate here. As in Simplivity, "it is difficult to envision the alternative scenario: a sophisticated party, after allegedly investigating and in some regard . . . copying a competitor's technology, being oblivious to the patent reflecting that technology." Id.

Likewise, in Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc., No. 19-cv-12533, 2020 WL 2079422 (D. Mass. Apr. 30, 2020), the court found that "it is plausible that [defendant] knew of the[] [asserted] patents given their nature as competitors in a specialized market, previous patent litigation between [plaintiff] and [defendant], and access to [plaintiff's] droplet patent portfolio." Id. at *5. Although Solos does not allege previous litigation with the Luxottica Defendants, the other two factors cited in Bio-Rad—"competit[ion] in a specialized market" and "access to

[plaintiff's] . . . patent portfolio"—are both present here, along with other factors supporting an inference of knowledge, such as the Luxottica Defendants' history of exposure to and demonstrated interest in the technology at issue. Accordingly, the Court finds that Solos's allegations of pre-suit knowledge are substantially in line with those found sufficient in Simplivity and Bio-Rad.

Finally, even if Solos did not plausibly allege pre-suit knowledge, the Luxottica Defendants' post-suit knowledge stemming from the filing of the complaint is enough to sustain a claim of indirect infringement, at least for damages arising post-suit. The parties vigorously dispute whether post-suit knowledge suffices. [ECF No. 45 at 12–14]; [ECF No. 71 at 14–16]. Although "[t]here is a conflict between district courts, including those in this district," as to this issue, Echosens, S.A. v. E-Scopics S.A.S., 772 F. Supp. 3d 147, 159 (D. Mass. 2025), this Court has previously held that a complaint can "serve as knowledge for any subsequent acts of indirect or willful infringement," id. at 160. On the facts and arguments before it, the Court does not find reason to deviate from its prior analysis.

Accordingly, the Court finds that Solos has adequately alleged knowledge of the Asserted Patents as necessary to sustain its indirect infringement claims.

2. Induced Infringement

The Luxottica Defendants next argue that Solos's induced infringement claims must be dismissed because it has not plausibly alleged a specific intent to induce infringement of the Asserted Patents. "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1329 (Fed. Cir. 2009) (citing DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in

relevant part)). "Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." Id. (citing DSU Med., 741 F.3d at 1305–06).

The Luxottica Defendants contend that Solos's allegations of specific intent are inadequate because they are "conclusory" and not supported by "underlying factual allegations." [ECF No. 45 at 15]. Solos responds that "intent may be inferred where a defendant takes steps to encourage infringement," and it points to allegations of "concrete, user-facing instructions that expressly direct users to perform the accused functionality." [ECF No. 71 at 16–17].

The Court finds that Solos's allegations are sufficient to plausibly establish specific intent to induce infringement. "Evidence of active steps taken to induce infringement, such as advertising an infringing use, can support a finding of an intention for the product to be used in an infringing manner." Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1322 (Fed. Cir. 2009) (citing DSU Med., 471 F.3d at 1305). The methods claimed in the Asserted Patents largely describe internal processes that occur automatically whenever the relevant products are used to receive voice commands or play sound to the wearer. See, e.g., [ECF No. 1-8 ('866 Patent claim chart)]; [ECF No. 1-10 ('174 Patent claim chart)]. Solos's claim charts depict and incorporate advertising materials from Ray-Ban, a brand owned by the Luxottica Defendants, that specifically advertise these features and instruct users to give voice commands and listen to music through the accused products. See [ECF No. 1-8 at 2 n.1 (citing Ray-Ban, Tech Highlights, Ray-Ban | Meta, https://www.ray-ban.com/usa/l/discover-ray-ban-meta-ai-glasses)]. Consistent with these materials, Solos alleges that the Luxottica Defendants "provide technical documents, marketing materials, customer support resources, and advertising campaigns that encourage, direct, or otherwise cause users to operate the Infringing Products in ways that practice the patented technology." [Compl. ¶¶ 126, 137, 148, 159, 170]. Taken together, these

allegations and incorporated materials are sufficient at the pleading stage to "support a finding of an intention for the product to be used in an infringing manner." Lucent, 580 F.3d at 1322.

3. Contributory Infringement

The Luxottica Defendants next argue that Solos's contributory infringement claims fail because it has not plausibly alleged that the accused products lack substantial non-infringing uses. "To state a claim for contributory infringement, a complaint must adequately allege: '(1) the defendant had "knowledge of the patent in suit," (2) the defendant had "knowledge of patent infringement," and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial non-infringing use.'" AlexSam, Inc. v. Aetna, Inc., 119 F.4th 27, 47 (Fed. Cir. 2024) (quoting Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n, 998 F.3d 1320, 1335 (Fed. Cir. 2021)). "A noninfringing use is substantial when it is 'not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" Grunenthal GMBH v. Alkem Lab'ys Ltd., 919 F.3d 1333, 1340 (Fed. Cir. 2019) (quoting Toshiba Corp. v. Imation Corp., 681 F.3d 1358, 1362 (Fed. Cir. 2012)).

The Luxottica Defendants contend that the complaint fails on these grounds because it "neither identifies the specific components allegedly sold for infringing use nor explains why those components lack substantial non-infringing uses." [ECF No. 45 at 15–16]. Solos responds that this element "does not require identifying and negating every conceivable non-infringing use but instead requires allegations that permit a reasonable inference that the components are not suitable for substantial non-infringing uses." [ECF No. 71 at 18].

The Court finds that Solos has adequately pled that the components sold by the Luxottica Defendants lacked substantial non-infringing uses. As an initial matter, the Court notes that it is not entirely clear whether the "components" referenced in Solos's contributory infringement

claims are the accused products themselves, some subcomponents thereof, or both. Because the Court construes the complaint in the light most favorable to Solos, it will read the complaint to assert contributory infringement based on the Luxottica Defendants' sale of the completed accused products through their websites and retail networks. See [Compl. ¶ 118]. Reading the complaint in this way, the Luxottica Defendants' argument that Solos fails to "identif[y] the specific components allegedly sold for infringing use," [ECF No. 45 at 15], is unavailing.

The question then becomes whether Solos plausibly alleges that the accused products lack substantial non-infringing uses. The Court concludes that it does. Due to "the difficulty of alleging enough facts to demonstrate a negative at the pleading stage," courts frequently "have not required detailed factual allegations in support of a plaintiff's claim that a defendant's product lacks substantial noninfringing uses." Copan Italia S.p.A. v. Puritan Med. Prods. Co. LLC, No. 18-cv-00218, 2018 WL 5891742, at *5 (D. Me. Nov. 9, 2018) (citation modified) (quoting Conair Corp. v. Jarden Corp., No. 13-cv-06702, 2014 WL 3955172, at *4 (S.D.N.Y. Aug. 12, 2014)). Thus, "[s]imply pleading the absence of substantial non-infringing uses is normally sufficient to satisfy the pleading requirement for that element of contributory infringement." Echosens, 772 F. Supp. 3d at 163 (quoting IOENGINE, LLC v. PayPal Holdings, Inc., No. 18-cv-00452, 2019 WL 330515, at *5 (D. Del. Jan. 25, 2019)).

Here, Solos alleges that the accused products are "specially made or adapted for use in infringing" each of the Asserted Patents and "have no substantial non-infringing use." [Compl. ¶¶ 127, 138, 149, 160, 171]. It further alleges that the Asserted Patents cover "foundational architectures" in smart glasses technology, [id. ¶ 57], which have become "defining features of next-generation smart eyewear," [id. ¶ 59]. Given that the Asserted Patents appear to cover fundamental internal processes underlying the basic operation of the relevant products, and that

Solos has directly alleged that those products lack substantial non-infringing uses, the Court finds that Solos has plausibly alleged claims for contributory infringement.

4. Willful Infringement

Finally, the Luxottica Defendants argue that Solos has failed to plausibly allege the intent necessary to sustain its claims for willful infringement. "To establish willfulness, a patentee must show that the accused infringer had a specific intent to infringe at the time of the challenged conduct." Provisur Techs., Inc. v. Weber, Inc., 119 F.4th 948, 955 (Fed. Cir. 2024) (quoting BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org., 28 F.4th 1247, 1274 (Fed. Cir. 2022)). A plaintiff may establish this specific intent at the pleading stage by "plausibly alleg[ing] that defendant (1) knew of the patent and (2) knew of its alleged infringement." Echosens, 772 F. Supp. 3d at 163 (citing Sunrise Techs., Inc. v. Cimcon Lighting, Inc., 219 F. Supp. 3d 260, 265 (D. Mass. 2016)). Whether a plaintiff "can ultimately show that it is entitled to enhanced damages for Defendants' 'egregious infringement behavior' is not relevant to the Court's consideration of a motion to dismiss." Lexington Luminance LLC v. TCL Multimedia Tech. Holdings, Ltd., No. 16-cv-11458, 2017 WL 3795769, at *6 (D. Mass. Aug. 30, 2017) (citing Halo Elecs., Inc. v. Pulse Elecs, Inc., 579 U.S. 93, 104 (2016)).

Plaintiffs have met this standard. For the reasons explained above, Solos has plausibly alleged that the Luxottica Defendants knew of the Asserted Patents. Those same factors, particularly Luxottica's size, sophistication, and close attention to Solos's technology over several years, likewise make it plausible that the Luxottica Defendants were actually or constructively aware of the infringing nature of any infringing acts they undertook after learning of the Asserted Patents. "At this juncture, [Solos] is not required to allege more than knowledge of the patent and of infringement." Lexington Luminance, 2017 WL 3795769, at *6.

Accordingly, Solos's allegations are sufficient to sustain its claims for willful infringement at this stage.

## IV. CONCLUSION

For the foregoing reasons, Meta's motion to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party, or in the alternative to stay the proceedings, [ECF No. 49], and the Luxottica Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, [ECF No. 44], are both **DENIED**.

**SO ORDERED.**

November 23, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE